UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LASHLEY CARNEY, RANDY XU, DELMAR      )
CONKLIN, DAVID BECKER, SARA HEIFETZ,  )
and CHARITY JAMES,                    )
                                      )            **COMPLAINT**
                    Plaintiffs,       )
                                      )
    -against-                         )            **ECF CASE**
                                      )
THE CITY OF NEW YORK; POLICE OFFICER  )            **05 Civ. 7672**
FREYRE; POLICE OFFICER RUSSELL JOHN,  )
Shield No. 31399; POLICE OFFICER BIENVENI )
MENA, Shield No. 7584; POLICE OFFICER )
STEPHEN NELSON, Shield No. 27285; POLICE )
OFFICER JOSELITO CHAPARRO, Shield No. )
03429**;** JOHN DOES; RICHARD ROES; HUDSON )
RIVER PARK TRUST,                     )            **JURY TRIAL DEMANDED**
                                      )
                    Defendants.       )
-------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which plaintiffs seek relief for the defendants'

violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the

United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments,

and by the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, an award of costs and attorneys' fees, and such other and further

relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiffs' constitutional and civil rights.

3.    The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

4.    Plaintiffs demand a trial by jury on each and every one of their claims as pleaded herein.

## VENUE

5.    Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.    Plaintiffs LASHLEY CARNEY, RANDY XU, DAVID BECKER, SARA HEIFETZ, and CHARITY JAMES filed timely Notices of Claim with the Comptroller of the City, within 90 days of the incidents complained of herein.  More than 30 days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

7.    Plaintiff  DELMAR CONKLIN's application to file a late Notice of Claim was granted by New York State Supreme Court Justice Alice Schlesinger (New York County) on August 17, 2005 (Index No. 05/110624).

## PARTIES

8. Plaintiff LASHLEY CARNEY is a citizen of the United States, and at all times relevant herein resided in the state of New York.

9. Plaintiff RANDY XU is a citizen of the United States, and at all times relevant herein resided in the state of New York.

10. Plaintiff DELMAR CONKLIN is a citizen of the United States, and at all times relevant herein resided in the state of Florida.

11. Plaintiff DAVID BECKER is a citizen of the United States, and at all times relevant herein resided in the state of New York.

12. Plaintiff SARA HEIFETZ is a citizen of the United States, and at all times relevant herein resided in the state of New York.

13. Plaintiff CHARITY JAMES is a citizen of the United States, and at all times relevant herein resided in the state of New York.

14. Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department ("NYPD").

15. Defendants FREYRE, JOHN, MENA, NELSON, CHAPARRO, and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police

Department, a municipal agency of defendant THE CITY OF NEW YORK. Said individual

defendants are and were at all times relevant herein acting under color of state law in the course

and scope of their duties and functions as officers, agents, servants, and employees of defendant

THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority

vested in them by THE CITY OF NEW YORK and the New York City Police Department, and

were otherwise performing and engaging in conduct incidental to the performance of their lawful

functions in the course of their duties. Defendants FREYRE, JOHN, MENA, NELSON,

CHAPARRO, and JOHN DOES are sued individually and in their official capacity.

16.    Defendants RICHARD ROES are and were at all times relevant herein duly

appointed and acting supervisory officers, servants, employees and agents of THE CITY OF

NEW YORK and/or the New York City Police Department, responsible for the training,

retention, supervision, discipline and control of police officers under their command. Said

individual defendants are and were at all times relevant herein acting under color of state law in

the course and scope of their duties and functions as supervisory officers, agents, servants, and

employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with

the power and authority vested in them by THE CITY OF NEW YORK and the New York City

Police Department, and were otherwise performing and engaging in conduct incidental to the

performance of their lawful functions in the course of their duties. Defendants RICHARD

ROES are sued individually and in their official capacity.

