**MEMO ENDORSED**

Jeffrey A. Rothman
Attorney at Law
575 Madison Avenue, Suite 1006
New York, NY 10022
(212) 348-9833; (212) 937-8450
Cell: (516) 455-6873
Fax: (212) 591-6343
jrothman@alumni.law.upenn.edu

RECEIVED DEC 0 1 2006 [stamp]

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/7/06

November 30, 2006

By Hand
The Honorable James C. Francis IV
United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl Street – Room 1960
New York, NY 10007

*[handwritten: 04 CIV 7922 LEAD CASE   DOCKET IN ALL CASES]*

Re:   Phillips, et al. v. City of New York, et al. 05 Civ. 7624 (KMK) (JCF);
       Sloan, et al. v. City of New York, et al., 05 Civ. 7668 (KMK) (JCF);
       Galitzer v. City of New York, et al., 05 Civ. 7669 (KMK) (JCF);
       Bastidas, et al. v. City of New York, et al., 05 Civ. 7670 (KMK) (JCF);
       Coburn, et al. v. City of New York, et al., 05 Civ. 7623 (KMK) (JCF);
       Carney, et al. v. City of New York, et al., 05 Civ. 7672 (KMK) (JCF);
       Sikelianos v. City of New York, et al., 05 Civ. 7673(KMK) (JCF)

Dear Judge Francis:

On October 30, 2006 plaintiffs in the above-captioned RNC cases served Interrogatories upon defendants seeking the identity of members of the New York City Police Department who have "personal knowledge" of each plaintiff's individual conduct that served as the basis for that plaintiff's arrest.

Not wishing to unnecessarily spill more ink on this subject, plaintiffs now respectfully seek an order identical to that issued by the Court on November 28, 2006 in the MacNamara, Abdell, and Adams RNC cases with regard to five of the seven above-captioned cases, deeming defendants to have admitted that, with respect to each plaintiff in the Phillips, Sloan, Bastidas, Coburn, and Carney cases, "they cannot identify any member of the NYPD who has personal knowledge of individual conduct of that plaintiff which served as the basis for that plaintiff's arrest"[1], and granting such other and further relief as the Court deems just and proper.

---

[1] With regard to the Galitzer and Sikelianos cases, although each of the single plaintiffs in those cases was arrested within the milieu of wider mass arrests, each was arrested in somewhat more unique circumstances. Each was subjected to a physical battery by a supervisory level police official (Lieutenant Joseph Maher, and Captain Joseph Dowling, respectively) at the time they were arrested, so it is likely that these two NYPD defendants will claim to have some "personal knowledge" of these plaintiffs' conduct which served as the basis for the arrest. Plaintiffs Galitzer and Sikelianos request an order, however, that the "personal knowledge" Interrogatories be answered properly, and that only those who actually claim personal knowledge be identified in response.

1

The Interrogatories served by plaintiffs on October 30, 2006 employed the exact same definition of "personal knowledge" as was employed by plaintiffs in the MacNamara putative class action, in Interrogatories in that case also seeking the same information concerning those plaintiffs[2]. "Personal knowledge" was defined as:

> first-hand observation of the actions or conduct of the particular plaintiff specified, as distinguished from (a) first-hand observation of a group of persons in or around the plaintiff's general vicinity, and (b) information relayed by another member of the New York City Police Department concerning the particular plaintiff's actions or conduct. If the latter, the individual who relayed the information shall be identified and the response shall state whether that individual, in turn, has personal knowledge of the plaintiff's actions or conduct;

and each Interrogatory asked defendants to:

> [i]dentify each member of the New York City Police Department with any personal knowledge of [Plaintiff X's] actions or conduct prior to his arrest in the vicinity of [arrest location Y] on [arrest date Z], which provided the alleged probable cause for his arrest.

Plaintiffs' Second Set of Interrogatories to Defendants in the Phillips case are annexed hereto as Exhibit A.

Plaintiffs have received responses to these "personal knowledge" Interrogatories in the Phillips, Carney, and Galitzer cases. Rather than respond to the clear and direct import of these Interrogatories, defendants' latest shape-shifting in response to this simple question has provided plainly false information by responding with a list of names of police personnel, some of whom have already admitted that they have no personal knowledge of the conduct of the particular plaintiffs inquired about (and their other arrestees at the same mass arrest location). Given the pattern of lack of personal knowledge concerning these mass arrests that has emerged thus far in these RNC cases, the same can be reasonably inferred concerning other members of the NYPD who were involved in ordering, effecting, and processing arrests from mass arrest locations encompassed in the above-captioned cases.

