UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

| | |
|---|---|
| BETTY BASTIDAS, et al. | **05 Civ. 7670 (KMK)(JCF)** |
| RANDY XU, et al. | **05 Civ. 7672 (KMK) (JCF)** |
| EMILY SLOAN, et al. | **05 Civ. 7668 (KMK)(JCF)** |
| GWYNN GALITZER, | **05 Civ. 7669 (KMK)(JCF)** |
| NIKOLAS SIKELIANOS, | **05 Civ. 7673 (KMK)(JCF)** |

                 Plaintiffs,              **ECF CASE**

    -against-

THE CITY OF NEW YORK, et al.

                 Defendants.
-----------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT PLAINTIFFS'
MOTION FOR AN ORDER PERMITTING PLAINTIFFS IN THE <u>BASTIDAS, ET AL.</u>
CASE TO FILE A SECOND AMENDED COMPLAINT, PERMITTING PLAINTIFFS IN
THE <u>XU, ET AL.</u> CASE TO FILE A SECOND AMENDED COMPLAINT, PERMITTING
PLAINTIFFS IN THE <u>SLOAN, ET AL.</u> CASE TO FILE A SECOND AMENDED
COMPLAINT, PERMITTING PLAINTIFF GWYNN GALITZER TO FILE A SECOND
AMENDED COMPLAINT IN THE <u>GALITZER</u> CASE, AND PERMITTING PLAINTIFF
NIKOLAS SIKELIANOS TO FILE A FIRST AMENDED COMPLAINT
IN THE <u>SIKELIANOS</u> CASE.**


JEFFREY A. ROTHMAN, Esq. (JR-0398)
315 Broadway, Suite 200
New York, New York 10007
(212) 227-2980
Attorney for Plaintiffs


August 31, 2007

## INTRODUCTION and PROCEDURAL HISTORY

The present motion to amend involves five civil rights cases that arose on August 31, 2004, during the 2004 Republican National Convention ("RNC"), stemming from the wrongful arrests, detention, processing, and prosecution of Plaintiffs and related claims concerning the conditions and length of confinement.

The original Complaint in the Bastidas, Xu[1], Sloan, Galitzer, and Sikelianos actions were filed on August 31, 2005. A First Amended complaint was filed in the Bastidas, Xu, Sloan, and Galitzer actions on November 28, 2005.

The First Amended Complaints in Bastidas, Xu, Sloan, and Galitzer, and the Complaint in Sikelianos named as defendants the City of New York, along with those police officers who were assigned as the "arresting officers" for each of the plaintiffs or were referenced as informant officers on the arresting officers' paperwork (the arresting officers processed each plaintiff and filled out each plaintiffs' arrest paperwork, and signed the Criminal Court Complaints that were lodged against each plaintiff), those members of the NYPD of other ranks who otherwise ordered mass arrests, or personally assaulted and arrested a plaintiff (in the Galitzer and Sikelianos cases), John Does (unknown members of the NYPD who participated directly in ordering or effecting the arrests, detention, processing, and prosecution of Plaintiffs), Richard Roes (those supervisors who, based on their supervisory role caused or were a significant contributing factor in causing the arrests, detention, processing, and prosecution of Plaintiffs), and the Hudson River Park Trust (the entity that leased Pier 57, the facility that was used as the primary detention facility during the RNC, to the NYPD).

1

The majority of discovery in this case has been conducted between late 2005 and the present, with the greatest intensity of activity having been in the past few months after the Court imposed a firm discovery cut-off and So Ordered a very condensed deposition schedule.

On Thursday, August 23, 2007, I forwarded by email to counsel for defendants proposed Second Amended Complaints in two of the above cases (<u>Bastidas, et al. v. City of New York, et al.</u>, 05 Civ. 7670 (KMK)(JCF); and <u>Xu (previously Carney) v. City of New York, et al.</u>, 05 Civ. 7672 (KMK)(JCF), seeking consent to add additional defendants and claims. I informed counsel for defendants that the addition of the policy defendants and the elaboration of the general claims applicable to the RNC policing operations were uniform in both cases (and would be across all the other proposed amended complaints I would seek consent for prior to the passing of the respective statutes of limitations). I informed counsel for defendants that the only distinction in the amendments would be concerning particular on-site defendants who I will be adding who were particular to each case. I then sent proposed amendments in three other RNC cases stemming from arrests on August 29, 2004: a proposed First Amended Complaint the <u>Phillips</u> RNC case and the proposed Second Amended Complaint in <u>Coburn</u> RNC case, on August 27, 2004, and on August 28, 2004 sent them the proposed First Amended Complaint in <u>Drescher.</u>