17.    Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at

all times relevant herein a public benefit corporation, organized and existing pursuant to the laws

of the State of New York. Defendant HUDSON RIVER PARK TRUST assumes the risks

4

incidental to the maintenance and use of its structures and the employment of its employees as said risk attaches to the public consumers of the services provided by the HUDSON RIVER PARK TRUST and those who enter and remain within its structures.  Officials of HUDSON RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National Convention (RNC) in late August and early September of 2004.  Said officials are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officials of defendant HUDSON RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

## **STATEMENT OF FACTS**

18.     Plaintiffs are individuals who were arrested on 17th Street between 5th Avenue and Union Square West on August 31, 2004.

19.     Plaintiffs were arrested during one of the many mass-arrests conducted by the NYPD during the period of the RNC, arrests made by the NYPD without probable cause or individualized suspicion of criminal activity.

20.     On the evening of August 31, 2004 a group of people, including plaintiffs, left Union Square Park heading North.  They were walking in an orderly fashion, and were walking on the sidewalk.  Some of the members of the group wanted to walk to the "official protest zone" near Madison Square Garden.

21.     The group was unable to continue North once they arrived at 17th Street, since

that direction was blocked by police officers.

22.    The group was diverted to the West, and walked in that direction, toward 5th Avenue.

23.    The police erected barricades to prevent egress from the block at 5th Avenue. When some of the people who had been walking with the group spoke to the police officers present there, the officers told them that the group should wait while the police determined whether or not they would facilitate the group as they continued walking toward Madison Square Garden.

24.    At some point thereafter egress from the other side of the block, at Union Square West, was similarly prevented by the police, effectively trapping all those present on the block.

25.    The group remained at that location for some time, and waited. The police then ordered them to get against the wall.

26.    On information and belief, the police handcuffed all those present at that location, and a period of time thereafter transported them to Pier 57.

27.    Plaintiffs were arrested at that location and brought to Pier 57. These arrests were made without probable cause or individualized suspicion of criminal activity, and were thoroughly unreasonable.

28.    On information and belief, defendant FREYRE was assigned as the arresting officer of plaintiff LASHLEY CARNEY. On information and belief LASHLEY CARNEY was handcuffed on 17th Street by a JOHN DOE defendant who was of the rank of Lieutenant or higher.

29.    On information and belief, defendant JOHN was assigned as the arresting officer

of plaintiff RANDY XU, and was the deponent on the Criminal Complaint filed against him.

30.     On information and belief, defendant MENA was assigned as the arresting officer of plaintiff DELMAR CONKLIN, and was the deponent on the Criminal Complaint filed against him.

31.     A JOHN DOE defendant was the arresting officer and/or was assigned as the arresting officer of plaintiff DAVID BECKER, and was the deponent on the Criminal Complaint filed against him.

32.     Defendant NELSON was assigned as the arresting officer of plaintiff SARA HEIFETZ, and was the deponent on the Criminal Complaint filed against her.

33.     Defendant CHAPARRO was assigned as the arresting officer of plaintiff CHARITY JAMES, and was the deponent on the Criminal Complaint filed against her.

34.     Upon information and belief, an order or orders was/were given by higher-ranking NYPD JOHN DOE defendants present at or near the scene of plaintiffs' arrests for the lower-ranking NYPD officers to engage in the mass arrests on 17th Street.

35.     On information and belief, all those arrested on 17th Street, and the vast majority of the almost two thousand people arrested during the course of the period of the RNC, were confined for some period of time at Pier 57.

36.     Pier 57 is a former bus depot located on the Hudson River, and was reconfigured for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

37.     Pier 57 is owned by defendant HRPT.

38.     Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of Pier 57 as a detention facility.