For example, in response to Plaintiffs' Second Set of Interrogatories[3] in the Phillips case, defendants responded that for each plaintiff the members of the NYPD with personal knowledge of that plaintiff's conduct were: Inspector James Essig, Captain Robert Bonifati, Lieutenant William Cooke, and for each plaintiff that plaintiff's assigned "arresting officer".

---

[2] Plaintiffs in the above-captioned matters adopt the arguments set forth by counsel in the MacNamara action concerning this same issue, in letters to the Court of October 18, 2006 and November 21, 2006. Plaintiffs also adopt the arguments set forth by Michael Spiegel, Esq., counsel in the Abdell and Adams RNC cases, in letters to the Court of October 17, 2006 and November 20, 2006, concerning the same issue in the context of Requests to Admit and a related Interrogatory in those cases.
The mass arrest locations of plaintiffs within the MacNamara, Abdell and Adams cases covered by Your Honor's November 28, 2006 order encompass the same arrest locations for plaintiffs in the Bastidas, Carney, and Sloan cases. The circumstances of the Phillips and Coburn mass arrest locations are dealt with below.

[3] Defendants' Response to Plaintiffs' Second Set of Interrogatories in the Phillips case are annexed hereto as Exhibit B.

2

This information has already been admitted to be false by Inspector Essig, who was deposed for three days in these RNC actions. With regard to the plaintiffs in Phillips case the following exchange occurred on pages 596-597 of Mr. Essig's deposition transcript [4]:

> Q. Have you ever heard the name Jeffrey Philip [sic]?
>
> A. Not that I can recall
>
> Q. What about Rafael Porto?
>
> A. No.
>
> Q. Joel Miller?
>
> A. No.
>
> Q. Miles Swanson?
>
> A. No.
>
> Q. Do you have any knowledge about what any of those four individuals were doing specifically or where they were standing or walking with regard to the arrests that they may have been subject to under that scaffolding?
>
> MR. FARRELL: Objection
>
> A. Specific Knowledge?
>
> Q. Yes.
>
> A. I know the dispersal order was given, a mesh netting was put up, and, if they were arrested there, they were arrested for disorderly conduct, impeding the flow of pedestrian traffic.

The identification of a witness with only this sort of knowledge of "group activity" is obviously not the information that was sought from these Interrogatories, which were in fact specifically tailored to exclude witnesses like Inspector Essig, whose only knowledge of these individuals' particular conduct is that if they wound up surrounded by a net on the corner of 46th Street and Broadway, from which fact he then attempts to extrapolate backward that they were arrested for certain behaviors which he himself never personally observed. Since Mr. Essig did not observe these particular people do anything particular thing, he should not have been identified in response to these Interrogatories[5].

---

[4] These pages of Mr. Essig's deposition transcript are annexed hereto as Exhibit C.

[5] Mr. Essig had the same lack of personal knowledge concerning the particular conduct of the particular plaintiffs in the Bastidas case, and of plaintiffs Majmudar, Biddle, and Friedman from the MacNamara case, prior to their arrests on East 16th Street, as well. Annexed hereto as Exhibit D are pages 536-540, and 776-788 (see, particularly, ppgs

3

During his deposition testimony, it was clear that the only individual Inspector Essig claims to have personally observed doing anything particular at all at 46th and Broadway was a male who allegedly attempted to pull down the netting that was used to enclose the arrestees[6]. Had this man been a plaintiff that I had inquired about through these Interrogatories, Mr. Essig would then, concerning this individual only, have been an appropriate person to identify in response. For the other arrestees from that location, however, of whom all Mr. Essig can say is that they were part of a group that wound up being arrested after being surrounded by a net, the identification by counsel for defendants of Mr. Essig in response to these Interrogatories is patently evasive and improper.