As defendants have not responded in any manner whatsoever to these proposals, plaintiffs bring this motion for leave to file the proposed amendments in the five cases above. Attached as **Exhibit A** to the Declaration of Jeffrey Rothman is the proposed First Amended Complaint in <u>Bastidas</u> (a version with red "track changes" is included along with final version for the Court's convenience). Attached as **Exhibit B** to the Declaration of Jeffrey Rothman is the

---

1  Then the <u>Carney</u> case.

proposed Second Amended Complaint in <u>Xu</u> (a version with red "track changes" is included along with final version for the Court's convenience). Attached as **Exhibit C** to the Declaration of Jeffrey Rothman is the proposed First Amended Complaint in <u>Sloan</u> (a version with red "track changes" is included along with final version for the Court's convenience). Attached as **Exhibit D** to the Declaration of Jeffrey Rothman is the proposed First Amended Complaint in <u>Galitzer</u> (a version with red "track changes" is included along with final version for the Court's convenience). Attached as **Exhibit E** to the Declaration of Jeffrey Rothman is the proposed First Amended Complaint in <u>Sikelianos</u> (a version with red "track changes" is included along with final version for the Court's convenience).

All of the proposed amendments add the following identical individual policymaking / supervisory defendants:

- Mayor Michael Bloomberg;

- Police Commissioner Raymond Kelly;

- The former NYPD Deputy Commissioner for Legal Matters Stephen Hammerman (who held that position during the RNC);

- The NYPD Deputy Commissioner for Intelligence David Cohen;

- The NYPD Assistant Deputy Commissioner for Legal Matters Thomas Doepfner;

- A Lieutenant in the NYPD's Legal Bureau named Daniel Albano (who was also a participant at mass arrest sites);

- the Executive Officer of the NYPD's Legal Bureau NYPD named Deputy Inspector Kerry Sweet;

- A senior counsel in the NYPD's Legal Bureau named Ruby Marin-Jordan;

- As yet unknown NYPD Legal Bureau Supervisor(s) At Pier 57;

3

- The NYPD's Chief of department named Joseph Esposito;

- The head of the NYPD's Disorder Control Unit named Deputy Chief Thomas Graham;

- A retired NYPD Assistant Chief who had overall responsibility for the RNC policing operations named John McManus;

- a retired NYPD Assistant Chief who was during the time of the RNC in charge of Patrol Borough Manhattan South named Bruce Smolka;

- An Assistant Chief within the NYPD who was in charge of the NYPD's RNC Mobile Field Forces named Terrance Monahan;

- An Assistant Chief within the NYPD who was in charge of the NYPD's operations at Pier 57 named John Colgan.

The prior incarnations of Plaintiffs' complaints did not advance claims against individual RNC policymakers in their individual capacities.  Rather, it sought to hold the City liable for their actions in their official capacity as policymakers.  The importance of these individuals' roles, and the extent of malfeasance on the part of these individuals that would warrant punitive damages that are unavailable against the municipality, that has been adduced through discovery thus far impels plaintiffs to sue them in their individual capacities as well, and thus Plaintiffs seek to amend their complaints to add these individual defendants[2].  These individuals have been identified in discovery as responsible in whole and/or in part for the alleged violations of the plaintiffs' civil rights.

Plaintiffs also make more precise the following claims that were mentioned explicitly and/or alluded to in their prior complaints (and/or in the complaints of other RNC cases), in light

---

2 Some of these individuals may be found to not have been policymakers, but rather supervisors implementing policy, in which case it becomes of even greater importance to amend them into the complaints as individual defendants, as their acts in their official capacity in that circumstance would not automatically be considered the acts of the presently named City of New York.

4

of the evidence that has been developed to date: (1) a constitutional challenge to the defendants'

admitted policy of fingerprinting all persons arrested in connection with the 2004 Republican

National Convention ("RNC"), and a related specification of a state law claim pursuant to New

York State Criminal Procedure Law §§ 160.10 and 160.50 for the fingerprinting and the failure

to ensure that the forwarded prints and other personal information of RNC arrestees were

returned or destroyed by other law enforcement agencies / entities; (2) a constitutional challenge

to the alleged policy and/or practice of instituting a system of false sworn statements by police

officers to attempt to justify unlawful and indiscriminate mass arrests; (3) a facial and as-applied

challenge to the enforcement during the RNC of N.Y.C. Admin. Code § 10-110 (Parading

Without a Permit) and subsection 5 of N.Y. Penal Law § 240.20 (Disorderly

Conduct)(concerning obstruction of vehicular and pedestrian traffic); (4) an as-applied challenge

to the enforcement during the RNC of subsection 6 of N.Y. Penal Law § 240.20 (Disorderly

Conduct)(concerning refusal to disperse upon a lawful order to do so); (5) further claims under

42 U.S.C. §1983 for individual participatory and supervisory liability against those who have

been discovered in the course of discovery.[3]

---

[3]Additional organizational and format changes have been made in the proposed amendments, including, amplified factual allegations based on information learned in discovery since the first amended complaint was filed.