39.    The conditions at Pier 57 were atrocious.  The detainees were kept in chain-link cages topped with barbed wire that lacked adequate seating.  The floor of Pier 57 was caked with a dark grimy substance that spread to the clothing and bodies of those detained therein.  There were numerous signs warning of hazardous materials that were posted at multiple locations throughout the pier.  On information and belief, the detainees were exposed during their time at Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should have known, were present there.  During these periods of confinement the detainees were unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

40.    The detainees at Pier 57, including plaintiffs, were further subjected to unreasonable delay in being processed and moved through the system.  The City insisted on fingerprinting all RNC detainees, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court.  Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 not equipped with any fingerprinting machines.  On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities and the unlawful chilling of the exercise of free speech and association.  Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including overly exacting property itemization procedures and a screening of each arrestee's

8

paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be forwarded to the District Attorney's office for each arrestee. Further unreasonable and unnecessary delays were also suffered by RNC detainees upon their subsequent transfer to and detention at the Central Booking Facility at 100 Centre Street. All arrestees during the RNC were thereby held in custody of the CITY OF NEW YORK for periods of time longer than were reasonable or necessary.

41.    After their detention at Pier 57, further callous and unreasonable treatment and conditions of confinement were endured by plaintiffs during their transfer to and confinement at the Central Booking Facility at 100 Centre Street.

42.    On information and belief, during the periods of their confinement the vast majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

43.    During their time in custody plaintiffs were subjected to unreasonably tight and painful wrist restraints/handcuffs.

44.    Plaintiff LASHLEY CARNEY was released after approximately 49 hours in custody. On information and belief, she was charged with disorderly conduct and parading without a permit. All charges against LASHLEY CARNEY have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

45.    Plaintiff RANDY XU was released after approximately 48 hours in custody. On information and belief, he was charged with disorderly conduct and parading without a permit. All charges against RANDY XU have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

46.    Plaintiff DELMAR CONKLIN was released after approximately 46 hours in custody.  On information and belief, he was charged with disorderly conduct and parading without a permit.  All charges against DELMAR CONKLIN have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

47.    Plaintiff DAVID BECKER was released after approximately 36 hours in custody. On information and belief, he was charged with disorderly conduct and parading without a permit.  All charges against DAVID BECKER have been dismissed in their entirety.

48.    Plaintiff SARA HEIFETZ was released after more than 40 hours in custody. On information and belief, she was charged with disorderly conduct and parading without a permit. All charges against SARA HEIFETZ have been dismissed in their entirety.

49.    Plaintiff CHARITY JAMES was released after more than 40 hours in custody. On information and belief, she was charged with disorderly conduct and parading without a permit. All charges against CHARITY JAMES have been dismissed in their entirety.

50.    Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to them, including legal observers, anarchists, and the National Lawyers Guild.  Officials of the CITY OF NEW YORK attempted to create a climate of fear relative to the activities of demonstrators.

51.    The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the

NYPD to have been demonstrating. Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57. These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

52. The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, including plaintiffs, and applied the parading ordinance and other laws, including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

53. The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association. The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees, including plaintiffs, in part to prevent the arrestees from exercising their rights to free speech and expression.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

54. The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

55. By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiffs, and by subjecting plaintiffs to improperly prolonged, harsh, and hazardous conditions of confinement

without access to lawyers, defendants FREYRE, JOHN, MENA, NELSON, CHAPARRO, and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

56.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

<u>**SECOND CLAIM**</u>

**SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

57.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

58.    By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers RICHARD ROES caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

59.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

### LIABILITY OF THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

60.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

61.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

62.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

63.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of using the mechanisms and

conditions of arrest and pre-arraignment detention for punitive and deterrent purposes. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

64.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

65.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

<u>**FOURTH CLAIM**</u>

**LIABILITY OF HUDSON RIVER PARK TRUST
FOR CONSTITUTIONAL VIOLATIONS**

66.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

67.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST had policies, practices, customs and usages which were a direct and proximate cause of

14

the unconstitutional conduct alleged herein.

68.    At all times material to this complaint, defendant HUDSON RIVER PARK

TRUST, had policies, practices, customs, and usages of deliberate indifference to the health and

well being of those who they knew or should have known would be held in Pier 57.