Similar problems exist for the other individuals identified by defendants in response to Plaintiffs' Second Set of Interrogatories to Defendants in the Phillips case. In a Criminal Court trial of other arrestees from that location, among other NYPD witnesses, testimony was given by Captain Bonifati and Lieutenant Cooke, both of whom were also identified by counsel for defendants as having personal knowledge of all four Phillips plaintiffs' conduct. Likewise, testimony was given by a Police Officer DiVirgilio, who was assigned as the arresting officer for plaintiffs Jeffrey Phillips and Rafael Porto, and also was identified by counsel for defendants as having personal knowledge of these plaintiffs' conduct. Likewise, testimony was given by a Police Officer Angevine, who was assigned as the arresting officer for Phillips plaintiff Joel Miller, and who was identified by counsel for defendants as having personal knowledge of Mr. Miller's conduct.

None of Captain Bonifati, Lieutenant Cooke, Officer DiVirgilio, or Officer Angevine gave any indication or suggestion in this Criminal Court transcript that they had any personal knowledge, as clearly defined in plaintiffs' Second Set of Interrogatories, of what anybody in particular had done at that location outside of being part of a group.

Police Officer Angevine's testimony, on ppgs 16-17, displays this clearly:

> Q.   At what point did you arrest the defendant?
>
> A.   We were directed by a Lieutenant Cooke and we just went in and pulling bodies out.
>
> THE COURT: Prior to the arrest of this individual, defendant who you've identified as Mr. [redacted], had you noticed him up to that point before you were directed to arrest him, yes or no?
>
> THE WITNESS: No.

---

776-778, 781, and 788), concerning the conduct of the Bastidas plaintiffs and those three MacNamara plaintiffs, respectively. Plaintiffs make this application to forestall the anticipated improper identification of Mr. Essig as one who had personal knowledge of the Bastidas plaintiffs' conduct prior to their arrests on East 16th Street.

[6] See Essig deposition transcript, page 241, annexed hereto as Exhibit E. It is also noteworthy, and curious, that Inspector O'Neil, who Mr. Essig identifies as the individual who gave the "orders to disperse" and the "orders to arrest", was not identified as someone with personal knowledge of plaintiffs' conduct in response to these Interrogatories - especially in light of the fact that, other than the one man who tried to pull down the net, Mr. Essig's testimony makes clear that his personal observations were only of group conduct.

4

      And Police Officer DiVirgilio's testimony on ppgs. 21-23, as well:

      Q.    What did you witness prior to the defendant's arrest?

      A.    Approaching 46th and Broadway, a crowd of demonstrators blocking the street and the sidewalk, chanting.

      ...

      Q.    Did you witness what the defendant in particular was doing at that time?

      A.    No.

      ...

      Q.    Did somebody direct you to arrest the defendant?

      A.    Yes.

      Q.    Who?

      A.    My Lieutenant instructed us, "We're going to start effecting arrests on protestors."

      THE COURT:    Who would that be?

      THE WITNESS:    Lieutenant Cooke.

      ...

      Q.    Prior to your going in and removing the defendant, had you seen him do anything?

      A.    No.

Similarly, Captain Bonifati's testimony (ppgs. 80-83) only described the actions of a group of "maybe a hundred to 125 people who were demonstrating" at 46th and Broadway, and not of any individual in particular (and Mr. Bonifati was absent from the scene at the time that Inspector O'Neil decided to make the arrests).

Finally, Lieutenant Cooke testified (ppgs. 98-102) only about the conduct of a "crowd" of "approximately a hundred" people. He also stated that he instructed the officers who he assigned as "arresting officers" to observe the crowd as a whole, and that he told the arresting officers that they were witnessing the commission of a violation:

      Q:    And how exactly did you direct each officer to make those arrests?

> A: It started from the moment that we were on the scene. I told the officers -- I instructed them, "You're to observe the whole crowd, observe their actions when we regroup them." I also again reiterated to them that they understood that they saw that they were committing the violation. So once they knew they had seen them commit the violation, we handcuffed each individual, and then at that point we had other officers bring the arrestees to the vehicle. When the officer had approximately five arrests, the officer went -- reunited with the five arrestees and their pictures were taken.