Plaintiffs seek to file the amendments because facts which support the addition of the new defendants have become known through discovery conducted since the last incarnation of the complaints were filed -- discovery which is still continuing rapidly apace.[4]  The proposed amendments are not prejudicial to defendants.  Plaintiffs' prior complaint incarnations clearly delineated the acts for which plaintiffs are suing and made obvious, through the use of John Doe and Richard Roe defendants, that plaintiffs expected to identify additional defendants involved in those acts as discovery proceeded.  And with the exception of the allegations against the NYPD Legal Bureau, all of the newly pled claims in the proposed amendments were previously asserted either in the prior incarnations of the complaints in these actions or in other RNC-related actions, with which this case has been consolidated for purposes of discovery.  Regarding the Legal Bureau's role during the RNC, the parties have been litigating plaintiffs' allegations in that regard for nearly ten months – i.e., since plaintiffs in the RNC putative class action MacNamara, et al., v. City of New York, et al., 04 Civ. 9216 (KMK)(JCF) filed their motion to compel documents as to which defendants had asserted the attorney-client privilege on October 30, 2006.

The original complaint in MacNamara named the following individual policymaking / supervisory defendants who, as described above, Plaintiffs now seek to amend into these actions as defendants:  Mayor Michael Bloomberg, Police Commissioner Raymond Kelly, Chief of Department Joseph Esposito, Commander of the NYPD Disorder Control Unit Thomas Graham, Assistant Chief Bruce Smolka, Assistant Chief Terrence Monahan, Assistant Chief John Colgan.

---

[4]As the Court is well aware, defense witness depositions in the consolidated RNC actions have been so-ordered at a rate of several per week continuing through the middle of November 2007.

This Memorandum of Law references (and is based in large part upon and uses the same language as) the Memorandum Of Law In Support Of Motion For Leave To File Second Amended Class Action Complaint, and its accompanying exhibits, that was filed with this court on August 27, 2007 in the RNC putative class action <u>MacNamara, et al., v. City of New York, et al.,</u> 04 Civ. 9216 (KMK)(JCF).  I am indebted to its authors, Clare Norins, Jonathan Moore, and Rachel Kleinman, for their fine and hard work that inures to my clients' benefit herein.

For the reasons given herein and in the <u>MacNamara</u> motion papers in support of the Motion For Leave To File Second Amended Class Action Complaint in that action, and its accompanying exhibits, and as justice requires, plaintiffs respectfully request leave to file the proposed amendments to the pleadings attached as **Exhibits A, B, C, D and E** to the Declaration of Jeffrey Rothman.

<u>**ARGUMENT**</u>

A.      <u>LEGAL STANDARD</u>

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires."

> The Rule reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated, <u>see</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47-48 (1957), and 'mere technicalities' should not prevent cases from being decided on the merits, <u>see</u> <u>Foman v. Davis</u>, 371 U.S. 178 (1962). <u>See also</u> 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u>: Civil 2d § 1471 (2d ed.1990).

<u>Monahan v. New York City Dept. of Corrections</u>, 214 F.3d 275, 283 (2d Cir. 2000).  <u>Accord</u> <u>McKenna v. Incorporated Village of Northport</u>, 2007 WL 2071603, at *3 (E.D.N.Y. July 13, 2007); <u>Spiegler v. City of New York</u>, 2006 WL 2587990, *2 (S.D.N.Y. Sept. 8, 2006).

Leave to amend a complaint falls within the sound discretion of the trial court.  <u>Zenith Radio</u>

7

Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971); O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 70 (2d Cir. 2002). However, amendments as a general matter are favored in order "to facilitate a proper decision on the merits." Foman, 371 U.S. at 182 (quoting Conley, 355 U.S. at 48).

The courts have articulated four primary reasons why a court would not otherwise permit an amendment to a complaint under Rule 15. These include undue delay, bad faith, prejudice to the opposing party, and futility of the amendment. See Foman, 371 U.S. at 182; Monahan, 214 at 283. As none of these factors are present in the instant case, the Court should therefore grant plaintiff's motion to amend the complaint. See Monahan, 214 at 283.