69.    By their conduct and actions in contracting with the CITY OF NEW YORK and

otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of

the RNC, and thereby subjecting plaintiffs to hazardous conditions of confinement, officials of

the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification,

and with a deliberate indifference to or a reckless disregard for the natural and probable

consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional

rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its

First, Fourth, Fifth, and Fourteenth amendment.

70.    These acts, policies, practices, customs, and usages were a direct and proximate

cause of the unconstitutional conduct alleged herein.

71.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## FIFTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS

72.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

73.    The conduct of defendants FREYRE, JOHN, MENA, NELSON, CHAPARRO,

15

DOES, and ROES alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to the plaintiffs pursuant to the state common law doctrine of respondeat superior.

74.      The conduct of employees and officials of the HUDSON RIVER PARK TRUST, alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK concerning the improper and dangerous use of Pier 57, occurred in and during the course and scope of their duties and functions as employees and officials of the HUDSON RIVER PARK TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

75.      As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

### ASSAULT AND BATTERY

76.      The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

77.      By the actions described above, defendants did inflict assault and battery upon plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

16

78.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

### FALSE ARREST and FALSE IMPRISONMENT

79.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

80.     By the actions described above, defendants caused to be falsely arrested, or falsely arrested, plaintiffs, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

81.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTH CLAIM

### INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

82.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

83.     By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and

damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

84.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

## ABUSE OF PROCESS

85.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

86.    By the conduct and actions described above, defendants employed regularly issued process against plaintiffs compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiffs without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiffs which was outside the legitimate ends of the process. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

87.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

## VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO

### FREE SPEECH AND ASSEMBLY

88.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

89.    By the actions described above, defendants violated the free speech and assembly rights of plaintiffs and retaliated against plaintiffs for the exercise of their rights to free speech and assembly.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

90.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### ELEVENTH CLAIM

### VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

91.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

92.    By the actions described above, defendants violated the right of plaintiffs to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

93    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TWELFTH CLAIM

## NEGLIGENCE

94.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

95.     The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

96.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM

## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

97.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

98.     Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST negligently hired, screened, retained, supervised and trained the employees and officials who injured plaintiffs.  The acts and conduct of these employees and officials were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

99.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## FOURTEENTH CLAIM

## FUTURE MEDICAL EXPENSES

100.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

101.    During their detention at Pier 57, plaintiffs were exposed to hazardous materials. As a result of this exposure, plaintiffs reasonably anticipate consequential damages in the form of future expenses for medical monitoring and testing.

102.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

## PRIMA FACIE TORT

103.    The plaintiffs incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

104.    Defendants, without excuse or justification, and intending to inflict harm upon plaintiffs by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiffs, to wit, the confinement and processing of plaintiffs through the stages of pre-arraignment detention in a hazardous and dilatory fashion.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

105.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTEENTH CLAIM

### MALICIOUS PROSECUTION

106.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

107.    By the actions described above, defendants maliciously prosecuted plaintiffs DAVID BECKER, SARA HEIFETZ, and CHARITY JAMES without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

108.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all of the defendants:

        a.  Compensatory damages;

        b.  Punitive damages;

        c.  The convening and empanelling of a jury to consider the merits of the claims herein;

        d.  Costs and interest and attorney's fees;

e.  Such other and further relief as this court may deem appropriate and equitable.


Dated:        New York, New York
              August 31, 2005


                                    _____/s/_____
                                    JEFFREY A. ROTHMAN, Esq.
                                    (JR-0398)
                                    575 Madison Avenue, Suite 1006
                                    New York, New York 10022
                                    (212) 348-9833; (212) 937-8450

                                    MARTIN R. STOLAR, ESQ.
                                    (MS-1576)
                                    351 Broadway
                                    New York, NY 10013
                                    (212) 219-1919

                                    ALAN D. LEVINE, ESQ.
                                    (AL-3634)
                                    80-02 Kew Gardens Road, Ste 1010
                                    Kew Gardens, NY 11415
                                    (718) 793-6363

                                    Attorneys for plaintiffs

23