Unsurprisingly, the Judicial Hearing Officer found that (ppgs 123-124):

> All the People have proved beyond a reasonable doubt is that the defendants were present within a mesh. Two officers, not three, two of the senior officers out of the three could not state with a reasonable degree of certainty that any of the people that were actually arrested were involved in a demonstration. Therefore, ipso facto, they could have been innocent people who were hooked into a mesh. None of the officers who actually effected the arrest -- there were five of them -- could testify with any degree of certainty as to what each individual was doing, so basically, had mere presence at the scene of a crime or violation.
> There's an old adage in the criminal law, mere presence is proof of absolutely nothing. Accordingly, each defendant is acquitted.

The portions of this Criminal Court transcript referenced above are annexed hereto as Exhibit F.

That counsel for defendants identified the individual members of the NYPD discussed above in response to plaintiffs' "personal knowledge" Interrogatories is simply ridiculous, and is plainly designed to avoid responding to the very simple question posed. As stated in the letters to the Court from my fellow RNC plaintiffs' counsel on this issue, if defendants wish to defend their actions based on a theory of group conduct, that is their prerogative. These "personal knowledge" Interrogatories, however, seek a factual response: the identity of those, if any, who claim to have actually observed each plaintiffs' individual conduct prior to their arrests. If those people do not exist, defendants should just say so. Whatever legal determination to emerge therefrom, in terms of a probable cause defense or otherwise, in the context of these civil actions will be determined at a later date in a different procedural context.

Plaintiffs in the Coburn action were individuals who were arrested en masse as they walked to the west away from the Time Squares location where the Phillips mass arrests took place. Deputy Chief Monahan testified (pages 525-527, annexed hereto as Exhibit G) that he followed the Coburn group and ordered their arrest, and that he had no personal knowledge of what any of them were doing in particular:

> Q. Could you describe this group that was moving west?
>
> A. It was a group of about 20 or so members. They were blocking the sidewalk on 45th Street. I was asking them to start dispersing. They started to disperse and come back, start to disperse and come back a couple of times.

6

Q. How exactly did they start to disperse?

A. As I walked towards them, they would walk up the block and then they would come back again yelling and screaming. I would ask them again to disperse. They walked up the block a little bit and then they came back, started yelling and screaming.

Q. Do you remember any specific individuals that were in this group that walked up and came back?

A. No.

Q. Is there anyone at all in the group that you can describe?

A. No.

Q. Do you remember what they were yelling and screaming?

A. I don't recall.

Q. Were they carrying any banners or posters?

A. I don't recall.

Q. Do you know if they had any shirts or was there anything written on their clothes?

A. I don't recall.

Q. Were they dressed in the same color of clothes?

A. I don't recall.

Q. Were they a similar age?

A. I don't recall.

Q. Was there anything distinctive about the people in this group that sort of separated them from anyone else?

MR. FARRELL: Objection

A. No.

Based upon this testimony by the commanding officer who made the decision to order these individuals' arrests, plaintiffs ask that a similar conclusion be drawn concerning defendants' lack of personal knowledge of the Coburn plaintiffs' conduct.

Based upon the above, plaintiffs therefore respectfully seek an order:

7

1) identical to that issued by the Court on November 28, 2006 in the MacNamara, Abdell, and Adams RNC cases with regard to five of the seven above-captioned cases, deeming defendants to have admitted that, with respect to each plaintiff in the Phillips, Sloan, Bastidas, Coburn, and Carney cases, "they cannot identify any member of the NYPD who has personal knowledge of individual conduct of that plaintiff which served as the basis for that plaintiff's arrest";

2) and, with regard to the Galitzer and Sikelianos cases, compelling that the "personal knowledge" Interrogatories be answered properly, and that only those who actually claim personal knowledge be identified in response;

and granting such other and further relief as the Court deems just and proper.

I thank the Court for its patience and consideration in this matter.

Respectfully submitted,

Jeffrey Rothman

encs.

cc: Fred Weiler, Esq. (by e-mail distribution list)
Jeffrey Dougherty, Esq. (by e-mail distribution list)
James Mirro, Esq. (by e-mail distribution list)
Peter Farrell, Esq. (by e-mail distribution list)
All RNC counsel (by e-mail distribution list)

12/7/06

Application granted. Defendants have had ample time to investigate plaintiffs' claims and identify witnesses. Defendants are not precluded from correcting or supplementing their answers as provided in the Federal Rules, and they are not precluded from arguing probable cause based on the conduct of a group of persons.

SO ORDERED.
James C. Francis IV
USMJ