B.    ADDITION OF NEW INDIVIDUAL DEFENDANTS

As noted above and explained further below, Plaintiffs seek to add the following new individual defendants uniformly across these three actions. There is no prejudice to defendants as the identity of these individuals and the role they played in affecting arrests and detentions during the RNC, and in designing and implementing the policies and practices challenged in the prior incarnations of plaintiffs' complaints and motion practice concerning the NYPD Legal Bureau, were at all times available to defendants. Given that discovery in this action is massive and on-going, there has been no undue delay or bad faith by plaintiffs in electing to file these amendments at the close of the statute of limitations rather than making multiple, incremental motions to amend along the way. Finally, there is no undue hardship presented to the new defendants plaintiffs propose to add since they have all either been deposed or noticed for a deposition, and since, upon information and belief, the City of New York, through its Corporation Counsel, will represent all newly added defendants.

8

1.       **Policy & Practice Defendants**

In addition to those policy and practice defendants who Plaintiffs wish to add who are, as noted above, already defendants in the MacNamara action (Mayor Michael Bloomberg, Police Commissioner Raymond Kelly, Chief of Department Joseph Esposito, Commander of the NYPD Disorder Control Unit Thomas Graham, Assistant Chief Bruce Smolka, Assistant Chief Terrence Monahan, Assistant Chief John Colgan), plaintiffs join with MacNamara counsel in wishing to add the following policy and practice defendants:

Plaintiffs seek leave to add **Jack McManus** as a defendant. McManus is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period. See Exhibits B and F- testimony of former NYPD Assistant Chief Patrick Devlin and Defendants' witness list in the Schiller and Dinler RNC cases - to Declaration of Clare Norins in support of the MacNamara Motion For Leave To File Second Amended Class Action Complaint. He is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the arrest and detention-related policies, practices and/or customs complained of in plaintiffs' pleadings.

Plaintiffs seek leave to add **David Cohen** as a defendant. Cohen is the Deputy Commissioner for Intelligence for the New York City Police Department. He supervised investigations and gathering of intelligence leading up to the RNC, the results of which he interpreted and presented to Police Commissioner Ray Kelly for the purpose of formulating how the City of New York would be policed during the week of the RNC. Exhibits C and F- David Cohen declaration and Defendants' witness list in the Schiller and Dinler RNC cases - to

9

Declaration of Clare Norins in support of the MacNamara Motion For Leave To File Second Amended Class Action Complaint. Defendants have represented that this intelligence justified the NYPD's no-summons and blanket fingerprinting policies for RNC arrestees.  Cohen is therefore responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of in plaintiffs' pleadings.

### 2.    Legal Bureau Claim and Defendants

The proposed amendments include the allegation that the NYPD Legal Bureau spearheaded and/or participated in the systematic creation of perjured sworn statements by police officers in an attempt to justify the hundreds of unlawful arrests made during the week of the RNC.  The evidentiary basis for this allegation of systemic perjury was set forth in the MacNamara plaintiffs' October 30, 2006 motion to compel production of documents and January 30, 2007 reply (including the 1/30/07 letter brief submitted by Michael Spiegel, Esq.), wherein plaintiffs challenged defendants' assertion of the attorney-client privilege pursuant to the crime-fraud exception.  The evidentiary basis was further articulated in plaintiffs' Rule 72 objections [Docket Entry No. 135] to this Court's March 14, 2007 decision  [Docket Entry No. 133]. Further evidence of the Legal Bureau's role in creating falsified sworn statements has been presented to the Court as it becomes available.

**Stephen Hammerman** was Deputy Commissioner for Legal Matters of the New York City Police Department at the time of the RNC, in which capacity he oversaw the operations of the NYPD Legal Bureau.  See Exhibit D - testimony of Hammerman - to Declaration of Clare Norins in support of the MacNamara Motion For Leave To File Second Amended Class Action Complaint.  He is therefore ultimately responsible for the actions and/or omissions committed by

10

the Legal Bureau in connection with the RNC.  Hammerman also personally set a tone of lawlessness and contempt within the NYPD for individual rights during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

**Thomas Doepfner**, Assistant Deputy Commissioner for Legal Matters, coordinated and supervised members of the NYPD Legal Bureau assigned to work during the RNC, including at the Post Arrest Staging Site at Pier 57 where Legal Bureau attorneys assisted arresting officers with the preparation and falsification of their arrest narratives and memo book entries.  See Exhibit E - testimony of NYPD Sergeant Cai - to Declaration of Clare Norins in support of the MacNamara Motion For Leave To File Second Amended Class Action Complaint.  Moreover, Deputy Commissioner Hammerman has testified that he delegated his authority to Doepfner with regard to operations of the Legal Bureau during the RNC.  See Exhibit D - testimony of Hammerman - to Declaration of Clare Norins in support of the MacNamara Motion For Leave To File Second Amended Class Action Complaint.

**Ruby Marin-Jordan**, Special Counsel to the New York City Police Department, was also present at Pier 57 during the RNC.  See Exhibit D - testimony of Hammerman - to Declaration of Clare Norins in support of the MacNamara Motion For Leave To File Second Amended Class Action Complaint.  Defendants represent that she possesses personal knowledge on the subject of the Legal Bureau's role at Pier 57.  See Exhibit D - Defendants' witness list - to Declaration of Clare Norins in support of the MacNamara Motion For Leave To File Second Amended Class Action Complaint.  Additionally, defendants have represented that Marin-Jordan, together with Assistant Deputy Commissioner Doepfner, was in charge of NYPD Legal

11

Bureau attorneys at Pier 57, which is where Legal Bureau attorneys assisted arresting officers

with the preparation and, at least in some instances, falsification of their arrest narratives and

memo book entries.

**Deputy Inspector Kerry Sweet** was Assistant Deputy Commissioner Doepfner's

executive officer during the RNC, at which time Sweet was of the rank of captain.  Sweet

prepared legal training materials for the RNC and also conducted meetings for members of the

NYPD Legal Bureau regarding the duties and functions of the Legal Bureau during the RNC.

See Exhibits D, F, and G - testimony of Hammerman; Defendants' witness list; RNC Legal

Guidelines - to Declaration of Clare Norins in support of the MacNamara Motion For Leave To

File Second Amended Class Action Complaint.  Plaintiffs are including Deputy Inspector Sweet

as a defendant because of his policymaking role / supervisory liability for the unlawful conduct

of NYPD Legal Bureau attorneys both as relates to training and as relates to actions taken by

Legal Bureau attorneys at Pier 57.


### 3.    New Defendants particular to the Bastidas action, concerning arrests at 16th Street between Union Square East and Irving Place on August 31, 2004.

Inspector James Essig, together with Inspector Gerald Dieckmann, both of whom are

already defendants in the Bastidas case, made the mass arrest decision on August 31, 2004 on

16th Street between Union Square East and Irving Place.  See, Exhibit N to Declaration of Clare

Norins in support of the MacNamara Motion For Leave To File Second Amended Class Action

Complaint - Essig Tr. at 159-60.  Inspector Thomas Galati, who is also presently a defendant in

the Bastidas action, was the highest ranking officer on the scene, and approved the mass arrest

decision made by Inspectors Dieckmann and Essig.  See Exhibit O Declaration of Clare Norins in support of the <u>MacNamara</u> Motion For Leave To File Second Amended Class Action Complaint - Galati Tr. at 302.  Inspector Essig has also testified that he sent two (then) lieutenants, Lorenzo Johnson (already a defendant in the <u>Bastidas</u> case) and Patrick Cortright, up and down the block to tell people who they thought did not belong there to leave the block, and that that was the extent of the efforts he made to not catch the dolphins with the tuna, to use Mr. Essig's phraseology.  Plaintiffs now seek leave to add Lieutenant Cortright, as his role paralleled that of (now) Captain Johnson, and plaintiffs maintain that their activities, which any reasonable mind would know were manifestly inadequate to ensure that massive false arrests were not made on the block, were a significant contributing factor to the mass false arrests of hundreds of people that took place on the block.

Lieutenant Mark Keegan made the decision to form a police line first across Union Square East to block the northward movement of a large number of people who were walking up that block behind a number of musicians, and to direct all of the people to turn right and enter the block of 16th Street that ran between Union Square East and Irving Place.  Lieutenant Keegan then made the decision to form a police line across 16th Street at the Union Square East end of the block and refused to let people exit the block, resulting in their entrapment and unlawful arrests.

Because of this important contributory role in the violation of Plaintiffs' civil rights played by these individuals, Plaintiffs therefore seek leave to add as defendants Lieutenants Cortright and Keegan.  See **Exhibit A** to Rothman declaration - <u>Bastidas</u> proposed Second Amended Complaint at ¶ 59.

4.    **New Defendants particular to the <u>Xu</u> action, concerning arrests at 17th Street and 5th Avenue on August 31, 2004.**

As the hundreds of arrestees were being handcuffed and removed by the NYPD from East 16th Street to Pier 57 (as the incident primarily at issue in the <u>Bastidas</u> case, just described above, continued to unfold), a much smaller number of individuals decided they wished to proceed peacefully together from the other side of Union Square Park to the designated free speech zone near Madison Square Garden.

They proceeded northward in an single or double file fashion on the sidewalk along Union Square West, and when they arrived at 17th Street, they were similarly diverted from their desired northward path, and directed by the police to the west on 17th Street. Upon arrival at 17th Street and 5th Avenue, a (then) Deputy Inspector Thomas DiRusso informed the people to hold on and he would assist them in getting where they wanted to go. See **Exhibit B** to Rothman declaration - <u>Xu</u> proposed Second Amended Complaint at ¶¶ 38 and 39. A short while later all of the civilians at that location were placed under arrest.

The arrest decision was made jointly by (now) Inspector DiRusso and another Inspector (then Deputy Inspector) Kevin Ward. These two Inspectors made the mass-arrest decision at 17th Street at 5th Avenue. <u>See</u> Exhibit P to Declaration of Clare Norins in support of the <u>MacNamara</u> Motion For Leave To File Second Amended Class Action Complaint - DiRusso Tr. at 63.

Plaintiffs therefore seek leave to add DiRusso and Ward as defendants for jointly ordering these mass false arrests, and also seek leave to add a Lieutenant Bergquist and Sergeant

14

William Murphy, who were remiss in their supervisory duties, including failing to ensure that assigned arresting officers under their command had individualized knowledge that any of their assigned arrestees had engaged in any illegal conduct, and failing to ensure that their subordinate officers did not fill out false paperwork and swear out false affidavits attesting to facts of which they were not truly aware.  See **Exhibit B** to Rothman declaration - <u>Xu</u> proposed Second Amended Complaint at ¶ 49.

5.    **New Defendants particular to the <u>Sloan</u> action, concerning arrests at 35th Street between 5th and 6th Avenues on August 31, 2004.**

Retired Chief Bruce Smolka, who plaintiffs seek (see above) to add in all cases as a policy / supervisory defendant, made the mass arrest decision on August 31, 2004 on 35th Street between Fifth and Sixth Avenues.  Prior to the arrests, Smolka also made the decision to form a line of police scooters across 35th Street toward the 5th Avenue end of the block, which, in conjunction with a police line that had entered the block from Sixth Avenue, resulted in trapping people on the block, where they were unlawfully arrested.  <u>See</u> Exhibit I to Declaration of Clare Norins in support of the <u>MacNamara</u> Motion For Leave To File Second Amended Class Action Complaint - Smolka Tr. at 374; Exhibit K to Declaration of Clare Norins in support of the <u>MacNamara</u> Motion For Leave To File Second Amended Class Action Complaint - Bologna Tr. at 75-76.  Inspector Anthony Bologna, who is already a defendant in the <u>Sloan</u> case, was a captain at the time of the RNC, and gave the order on 35th Street for police to form a line from building to building at the Sixth Avenue end of the block to prevent people from leaving.  <u>See</u> Exhibit Q to Declaration of Clare Norins in support of the <u>MacNamara</u> Motion For Leave To

File Second Amended Class Action Complaint - Wolf Tr. at 112-13.  Lieutenant John Wolf

formed the line at the instruction of Bologna and was responsible for not allowing anyone to exit

the block past the line, resulting in people being trapped on the block and unlawfully arrested.

See Exhibit Q to Declaration of Clare Norins in support of the MacNamara Motion For Leave To

File Second Amended Class Action Complaint - Wolf Tr. at 66, 70-71.  Lieutenant Daniel

Albano, of the NYPD Legal Bureau, who plaintiffs seek (see above) to add in all cases as a

policy / supervisory defendant, was also present on scene, authorized the arrests, and contributed

to creating false accounts about what had transpired.  See **Exhibit C** to Rothman declaration -

Sloan proposed Second Amended Complaint at ¶¶ 41 and 42 .

Plaintiffs therefore seek leave to add as on-scene defendants Bruce Smolka, John Wolf**,**

and Daniel Albano.


**6.      New Defendants particular to the Galitzer action, concerning Plaintiff's
arrest at 35th Street between 5th and 6th Avenues on August 31, 2004.**


Plaintiffs seek leave to add Deputy Chief James O'Neill as a defendant with respect to

the wrongful arrest of plaintiff Gwynn Galitzer at the New York Public Library on August 31,

2004. Chief O'Neill made the unlawful decision to clear the mezzanine in front of the Public

Library which resulted in the police giving unlawful orders to disperse, and which created the

conditions which led to plaintiff's unlawful assault and arrest.  See Exhibit U to Declaration of

Clare Norins in support of the MacNamara Motion For Leave To File Second Amended Class

Action Complaint - O'Neill Tr. at 429.  Plaintiffs also seek leave to add Inspector James

Capaldo, Deputy Inspector Ronald Mercandetti, and Captain Eugene Montchal, all of whom

were responsible, in whole or in part, for the creation of that hostile climate and the conditions that led to Plaintiff's arrest, including participating in illegally clearing the plaza, and in making false arrests and searches in the vicinity of the plaza area.  Former NYPD Deputy Commissioner for Legal Matters Stephen Hammerman and NYPD Legal Lieutenant Daniel Albano, who plaintiffs seek (see above) to add in all cases as policy / supervisory defendants, were also on scene and participated in, and contributed to, the false arrests that took place.  Mr. Hammerman is seen on a video tape ordering that clearly false charges be lodged against an individual named Dennis Kyne in the library plaza a few short minutes after Plaintiff Galitzer's arrest.  See **Exhibit D** to Rothman declaration - Sloan proposed Second Amended Complaint at ¶¶ 30-34, 49.

Plaintiffs therefore seek to add O'Neill, Capaldo, Mercandetti, Montchal, Hammerman and Albano as on-scene defendants.


### 7.    New Defendants particular to the Sikelianos action, concerning Plaintiff's arrest at 27th Street between Madison and Park Avenues on August 31, 2004.

Plaintiff Nikolas Sikelianos was pulled off the back of his bicycle and arrested by Captain Joseph Dowling[5].  Unbeknownst to Plaintiff, his two drivers, Police Officers David Montanez and Mason Wang, were with Captain Dowling when this occurred, and were the two John Does originally named in Plaintiff's complaint who physically took Plaintiff into custody immediately thereafter.  See **Exhibit E** to Rothman declaration - Sikelianos proposed First Amended Complaint at ¶ 33.  They had not been identified to Plaintiff prior to his being deposed on August 17, 2007, and plaintiffs now seek to add them as defendants in this action.

---

5 As the Court is aware, there is a pending motion to continue the deposition of Captain Dowling.

For the reasons stated above, and because justice so requires, plaintiffs respectfully request that the Court grant leave to amend the pleadings in these actions to add the foregoing individual defendants.

C.     ADDITION OF NEW CLAIMS

As stated above, the proposed amended pleadings elaborate upon and state with greater specificity the following claims that were referenced in the prior versions of plaintiffs' complaints that have been filed, in light of the evidence that has been developed to date, to wit: (1) a constitutional challenge to the defendants' admitted policy of fingerprinting all persons arrested in connection with the 2004 Republican National Convention ("RNC"), and a related specification of a state law claim pursuant to New York State Criminal Procedure Law §§ 160.10 and 160.50 for the fingerprinting and the failure to ensure that the forwarded prints and other personal information of RNC arrestees were returned or destroyed by other law enforcement agencies / entities; (2) a constitutional challenge to the alleged policy and/or practice of instituting a system of false sworn statements by police officers to attempt to justify unlawful and indiscriminate mass arrests; (3) a facial and as-applied challenge to the enforcement during the RNC of N.Y.C. Admin. Code § 10-110 (Parading Without a Permit) and subsection 5 of N.Y. Penal Law § 240.20 (Disorderly Conduct)(concerning obstruction of vehicular and pedestrian traffic); (5) an as-applied challenge to the enforcement during the RNC of subsection 6 of N.Y. Penal Law § 240.20 (Disorderly Conduct)(concerning refusal to disperse upon a lawful order to do so); (6) further claims under 42 U.S.C. §1983 for individual participatory and supervisory

liability against those who have been discovered in the course of discovery.

No prejudice can be shown by defendants with regard to the above proposed amendments since, under Federal Rule of Civil Procedure 15(b), pleadings may be amended to conform to evidence adduced at trial "at any time, even after judgment."  Plaintiffs merely seek the opportunity to add these claims at this point, in order to more clearly define the scope of the litigation.  Justice and public policy also require that plaintiff be permitted to add this claim in order to vindicate the purposes 42 U.S.C. § 1983, which recognizes "the need ... to hold responsible public officials exercising their power in a wholly unjustified manner[.]"  Poe, 282 F.3d at 131.

### 1.      Constitutional Challenges

There is no prejudice to defendants in amending the pleadings to assert challenges to the NYPD's fingerprinting policy during the RNC, the alleged system of creating false sworn statements by police officers, the enforcement of N.Y.C. Admin. Code § 10-110 (Parading Without a Permit), the enforcement of N.Y. Penal Law § 240.20 (Disorderly Conduct) and the failure of the NYPD to request the retrieval, destruction and/or expungement of fingerprint, arrest records and/or other personal data of plaintiffs that they had forwarded to other law enforcement agencies.

Excepting the alleged falsification of sworn statements (which had, in fact, been presciently pled by then pro se plaintiff Udo Drescher in his filed pro se complaint:  See Exhibit C to Rothman declaration of August 29, 2007 in support of Plaintiffs' August 29, 2007 motion in the Phillips, Coburn, and Drescher RNC actions - proposed First Amended Complaint in Drescher v. City of New York, et al. at ¶ 116: "In addition, upon information and belief, the

19

frequency of false sworn statements in support of criminal complaints in connection with the RNC shows that the defendant CITY OF NEW YORK failed to train its police force to make truthful sworn statements in support of complaints, thus causing the malicious prosecution of plaintiff."), the basic conduct underlying the newly pled claims were contained in plaintiffs' prior pleadings and those of the <u>MacNamara</u> case [<u>see, e.g.</u>, <u>MacNamara</u> First Amended Complaint at ¶ 63 ("defendants implemented arrest procedures . . . These included . . . the fingerprinting all of those arrested, even for minor offenses for which fingerprinting is unnecessary"), ¶ 67 ("fingerprinting everyone arrested in violation of state law"), ¶ 69 ("[m]ost of the more than 1,800 people who were arrested during the period just before and during the RNC were arrested for minor violations, such as disorderly conduct and parading without a permit . . . defendants' decision to fingerprint all those arrested during the RNC . . . resulted in . . . the improper entry of fingerprints into government databases"), ¶ 83 ("defendants . . . implemented policies, practices or customs of indiscriminately arresting without just or probable cause large groups of people who were peacefully assembled and who were either participating in, were observing or were in the vicinity of demonstrations and protests"), ¶ 84 ("This mass arrest policy was a refinement of the tactic . . . of using mass arrests to unlawfully suppress protected First Amendment conduct")].

Further, complaints in other RNC-related actions, with which this case has been consolidated for purposes of discovery, have long included all of these claims plaintiffs seek to add, thus providing notice to defendants that these issues would be part of the RNC litigation. <u>See, e.g.</u>, 10/7/04 Complaint in <u>Dinler v. City of New York</u>, 04-CV-7921 (KMK)(JCF) at ¶ 72 and p. 22 (challenging blanket fingerprinting policy and seeking injunction ordering the return or

expungement of fingerprints); 3/15/06 Complaint in <u>Kyne v. Wolfowitz</u>, 06-CV-2041 (KMK)

(JCF) at ¶¶ 171, 530, 622 and p. 125 (alleging defendants had a policy/practice of ordering,

encouraging and/or facilitating the swearing out of false accusatory instruments; seeking

declaration that Parading Without a Permit statute is unconstitutional both facially and as

applied).

     The previously filed complaints in all of these five actions already have made facial and

as-applied challenges to the Parading Without a Permit and Disorderly Conduct statutes.  See,

First Amended Complaint in <u>Carney v. City of New York</u>, 05-CV-7672 (KMK) (JCF) at ¶¶ 55 &

67.  See also, **Exhibit B** to Rothman declaration - proposed Second Amended Complaint with

track changes in <u>Xu v. City of New York</u>, 05-CV-7672 (KMK) (JCF) at ¶¶ 81 and 101.

     Finally, as noted above, no prejudice can be shown by defendants since Rule 15(b)

permits  pleadings to be amended to conform to the evidence "at any time, even after judgment"

and "the court . . . shall [allow amendment of the pleadings] freely when the presentation of the

merits of the action will be subserved thereby."  Plaintiffs seek the opportunity to add these

claims at this point, in order to more clearly define the scope of the litigation.

<u>**CONCLUSION**</u>

     Plaintiffs should be permitted to obtain "a proper decision on the merits" of their claims.

<u>Conley v. Gibson</u>, 355 U.S. 41, 48, 78 S.Ct. 99, 103 (1957).  No undue delay, bad faith, or

prejudice to the opposing parties would result from allowing the proposed amendments to the

complaint.  For the reasons stated above, and because justice so requires, plaintiffs respectfully

request that the Court grant Plaintiffs' motion for an order permitting plaintiffs in the <u>Bastidas, et

al.</u> case to file a Second Amended Complaint, permitting plaintiffs in the <u>Xu, et al.</u> case to file a

21

Second Amended Complaint, permitting plaintiffs in the <u>Sloan, et al.</u> case to file a Second

Amended Complaint, permitting plaintiff Gwynn Galitzer to file a s Second Amended Complaint

in the <u>Galitzer</u> case, and permitting plaintiff Nikolas Sikelianos to file a First Amended

Complaint in the <u>Sikelianos</u> case.


Dated:        New York, New York
              August 31, 2007


                                        _____/S/_____
                                        JEFFREY A. ROTHMAN, Esq.
                                        (JR-0398)
                                        315 Broadway, Suite 200
                                        New York, New York 10007
                                        (212) 227-2980

                                        Attorney for plaintiffs