UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

| | |
|---|---|
| DEIRDRE MACNAMARA, et al., | |
| individually and on behalf of those similarly situated, | 04-CV-9216 (RJS) (JCF) |
| Plaintiffs, | |
| -against- | ECF Case |
| THE CITY OF NEW YORK, a municipal entity, et al., | |
| Defendants. | |

--------------------------------------------------------------------x

| | |
|---|---|
| JOSEPH AMATO, et al., | 05-CV-8453 (RJS) (JCF) |
| (formerly ABDELL, et al.) | |
| Plaintiffs, | |
| -against- | ECF Case |
| THE CITY OF NEW YORK, et al., | |
| Defendants. | |

--------------------------------------------------------------------x

| | |
|---|---|
| SARAH COBURN, et al., | 05-CV-7623 (RJS) (JCF) |
| JEFFREY PHILLIPS, et al., | 05-CV-7624 (RJS) (JCF) |
| EMILY SLOAN, et al., | 05-CV-7668 (RJS) (JCF) |
| GWYNN GALITZER, | 05-CV-7669 (RJS) (JCF) |
| BETTY BASTIDAS, et al., | 05-CV-7670 (RJS) (JCF) |
| RANDY XU, et al. | 05-CV-7672 (RJS) (JCF) |
| NIKOLAS SIKELIANOS, | 05-CV-7673 (RJS) (JCF) |
| UDO DRESCHER, | 05-CV-7541 (RJS) (JCF) |
| Plaintiffs, | |
| -against- | ECF Cases |
| THE CITY OF NEW YORK, et al., | |
| Defendants. | |

--------------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' OBJECTIONS TO JUDGE FRANCIS'S ORDER
## GRANTING PLAINTIFFS PARTIAL LEAVE TO AMEND THEIR COMPLAINTS

Jonathan C. Moore (JM 6902)
Clare R. Norins (CN 2821)
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue
New York, New York 10016
(212) 490-0400
*Attorneys for Plaintiffs and Putative Class Members
in MacNamara*

Jeffrey Rothman (JR 0398)
315 Broadway, Suite 200
New York, New York 10007
(212) 227-2980
*Attorney for Plaintiffs in Coburn,
Phillips, Sloan, Galitzer, Bastidas, Xu,
Sikelianos and Drescher*

Alan Levine (AL 5297)
99 Hudson Street, 14th Floor
New York, New York 10013
(212) 739-7506
*Attorney for Plaintiffs in Abdell (now Amato)*

March 17, 2008

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    Defendants' Objections on the Purported Basis of CMO Deadlines,
      Delay & Prejudice Are Without Merit and Should Be Rejected . . . . . . . . . . . . . . . . . . . . 2

      A.    Defendants' Cannot Belatedly Rely on Inoperative CMO Deadlines . . . . . . . . . . 2

      B.    Defendants Made it Impossible, In Any Case, to Meet the CMO
            Deadlines and Judicial Resources Were, Therefore, Conserved
            by Avoiding Piecemeal Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    Failure to Act on Acquired Knowledge Does Not Mandate That
            Plaintiffs' Motions to Amend Should Have Been Denied . . . . . . . . . . . . . . . . . . . 6

      D.    Judge Francis Considered and Rejected Defendants' Claims of
            Prejudice and Defendants Make No Argument That His
            Conclusions Were Contrary to Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.   Deputy Commissioner Cohen Is A Proper Defendant Based on
      the Allegations Pled in the Amended Complaints . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.    Because Cohen Intentionally Provided Misinformation  Upon Which
            Defendants Based Their Unlawful Arrest and Detention Policies,
            He Is Responsible for Causing the Violation of Plaintiffs' Rights . . . . . . . . . . . . 9

      B.    The Allegations Concerning Commissioner Cohen
            Give Adequate Notice of the Claim Against Him . . . . . . . . . . . . . . . . . . . . . . . . . 12

      C.    The Theory of Cohen's Liability Is Clearly Established . . . . . . . . . . . . . . . . . . . . 13

      D.    There Can Be No Qualified Immunity Where
            There is An Allegation of International Wrongdoing
            or Deliberate Indifference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      E.    The Authority Cited By Defendants Does Not Support Their Cause . . . . . . . . . 18

III.  Defendants Fail to Establish Any Error by Judge Francis in Permitting
      Amendments to Add Statutory Challenges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGES**

Abu-Nassar v. Elders Futures, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
1994 WL 445638 (S.D.N.Y. Aug. 17, 1994)

Anderson v. Creighton . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
483 U.S. 635 (1987)

Ayers v. Davidson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
101 Fed.Appx. 595 (6th Cir. 2004)

Beer-Capitol v. Whetzel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
256 F.3d 120 (3d Cir. 2001)

Bell Atlantic Corporation v. Twombly . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.1, 12, 12 n.13, 13
127 S.Ct. 1955 (2007)

Blyden v. Mancusi . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
186 F.3d 252 (2d Cir. 1999)

Cancel v. Mazzuca . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
2002 WL 1891395 (S.D.N.Y. Aug. 15, 2002)

Cancel v. Mazzuca . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
205 F.Supp.2d 128 (S.D.N.Y. 2002)

Caraballo v. City of New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
2007 WL 1584202 (S.D.N.Y. May 31, 2007)

Cartier, Inc. v. Four Star Jewelry Creations, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 n.6
2004 WL 169746 (S.D.N.Y. Jan. 28, 2004)

Clement v. Gomez . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
298 F.3d 898 (9th Cir. 2002)

Credit Suisse First Boston LLC v. Coeur D'Alene Mines Corp. . . . . . . . . . . . . . . . . . . . . . . . 5 n.6
2005 WL 323714 (S.D.N.Y. Feb.10, 2005)

Dais v. Lane Bryant, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
2000 WL 145755 (S.D.N.Y. Feb. 8, 2000)

DiPace v. Goord . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19
308 F.Supp.2d 274 (S.D.N.Y. 2004)

Estelle v. Gamble . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
429 U.S. 97(1976)

Handschu v. Special Services Division .......................................... 19 n.18
71 Civ. 2203 (CSH) (S.D.N.Y. Feb. 27, 2008)

Hope v. Pelzer ............................................................... 15
536 U.S. 730 (2002)

Iqbal v. Hasty ............................................................. 12 n.13
490 F.3d 143 (2d Cir. 2007)

John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp. ............................ 1
22 F.3d 458 (2d Cir. 1994)

Kerman v. City of New York ...................................................... 17
261 F.3d 229 (2d Cir. 2001)

K.H. Through Murphy v. Morgan .................................................. 15
914 F.2d 846 (7th Cir. 1990)

LaBounty v. Coughlin .......................................................... 15
137 F.3d 68 (2d Cir. 1998)

Locurto v. Safir .............................................................. 17
264 F.3d 154 (2d Cir. 2001)

Lyondell-Citgo Refining v. Petroleos de Venezuela ................................ 2 n.2
2005 WL 883485 (S.D.N.Y. Apr. 15, 2005)

MacWade v. Kelly ............................................................. 19
2005 WL 3338573 (S.D.N.Y. Dec. 7, 2005),
aff'd 460 F.3d 260 (2d Cir. 2006)

Meyer v. Board of County Com'rs of Harper County, Okla. ........................ 16, 17
482 F.3d 1232 (10th Cir. 2007)

Mills v. Poole ........................................................ 1, 16 n.16
2008 WL 413299 (W.D.N.Y. Feb. 13, 2008)

Monroe v. Pape ............................................................. 11, 15
365 U.S. 167 (1961)

Monteiro v. City of Elizabeth .................................................... 17
436 F.3d 397 (3d Cir.),
cert. denied 1275 S.Ct. 116 (2006)

Moody v. St. Charles County ..................................................... 14
23 F.3d 1410 (8th Cir. 1994)

O'Sullivan v. The New York Times Co. ........................................... 5 n.6
1997 WL 762050 (S.D.N.Y. Dec. 8, 1997)

Pkfinans Intern. Corp. v. IBJ Schroeder Leasing Corp. ............................... 6
1996 WL 84481 (S.D.N.Y. Feb. 27, 1996)

Ricciuti v. New York City Transit Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17
124 F.3d 123 (2d Cir. 1997)

Robinson v. Keane . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 12, 16 n.16
1999 WL 459811 (S.D.N.Y. June 29, 1999)

Ruotolo v. City of New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 n.6
2006 WL 2372236 (S.D.N.Y. Aug. 16, 2006)

Russo v. County of Bridgeport . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
479 F.3d 196 (2d Cir.),
cert. denied 128 S.Ct. 109 (2007)

Sommer v. PMEC Assoc. and Co. Ltd. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
1993 WL 361660 (S.D.N.Y. Sep. 14, 1993)

Standard Inv. Chartered, Inc. v. National Ass'n of Securities Dealers . . . . . . . . . . . . . . . . . . . . . . 2
Inc., 2007 WL 1121734 (S.D.N.Y. Apr. 11, 2007)

State Farm Ins. Co. v. Kop-Coat, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2 n.2, 5 n.6
183 Fed. Appx. 36 (2d Cir. 2006)

Travelers Ins. Co. v. Estate of Garcia, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 16 n.16
2003 WL 1193535 (E.D.N.Y. Feb. 4, 2003)

United States v. Lanier . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
520 U.S. 259 (1997)

Weintraub v. Board of Education . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
423 F. Supp. 2d 38 (E.D.N.Y. 2006)

Williams v. Greifinger . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
97 F.3d 699 (2d Cir. 1996)

Zahrey v. Coffee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15
221 F.3d 342 (2d Cir. 2000)

## STATUTES

Fed.R.Civ.P. Rule 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13
Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Fed.R.Civ.P 16(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4
42 U.S.C § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12, 13, 14

## OTHER SOURCES

Judith Miller, "When Activists Are Terrorists,"
The Wall Street Journal, May 3, 2007 at A17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19 n.18

## PRELIMINARY STATEMENT

Defendants' February 25, 2008 objections to Magistrate Judge Francis's January 23,

2008 Memorandum and Order ("1/23/08 Order") improperly raise numerous arguments for the

first time that were never presented to Judge Francis.[1] See Robinson v. Keane, 1999 WL

459811, at *4 (S.D.N.Y. June 29, 1999) ("An objecting party may not raise new arguments that

were not made before the Magistrate Judge."). This alone provides an ample basis for rejecting

defendants' appeal. See Travelers Ins. Co. v. Estate of Garcia, 2003 WL 1193535, at *2

(E.D.N.Y. Feb. 4, 2003) ("[A] district court will ordinarily refuse to consider, [even] on de novo

review, arguments case law and/or evidentiary material which could have been, but was not

presented to the magistrate judge in the first instance."). Accord Mills v. Poole, 2008 WL

413299, at *2-*3 (W.D.N.Y. Feb. 13, 2008). See, e.g., Abu-Nassar v. Elders Futures, Inc., 1994

WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994) (refusing to entertain new arguments not raised

before the magistrate judge and holding that to do otherwise "would unduly undermine the

authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is

issued to advance additional arguments").

Further, granting permission to amend is, under any circumstances, a discretionary

decision. See John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d

Cir. 1994 ("it is within the sound discretion of the court whether to grant leave to amend"); Dais

---

[1] Defendants argue for the first time in their February 25, 2008 Memorandum of Law ("Rule 72 Memo") that: (1) the deadlines for amending the complaints contained in some of the Case Management Orders, and the "good cause" standard under F.R.C.P. 16(b) for modifying them, were controlling, see Defts' Rule 72 Memo at 6-8; (2) defendants are prejudiced by the addition of a claim for denial of the constitutional right to a fair trial, see id. at 10; (3) the addition of all new defendants and all new claims is prejudicial to them, see id. at 12; (4) plaintiffs' factual pleadings against Deputy Commissioner David Cohen do not satisfy Fed.R.Civ.P. 8(a), see id. at 22-26; and (5) Cohen is entitled to qualified immunity, see id. at 29-32.

v. Lane Bryant, Inc., 2000 WL 145755, at *2 (S.D.N.Y. Feb. 8, 2000) ("The Court has broad

discretion in deciding whether or not to grant leave to amend.")[2]; Standard Inv. Chartered, Inc. v.

National Ass'n of Securities Dealers, Inc., 2007 WL 1121734, at *2 (S.D.N.Y. Apr. 11, 2007)

("with respect to discretionary decisions, courts in this district have concluded that magistrate

judges are afforded broad discretion and reversal is only appropriate if there is an abuse of

discretion.") (internal quotations omitted).  As discussed in greater detail below, defendants

cannot show that Judge Francis abused his discretion in partially granting plaintiffs' motions to

amend (i.e., that his decision was clearly erroneous and contrary to law), nor can defendants

show that his decision should be reversed on de novo review.

## ARGUMENT

**I.    Defendants' Objections on the Purported Basis of CMO Deadlines, Delay &
Prejudice Are Without Merit and Should Be Rejected**

### A.    Defendants' Cannot Belatedly Rely on Inoperative CMO Deadlines

Defendants' contention that Judge Francis erroneously failed to consider the Case

Management Orders ("CMOs") in some of the RNC cases, and the "good cause" standard under

F.R.C.P. 16(b) for modifying them, should be rejected because defendants never argued to Judge

Francis that the CMOs or Rule 16(b) were controlling.  See Robinson, 1999 WL 459811, at *4;

Travelers Ins. Co., 2003 WL 1193535, at *2.  Defendants' contention should additionally be

rejected because it is meritless.

As an initial matter, the CMOs in many of the RNC cases -- including the eight cases

where the plaintiffs are represented by Jeffrey Rothman -- contain no deadline for amending the

---

[2] Even the cases cited by defendants recognize the inherently discretionary nature of whether to
grant or deny leave to amend.  See, e.g., State Farm Ins. Co. v. Kop-Coat, Inc., 183 Fed. Appx.
36, 37-38 (2d Cir. 2006) ("[A] court *has discretion* to deny leave to amend . . ..") (emphasis
added); Lyondell-Citgo Refining v. Petroleos de Venezuela, 2005 WL 883485, at *4 (S.D.N.Y.
Apr. 15, 2005) ("district courts *may* deny leave to amend . . .") (emphasis added).

complaints. See, e.g., Exhibit B to 3/17/08 Declaration of Clare Norins in Opposition to Defendants' Objections ("Norins Decl.") - CMOs in Drescher v. City of New York, et al., 05-CV-7541 (RJS) (JCF); Coburn v. City of New York, et al., 05-CV-7623 (RJS) (JCF); etc. Hence, defendants' CMO argument has no applicability to the amendment of the complaints in those cases.[3]

As for the Case Management Order in MacNamara, which is the only CMO defendants' cite in their Rule 72 Memorandum of Law, it has long been inoperative, even in its amended version. For instance, the Amended CMO ("ACMO") calls for dispositive motions to be fully submitted by November 11, 2006. Although that deadline passed 16 months ago, plaintiffs doubt that defendants would therefore agree that they have waived their right to move for summary judgment. As a further example, by June 1, 2006, the date for the close of all fact discovery under the ACMO, defendants had completed the deposition of only 2 of the 24 class representatives. And as recently as January 22, 2008, defendants first announced their intention to depose, if necessary, 700 non-party witnesses in the consolidated RNC cases. See Ex. C to Norins Decl. - 3/7/08 Letter to Judge Francis at 2. Thus, as defendants concede, they "have engaged in full-blown discovery well beyond the dates set forth in the CMOs." Id. at 3. Accordingly, defendants' attempted reliance on CMO deadlines to reverse Judge Francis's January 23, 2008 Order is wholly divorced from the reality of the consolidated RNC cases.

**B.    Defendants Made it Impossible, In Any Case, to Meet the CMO Deadlines and Judicial Resources Were, Therefore, Conserved by Avoiding Piecemeal Amendments**

Defendants argue that plaintiffs in MacNamara should have moved to amend by July 15, 2005, the date for amending the pleadings under the ACMO without leave of court. See Rule 72

---

[3] Mr. Rothman's cases are Coburn, Phillips, Sloan, Galitzer, Bastidas, Xu, Sikelianos and Drescher.

3

Memo at 6. Yet defendants did not identify Deputy Commissioner David Cohen -- the primary
defendant that the City now opposes being adding to the case -- as a relevant witness in the RNC
cases until December 2006. See Exhibit D to Norins Decl. – 11/28/06 Letter from Chris Dunn to
Judge Francis (confirming December 15, 2006 discovery cut-off date in Schiller & Dinler);
Exhibit E to Norins Decl. - 3/12/07 Order in Schiller & Dinler at 1-2 ("Three days before the
close of discovery, the defendants . . . identif[ied] approximately 130 additional witnesses with
knowledge of the events at issue. One witness so identified was David Cohen . . . After the
discovery deadline, the defendants produced 600 pages of documents not previously revealed . . .
upon which the defendants claim they relied in formulating policies for RNC-related arrests.").
Thus, in any event, defendants' own conduct would have necessitated a motion to amend the
RNC complaints, well beyond the July 15, 2005 date contained in the MacNamara ACMO for
amending without leave. Defendants' dilatory disclosures therefore provided ample "good
cause," within the meaning of F.R.C.P. 16(b), for modification of the scheduling orders with
respect to motions to amend the complaints and refutes defendants' claim that plaintiffs, without
or without CMO deadlines, unnecessarily delayed. Contra Defts' Rule 72 Memo at 6, 8-9.[4]

Additional "good cause" for modification of the scheduling orders existed due to
defendants' recalcitrance in producing police witnesses for deposition, which prevented plaintiffs
from deposing the officers and supervisors from many of the RNC arrest locations until well into
2007. See Ex. F to Norins Decl. – 4/25/07 Letter from Jeffrey Rothman to Judge Francis at 1-3

---

[4] Given defendants' eleventh hour identification of Deputy Commissioner Cohen and their even
tardier production of the intelligence documents, their claim that "there can be no doubt that [ ]
plaintiffs had all of the information they needed at the very beginning of this litigation to assert
the claims that they now belatedly seek to add" is completely disingenuous. Defts' Rule 72
Memo at 9 (emphasis added). Even at present, discovery of Deputy Cohen and the intelligence
documents remains stalled at a relatively early stage due to the procedural roadblocks erected by
defendants, including their protracted litigation of sealing issues.

(seeking court's assistance with scheduling defense witness depositions); Ex. G to Norins Decl. -

4/25/07 Letter from Beldock Levine & Hoffman at 3-5 (seeking same); Ex. H to Norins Decl. -

5/23/07 Letter from Michael Spiegel to Judge Francis (seeking same) & Ex. I - 7/5/07 So-

Ordered Consolidated Deposition Schedule. Thus, up through August 27, 2007 – the date of

plaintiffs' motions to amend – plaintiffs were still engaged in discovery that was informing how

the complaints should be amended, including, inter alia, the identification of defendants and the

appropriateness of supervisory liability claims. Contra Defts' Memo at 10.[5]

Finally, as argued by plaintiffs in their motions to amend, and as recognized by Judge

Francis in his January 23, 2008 Order, waiting until the close of the three-year statute of

limitations rather than moving to amend each time plaintiffs learned something through

discovery that needed to be incorporated into the pleadings, "avoid[ed] burdening the Court with

multiple, incremental motions to amend." 1/23/08 Order at 5 (internal quotations omitted).

Unlike in the cases cited by defendants at pages 8-9 and 11-12 of their brief, when plaintiffs

moved to amend in late August 2007, discovery was still in full swing, with many months to go.[6]

---

[5] Defendants appear to be appealing the grant of leave to add supervisory claims against new defendants. See Rule 72 Memo at 10. This portion of their appeal must be rejected because defendants did not oppose the addition of supervisory claims, or the addition of any of the new defendants, apart from Deputy Commissioner Cohen. See 1/23/08 Order at 5 & 6. Indeed, defendants make clear they are only seeking reversal of Judge Francis's Order "insofar as he permitted the amendments to which defendants objected." Rule 72 Memo at 1 & 4.

[6] In State Farm Ins. Co., cited by defendants, the motion to amend was made one year after discovery had closed and five months after the court's summary judgment decision. See 183 Fed. Appx. at 38. In Ruotolo v. City of New York, 2006 WL 2372236, at *3 (S.D.N.Y. Aug. 16, 2006), the motion to amend was made after "defendants ha[d] filed a motion to dismiss and a motion for summary judgment, discovery ha[d] closed, the parties ha[d] prepared and filed pre-trial submissions, the trial [had been] scheduled, and the Court [had] dismissed the action on defendants' renewed motion to dismiss." In Cartier, Inc. v. Four Star Jewelry Creations, Inc., 2004 WL 169746, at *1 (S.D.N.Y. Jan. 28, 2004), the plaintiffs moved to amend "nine days after the parties had anticipated going to trial and more than five months after the close of [ ] discovery." The motion to amend in Credit Suisse First Boston LLC v. Coeur D'Alene Mines Corp., 2005 WL 323714, at *5 (S.D.N.Y. Feb.10, 2005), was fully submitted less than a month

Hence, as discussed further below, there was no prejudicial delay in the resolution of the litigation caused by plaintiffs moving to amend. Indeed, Judge Francis expressly considered whether the amendments would prolong discovery, and concluded that they would not, a finding which defendants do not seriously challenge. See 1/23/08 Order at 5, 16, 17, 20-21.

### C.    Failure to Act on Acquired Knowledge Does Not Mandate That Plaintiffs' Motions to Amend Should Have Been Denied

Defendants argue that Judge Francis clearly erred in partially granting plaintiffs' motions to amend because, they contend, plaintiffs had enough information to move to amend earlier than August 27, 2007. See Defts' Rule 72 Memo at 8-11. Defendants' position is not supported by law.[7] Delay, by itself, does not justify, let alone mandate, denial of leave to amend. See Sommer v. PMEC Assoc. and Co. Ltd., 1993 WL 361660, at *4 (S.D.N.Y. Sep. 14, 1993) ("failure to act on acquired knowledge is insufficient cause to deny a motion to amend"). Accord Pkfinans Intern. Corp. v. IBJ Schroeder Leasing Corp., 1996 WL 84481, at *2 (S.D.N.Y. Feb. 27, 1996). Moreover, Judge Francis explicitly acknowledged and considered the timing of plaintiffs' motions to amend. See 1/23/08 Order at 5 & 16. He thus considered defendants' delay argument, and weighed it as a factor before determining, in his discretion, that "judicial economy and the liberality of Rule 15(a) tip[s] the scale in favor of [partial] amendment." Id. at 16. Defendants cannot now claim that Judge Francis erred by failing to take account of their delay argument in his analysis, nor can they argue that he abused his discretion or overlooked controlling authority on this issue in partially permitting plaintiffs' proposed amendments.

---

before the close of discovery, while the issue of amendment was first raised in O'Sullivan v. The New York Times Co., 1997 WL 762050, at *2 (S.D.N.Y. Dec. 8, 1997) one week prior to the close of discovery.

[7] As explained in footnote 6, supra, the cases cited by defendants in support of their position that delay justifies (but does not require) denial of leave to amend involved motions to amend that were made significantly later in the course of the respective litigations than were plaintiffs' in the RNC cases.

**D.    Judge Francis Considered and Rejected Defendants' Claims of Prejudice and Defendants Make No Argument That His Conclusions Were Contrary to Law**

Defendants contend Judge Francis failed to consider that the permitted amendments will prejudice them and prolong the litigation. See Defts' Rule 72 Memo at 12-15. These arguments are baseless.

To begin, defendants claim that "each of the numerous parties and claims that plaintiffs propose to add to these 37 cases [will require] substantial additional litigation and discovery." Defts' Rule 72 Memo at 12. Defendants, however, did not oppose the addition of any new parties, apart from Cohen. See 1/23/08 Order at 5. So, according to defendants' own definition of the relief they are seeking, see Rule 72 Memo at 1 & 4, their objection to the addition of all new parties must be rejected. Moreover, in permitting the addition of new defendants, Judge Francis noted that "[t]he majority of these [new defendants] are already named in other RNC cases, and they appear to have all been deposed already or scheduled for depositon, minimizing any hardship or prejudice that might result from their joinder." 1/23/08 Order at 5. Defendants make no allegation that this factual assessment was inaccurate, let alone clear error or contrary to law. See Rule 72 Memo at 12.

Next, defendants generally portend that the addition of new claims will complicate the dispositive motion and trial stages of the litigation, and delay resolution of the consolidated RNC cases. See Rule 72 Memo at 12-14. Yet defendants fail to provide any specific examples of how or why this would be the case. See id. at 12-14.[8] Moreover, in initially opposing plaintiffs'

---

[8] Defendants make oblique reference to the supplemental briefing on class certification vis-à-vis plaintiffs' as-applied challenges to the Disorderly Conduct and Parading Without a Permit statutes. The MacNamara plaintiffs, in their March 7, 2007 Memorandum of Law in Reply to Defendants' Further Opposition to Class Certification, have fully explained why the addition of the as-applied challenges alters neither the scope nor the key issues of the MacNamara litigation.

motions to amend, defendants argued that the complication of adding new claims would

prejudice them and delay the cases only with respect to the facial challenge to the Parading

Without a Permit Statute and the as-applied challenges to the Disorderly Conduct and Parading

Without a Permit statutes. See Exhibit D to 2/25/08 Sundaran Declaration in Support of Defts'

Rule 72 Objections - Defts' Memo of Law in Partial Opp. to Motions to Amend at 14-17, 20.

Contrary to defendants' allegation that Judge Francis failed to consider these arguments,

see Rule 72 Memo at 14-15, he explicitly analyzed whether these new claims would

impermissibly broaden the scope of the litigation, or delay resolution of the cases, and concluded

they would not. See, e.g., 1/23/08 Order at 16 ("[T]he defendants have not demonstrated any

prejudice that would result from the addition of a facial constitutional challenge to Section 10-

110. The City will already be required to defend against the claim, as it has already been

included in other RNC actions dating back to 2005 . . . and discovery is not likely to be

burdensome in such a facial challenge."); id. at 17 (plaintiffs' as-applied challenges to Section

10-110 "do not raise claims of unequal enforcement so much as they allege [ ] overbroad

enforcement. Because they will not generate the kind of discovery the City complains of, and

because these issues will no doubt be litigated in other RNC cases, amendment will be

permitted"); id. at 20-21 ("None of [plaintiffs' as-applied challenges to the Disorderly Conduct

statute] would justify discovery regarding arrests and summons issued by the NYPD for

disorderly conduct in contexts other than the RNC, as feared by the City. . . Given that the

underlying factual allegations are already a part of these complaints [citations omitted], and that

the same claims are at issue in other RNC complaints, including those dating back to 2005,

[citations omitted], the City has been on notice of these claims and will not be unduly prejudiced

---

Plaintiffs incorporate their March 7 Memorandum by reference and refer the Court to pages 3-10
therein.

by having to litigate them."). Defendants make no argument that these specific holdings by Judge Francis rejecting defendants' arguments of prejudice and delayed resolution of the cases were clearly erroneous or contrary to law. See Rule 72 Memo at 12-14. Defendants' objections to the addition of new claims must therefore be denied.

## II.   Deputy Commissioner Cohen Is A Proper Defendant Based on the Allegations Pled in the Amended Complaints

### A.   Because Cohen Intentionally Provided Misinformation Upon Which Defendants Based Their Unlawful Arrest and Detention Policies, He Is Responsible for Causing the Violation of Plaintiffs' Rights

Defendants argue that plaintiffs' allegations concerning Cohen in the Amended Complaints were legally insufficient in that they failed to allege any "personal involvement" by Cohen in the violation of their rights. See Rule 72 Memo at 17-18. However, in a § 1983 action, liability turns on "personal involvement" only to the extent that the defendant must have *caused* the plaintiff's injuries. See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999) ("Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law."). The Amended Complaints specifically allege that Commissioner Cohen's actions and omissions caused the plaintiffs' unlawful arrests and detention. Accordingly, Judge Francis properly found that plaintiffs had sufficiently alleged that Cohen "caus[ed] . . . [a] . . . deprivation of a right secured by the Constitution. . . . ," within the meaning of § 1983. 1/23/08 Order at 10 (internal quotations and citations omitted).

The proposition asserted in the Amended Complaints as to how Deputy Commissioner Cohen caused a violation of plaintiffs' rights is a simple one: First, plaintiffs allege that Cohen deliberately manipulated the intelligence that his Division gathered before the RNC so as to convey to Police Commissioner Kelly and the persons who were planning the City's response to

RNC protest activities that the plaintiffs intended to engage in unlawful protest and violence.

See, e.g., Ex. J to Norins Decl. - Third Amended Complaint in Abdell (now Amato) at ¶ 19; Ex.

K to Norins Decl. – First Amended Complaint in Phillips at ¶ 64[9]; Ex. L to Norins Decl. –

Second Amended Class Action Complaint in MacNamara (as filed) at ¶ 64.[10]

    Second, plaintiffs allege that, as a result of the information conveyed by Cohen, the City

adopted its RNC arrest and detention policies, including the no-summons and blanket

fingerprinting policies.[11]  See, e.g., Ex. J - Third Amended Complaint in Abdell at ¶ 46; Ex. K --

First Amended Complaint in Phillips at ¶¶ 16, 64; Ex. L – Second Amended Class Action

Complaint in MacNamara (as filed) at ¶¶ 38, 64.

    Third, plaintiffs allege that the arrest and detention policies violated the plaintiffs'

constitutional rights.  See, e.g., Ex. J – First and Second Causes of Action in Abdell; Ex. K -

---

[9] The allegations against Commissioner Cohen in Coburn, Sloan, Galitzer, Bastidas, Xu, Sikelianos and Drescher are the same as those pled in Phillips.

[10] Defendants claim there are no facts in the record that would support these allegations against Cohen. See Rule 72 Memo at 21.  To the contrary, Judge Francis, in finding a good faith basis for the allegations, cites both to Commissioner Cohen's own testimony that he "made the decision to initiate an effort of information gathering with an eye towards identifying the possibility of unlawful activity and/or violence in the New York City during the period immediately before and during the [RNC]," Ex. M to Norins Decl. – Cohen EBT Tr. at 56, and to a Wall Street Journal article titled, "When Activists Are Terrorists," describing an interview with Commissioner Cohen "in which he discusses the role of the intelligence he provided in justifying no-summons and fingerprinting policies." 1/23/08 Order at 12-13; see Ex. N to Norins Decl. – WSJ article. Additionally, Cohen's reports that plaintiffs were intending to engage in unlawful protest activities is plainly at odds with the abundant evidence in these cases that the plaintiffs' protest activities were overwhelmingly peaceful. The dismissal of the large majority of criminal cases brought against the plaintiffs is stark evidence of that fact. See Ex. O to Norins Decl. at 6, n.2.

[11] While defendants argue that the no-summonses and blanket fingerprinting policies were lawful, see Rule 72 Memo at 26-29, defendants did not oppose the addition of the claims challenging these policies in the Amended Complaints, nor have they moved to dismiss these claims.  Moreover, it is a question for the finder of fact whether these policies, which defendants admit applied only to people arrested in connection with an RNC event (i.e., a protest, demonstration or other First-Amendment expressive activity) violated the First and Fourteenth Amendments.

Third Cause of Action in <u>Phillips</u> at 82-83; Ex. L – Second Amended Class Action Complaint in

<u>MacNamara</u> (as filed) at ¶¶ 2, 70 <u>et seq.</u>, 91, 224-26.  It is that causal link between Cohen's

alleged fabrication and distortion of intelligence information and the violation of plaintiffs' rights

that properly led Judge Francis to the unassailable conclusion that, if plaintiffs can prove those

allegations, then Cohen is a proper defendant under § 1983.

 In support of that conclusion, Judge Francis cites four cases in which courts have upheld

claims against officers whose intentional misinformation caused the violation of plaintiffs'

rights.  <u>See</u> 1/23/08 Order at 11.  Defendants do not address the substantive holdings of these

cases other than to claim that they are "very far afield from the sphere in which Cohen acted."

Rule 72 Memo at 20.   To the contrary, the fundamental proposition embodied in each of the

cases cited by Judge Francis is that a public official -- and defendants do not deny that Cohen, as

a deputy commissioner of the NYPD, was a public official -- may be held liable in a § 1983 case

when he or she deliberately provides false information that causes the violation of the rights of

another.  Moreover, each of those cases reflects the basic tort law principle, embodied in § 1983

jurisprudence, "that makes a man responsible for the natural consequences of his actions."

<u>Monroe v. Pape</u>, 365 U.S. 167, 187 (1961).

 Here, Deputy Commissioner Cohen was charged with the responsibility of providing

information to those NYPD officials who would determine the City's arrest and detention

policies during the RNC, <u>see</u> Exhibit P to Norins Decl. (Cohen Declaration) at ¶¶ 8-9, 11, and he

knew or should have known that, when he falsely informed those officials that the plaintiffs'

protests would be violent and unlawful, the defendants would adopt policies, such as the no-

summons and fingerprint policies, that would determine how the NYPD would arrest and detain

persons arrested during the RNC.   Whether or not Cohen created those policies, or personally

11

made or ordered the arrests at issue, the unlawful arrests and detentions of which plaintiffs

complain in these actions were the "natural consequence" of the false information that Cohen

provided. As a matter of logic and of law, Cohen *caused* those arrests and detentions. See, e.g.,

Weintraub v. Board of Education, 423 F. Supp. 2d 38, 48 (E.D.N.Y. 2006) (Section 1983 action

upheld against defendant whose "false allegations" led to plaintiff's allegedly false arrest). He

is, therefore, a proper defendant in these actions.

### B.   The Allegations Concerning Commissioner Cohen Give Adequate Notice of the Claim Against Him

Defendants argue for the first time in their Rule 72 objections that the allegations

concerning Commissioner Cohen do not satisfy the notice requirements of Fed.R.Civ.P. Rule

8(a). See Rule 72 Memo at 22-26. Because that argument was not made to Judge Francis,[12] it

should be denied for that reason alone. See Robinson, 1999 WL 459811, at *4 ("An objecting

party may not raise new arguments that were not made before the Magistrate Judge.").

Defendants rely on Bell Atlantic Corporation v. Twombly, 127 S. Ct. 1955 (2007), and

various decisions of this court for the uncontroversial proposition that "a "blanket assertion" of

"entitlement to relief" and a "litany of general conclusions" will not satisfy Rule 8(a). Rule 72

Memo at 22, 23 (citations omitted).[13] Here, plaintiffs' allegations are far from conclusory. As

described with citations to the Amended Complaints in subsection II(A), supra, plaintiffs assert

that Commissioner Cohen directed the gathering of intelligence information, that he deliberately

distorted that information when he reported it to the defendants, including Police Commissioner

---

[12] See Exhibit D to Sundaran Decl. at vii & 7-13.

[13] While defendants would have this Court believe otherwise, neither Bell Atlantic, nor any other case, imposes a more heightened pleading requirement than what plaintiffs have alleged against Cohen. See Iqbal v. Hasty, 490 F.3d 143, 156 (2d Cir. 2007) (noting that Bell Atlantic "explicitly disclaimed that it was 'requir[ing] heightened fact pleading of specifics,' [127 S.Ct.] at 1974, and emphasized the continued viability of [the Supreme Court's earlier holdings] which had rejected a heightened pleading standard.").

Kelly, who were formulating RNC arrest and detention policies, and, as a result of that

misinformation, those defendants formulated the no-summons and fingerprint policies that

denied plaintiffs their constitutional right. The Amended Complaints thus provide ample notice

because they plainly inform the Deputy Commissioner that, in order to rebut plaintiffs' claims,

he will have to demonstrate that the intelligence information he presented to the other defendants

accurately reflected the raw intelligence data gathered by his Division. As Judge Francis

properly recognized, plaintiffs have therefore satisfied the Rule 8(a) pleading standard. See

1/23/08 Order at 8 (to survive a 12(b)(6) motion, a complaint "requires more than labels and

conclusions" but "does not need detailed factual allegations") (quoting Bell Atlantic, 127 S. Ct.

at 1964-65).[14]

### C.    The Theory of Cohen's Liability Is Clearly Established

It is clearly established that a law enforcement official may not lie or distort information

in a manner that leads to the violation of plaintiffs' rights. See Ricciuti v. New York City Transit

Authority, 124 F.3d 123, 130 (2d Cir. 1997) ("When a police officer creates false information

likely to influence a jury's decision and forwards that information to prosecutors, he violates the

accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable

action is redressable in an action for damages under 42 U.S.C. § 1983."); Caraballo v. City of

New York, 2007 WL 1584202, at *7 (S.D.N.Y. May 31, 2007) (courts have found liability where

---

[14]Defendants complain that Judge Francis failed to evaluate individually each proposed
Amended Complaint for the adequacy of its allegations concerning Cohen. See Rule 72 Memo at
25-26. Defendants, however, did not oppose the Amended Complaints on an individual basis,
choosing instead to submit one consolidated brief in partial opposition to all of them. See
Exhibit D to Sundaran Decl. Moreover, nowhere in this consolidated brief did defendants argue
that the pleadings of any particular Amended Complaint were deficient, choosing instead to
address the Amended Complaints as a whole. It was therefore appropriate for Judge Francis to
determine that since one of the complaints adequately stated a claim against Cohen, plaintiffs in
the remaining cases would be allowed to amend provided they conformed their pleadings. See
1/23/08 Order at 12, n.6.

an officer "withholds relevant and material information or creates false information"); see also Ayers v. Davidson, 101 Fed.Appx. 595, 598 (6th Cir. 2004) ("An investigator may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest.") (internal quotations and citation omitted); Moody v. St. Charles County, 23 F.3d 1410, 1411-12 (8th Cir. 1994) (where officer alleged to have "lied in affidavit that served as the basis for both arrest warrants. . . We have no trouble concluding that such actions on the part of a police officer would violate clearly established constitutional norms, and therefore may serve as the basis for a section 1983 action.").

The absence of a case finding liability for the creation of false or misleading information on the exact facts alleged against Cohen is immaterial. See Williams v. Greifinger, 97 F.3d 699, 703 (2d Cir. 1996) ("A court need not have passed on the identical course of conduct in order for its illegality to be 'clearly established.'"). As explained by the Court in Anderson v. Creighton, 483 U.S. 635 (1987), cited by defendants at page 30 of their brief,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

483 U.S. at 640 (internal citations omitted).

The Second Circuit in Zahrey v. Coffee, 221 F.3d 342 (2d Cir. 2000) applied the Supreme Court's direction from Anderson as follows:

> Anderson instructs, however, that for a right to be clearly established . . . the precise conduct at issue need not previously have been ruled unlawful. See 483 U.S. at 640, 107 S.Ct. 3034. We think the right at issue in this case should not be defined at such a level of particularity as to be limited to a right not to be deprived of liberty as a result of *an investigating prosecutor's* fabrication of evidence. The right is appropriately identified as the right not to be deprived of liberty as a result of *any government officer's* fabrication of evidence. That right was clearly established in 1996, when Coffey's alleged acts occurred, and it was also then

> well established that for purposes of actions under section 1983 and <u>Bivens</u>, a
> person is "responsible for the natural consequences of his actions," <u>Monroe</u>, 365
> U.S. at 187, 81 S.Ct. 473.

221 F.3d at 357 (emphasis in the original).[15]  <u>See also</u> <u>LaBounty v. Coughlin</u>, 137 F.3d 68, 73

(2d Cir. 1998) ("[W]e find that the district court erred in describing the right at issue as 'the right

to be free from crumbling asbestos.' . . . Instead, we find that the right to be free from deliberate

indifference to serious medical needs, established in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97

S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), best encompasses the alleged conduct."); <u>K.H. Through</u>

<u>Murphy v. Morgan</u>, 914 F.2d 846, 851 (7th Cir. 1990) ("There has never been a section 1983 case

accusing welfare officials of selling foster children into slavery; it does not follow that if such a

case arose, the officials would be immune . . . because no previous case had found liability in

those circumstances.").

The Supreme Court has also recently reaffirmed that a prior case involving similar facts

is not required in order for the law to be "clearly established."

> Our opinion in [<u>United States v. Lanier</u>, 520 U.S. 259 (1997)] thus makes clear
> that officials can still be on notice that their conduct violates established law even
> in novel factual circumstances. Indeed, in <u>Lanier</u>, we expressly rejected a
> requirement that previous cases be "fundamentally similar." Although earlier
> cases involving "fundamentally similar" facts can provide especially strong
> support for a conclusion that the law is clearly established, they are not necessary
> to such a finding. The same is true of cases with "materially similar" facts.
> Accordingly, pursuant to <u>Lanier</u>, the salient question that the Court of Appeals
> ought to have asked is whether the state of the law in 1995 gave respondents fair
> warning that their alleged treatment of [plaintiff] was unconstitutional.

<u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002).

---

[15] This squarely refutes defendants' argument that Commissioner Cohen cannot be held liable
because he is a civilian member of the NYPD rather than a sworn officer. <u>See</u> Rule 72 Memo at
20-21.

Thus, given the welter of clearly established case law, including the cases cited by Judge

Francis and the further authority provided above, that a government official may not lie or distort

information in a manner that leads to the violation of plaintiffs' rights, the unlawfulness of

Commissioner Cohen's alleged conduct was apparent in the light of pre-existing law.

Defendants' claim that plaintiffs have advanced a novel theory of liability against Cohen

entitling him to qualified immunity must therefore be rejected. See Russo v. County of

Bridgeport, 479 F.3d 196, 212 (2d Cir. 2007) (qualified immunity not available where evidence

would support finding that defendants "acted intentionally in hiding exculpatory evidence and

misleading [third party]"), cert. denied, 128 S.Ct. 109 (2007); Meyer v. Board of County Com'rs

of Harper County, Okla., 482 F.3d 1232, 1242-43 (10th Cir. 2007) (reversing grant of qualified

immunity because "the district court erred in disregarding evidence which would have supported

a jury finding that one or more of the officers deliberately lied in order to effect the detention of

the plaintiff. . . [A] reasonable officer would know that he cannot rely on deliberate falsehoods to

establish probable cause to deprive a person of her liberty.").[16]

### D.   There Can Be No Qualified Immunity Where There is An Allegation of Intentional Wrongdoing or Deliberate Indifference

Plaintiffs allege that Deputy Commissioner Cohen knowingly, intentionally or with

deliberate indifference manipulated the NYPD's intelligence data, which resulted in the no-

summons and blanket fingerprinting policies plaintiffs have challenged as unconstitutional. See,

e.g., Ex. K to Norins Decl. - Phillips First Amended Complaint at ¶¶ 16, 64; Ex. L - MacNamara

Second Amended Class Action Compl. at ¶¶ 38, 64; Ex. J - Abdell Third Amended Complaint at

---

[16] Because defendants did not oppose the addition of Deputy Commissioner Cohen on the ground
of qualified immunity in their briefing to Judge Francis, see Ex. D to Sundaran Decl. at 7-13, this
provides an independent basis for rejecting their argument. See Robinson, 1999 WL 459811, at
*4; Mills, 2008 WL 413299, at *2-*3; Travelers Ins. Co., 2003 WL 1193535, at *2.

¶¶ 19, 46. Accordingly, there can be no qualified immunity for Cohen since knowing acts of dishonesty, if proven, are never objectively reasonable. See Locurto v. Safir, 264 F.3d 154, 169 (2d Cir. 2001) (in the context of qualified immunity "where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law"); Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006) (same), cert. denied, 1275 S.Ct. 116 (2006); see also Meyer, 482 F.3d at 1243 ("evidence of deliberate misconduct differentiates this case from others in which qualified immunity has been granted.") (internal quotations omitted); Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (if plaintiff's version of the facts were to prevail at trial, a jury might conclude that the defendants were deliberately indifferent; "Under such circumstances, the officials' actions are not protected by qualified immunity."); Beer-Capitol v. Whetzel, 256 F.3d 120, 142 (3d Cir. 2001) ("Because deliberate indifference . . . requires actual knowledge or awareness on the part of the defendant, a defendant cannot have qualified immunity if she was deliberately indifferent."); Ricciuti, 124 F.3d at 130 (qualified immunity not available where plaintiff alleged defendants intentionally fabricated evidence against him).

Thus, because Deputy Commissioner Cohen's liability turns on plaintiffs' allegation that he knowingly manipulated or distorted the intelligence data, leading to the NYPD's adoption of the fingerprinting and no-summonses policies, no qualified immunity defense is available. See Kerman v. City of New York, 261 F.3d 229, 240 (2d Cir. 2001) ("qualified immunity [ ] is not

appropriate when there are facts in dispute that are material to a determination of reasonableness.").[17]

### E.    The Authority Cited By Defendants Does Not Support Their Cause

The cases from this district cited by defendants at page 29 of their brief do not avail them. The finding of qualified immunity for certain defendants in Cancel v. Mazzuca, 2002 WL 1891395 (S.D.N.Y. Aug. 15, 2002) (Buchwald, J.) was based upon an earlier finding by the court that the proposed new defendants had acted in good faith in establishing a Protocol for addressing the religious needs of Sunni and Shi'ite Muslims in the prison setting. See 2002 WL 1891395 at *4. Here, plaintiffs allege that Commissioner Cohen and City policy makers engaged in knowing dishonesty. Significantly as well, for two of the defendants Imams in that suit, Judge Buchwald in a related decision denied them qualified immunity. She found that the allegation against one for using "his position to institute pervasive discrimination and persecution of Shi'ite inmates . . . does state a Constitutional claim," and that the allegation against the other for denial of Shi'ite guest speakers at the prison "must await further factual development. Hence, we decline to grant Imam At-Tayeb qualified immunity." See Cancel v. Mazzuca, 205 F.Supp.2d 128, 140-41 (S.D.N.Y. 2002).

DiPace v. Goord, 308 F.Supp.2d 274 (S.D.N.Y. 2004), also cited by defendants, was a motion to amend that the Court converted, at the plaintiffs' suggestion, into a motion for summary judgment and granted qualified immunity in the factually dissimilar circumstances of a

---

[17] Unlike on a motion for summary judgment, plaintiffs are not required for purposes of pleading to produce evidence from which a jury could conclude that Deputy Commissioner Cohen acted with knowing dishonesty. As Judge Francis noted, "discovery has not closed and the plaintiffs are not required to prove the truth of their claims at this stage." 1/23/08 Order at 12. Indeed, discovery of both Cohen's role and the intelligence documents became stymied shortly after it began due to defendants' extensive briefing of privilege and sealing issues, which have not yet been resolved.

claim against prison employees who had not attempted to resuscitate a prison inmate without

vital signs who had attempted suicide, when the defendants knew that medical care was on the

way. See id. at 284-85.

Lastly, defendants' invocation in footnote 16 of the September 11, 2001 terrorist attacks

to attempt to justify the policies they put in place to deny the rights of pacifists, anti-war

demonstrators, journalists, legal observers, bystanders, onlookers, and other innocent people for

whom there was no (and could not have been any) reliable intelligence indicating a proclivity

towards violence or unlawful conduct is an insult to those who died on that terrible day. This

conflation by City and NYPD Officials of RNC demonstrators with violent terrorists is among

the problems with the policies, practices, and procedures that are complained of by the plaintiffs

in the RNC cases, including the actions and omissions of Commissioner Cohen.[18]  MacWade v.

Kelly, 2005 WL 3338573 (S.D.N.Y. Dec. 7, 2005), aff'd 460 F.3d 260 (2d Cir. 2006), also cited

by defendants, has no applicability since the random bag search policy challenged in MacWade

was applicable to the general population and unlike the RNC policies at issue here, was not

specifically targeted at persons engaged in First Amendment activity.

---

[18]  See 1/23/08 Order at 12 (discussing Deputy Commissioner Cohen's interview with Judith
Miller for Wall Street Journal article titled, "When Activists are Terrorists."). Further, whatever
expertise Commissioner Cohen may hold in the field of terrorism does not mean that he conducts
his duties honestly or that he does not seek to use that expertise in an unconstitutional manner
towards protestors. See, e.g., Ex. Q to Norins Decl. - Handschu v. Special Services Division, 71
Civ. 2203 (CSH), 2/27/08 Memorandum and Order at 13: granting class counsel's motion to
compel discovery because

the documentation may help indicate whether the undisputed fact that Deputy
Commissioner Cohen, charged with the supervision of investigations into political
activity, has never been asked to approve a request to videotape under the Interim
Order 47 protocol is indicative of an NYPD policy to disregard the NYPD
Guidelines.

For all of the foregoing reasons, Deputy Commissioner Cohen is a proper defendant in the RNC actions based on the allegations pled in the Amended Complaints and is not entitled to qualified immunity.

### III.   Defendants Fail to Establish Any Error by Judge Francis in Permitting Amendments to Add Statutory Challenges

Plaintiffs assert that the Parading Without a Permit statute is facially invalid because it is overly broad and because it imposes strict liability. See Exhibit A to Norins Decl. at 7-8. In addition to declaratory and injunctive relief, plaintiffs also seek money damages on behalf of all RNC arrestees who were arrested pursuant to this facially invalid statute. Judge Francis noted that the request for declaratory and injunctive relief on the grounds of overbreadth may be moot since in February 2007 the NYPD amended its regulations in an attempt to remedy this problem, but that plaintiffs are still free to pursue a claim for money damages based on the overbroad enforcement of the statute, as it existed in 2004. See 1/23/08 Order at 14-15. He also held that plaintiffs are "not precluded from requesting declaratory or injunctive relief for alleged constitutional defects other than overbreadth." 1/23/08 Order at 14-15. Thus, as Judge Francis correctly concluded, neither the overbreadth nor the strict-liability challenges are moot. Contra Defts' Rule 72 Memo at 33.

Regarding the as-applied statutory challenges, plaintiffs are surprised that defendants have objected because the MacNamara plaintiffs consented to defendants' request for a generous extension of time in which to file their Rule 72 motion on the condition that they not appeal the amendments to add these claims. See Exhibit R to Norins Decl. Defendants apparently felt no obligation to keep their word. See Rule 72 Memo at 33-34.

In any event, defendants' argument that plaintiffs have not pleaded facts sufficient to give defendants notice of these claims was never made to Judge Francis and, moreover, is without

merit. Extensive facts supporting the claim that, during the RNC, defendants engaged in the overly broad application of the Disorderly Conduct and Parading Without a Permit statutes appear in the <u>MacNamara</u> Second Amended Class Action Complaint at, <u>inter alia</u>, paragraphs 74(A)-(L), 100-136 and 141-233; in the <u>Phillips</u> First Amended Complaint at paragraphs 31-42, 58 and 59-62; and in the <u>Abdell</u> (now <u>Amato</u>) Third Amended Complaint at paragraphs 3, 20-31, 43 and 45. Plaintiffs' theory of overbroad enforcement is expressly pled in the Sixth and Seventh Causes of Action in <u>MacNamara</u>; in paragraph 88 of the <u>Phillips</u> First Amended Complaint; and in paragraph 46 of the <u>Abdell</u> Third Amended Complaint. <u>See</u> Exs. J, K & L to Norins Decl. Thus, plaintiffs have more than satisfied the Fed.R.Civ.P. 8(a) pleading standards under <u>Bell Atlantic</u>.

### CONCLUSION

For all of the foregoing reasons, defendants have failed to show that Judge Francis abused his discretion when he partially granted plaintiffs' motions to amend or that his decision should be reversed on <u>de novo</u> review. There was no undue delay nor any prejudice visited upon defendants in permitting the partial amendments. Defendants' own dilatory discovery practice provided good cause for the Court's granting leave to amend beyond any deadlines in the CMOs for amending without leave. And the resolution of these cases will not be complicated or postponed because of the amendments.

As for the addition of defendant Deputy Commissioner Cohen, the law has long been clearly established that a government official cannot fabricate or distort information in a manner that causes the violation of plaintiffs' constitutional rights. With or without a prior case involving similar facts, the contours of this constitutional principle were sufficiently defined in 2004 for Commissioner Cohen to know that his gross distortion of intelligence data to portray

demonstrators as unlawful and violent, and his presentation of that distorted information to other, high-ranking members of the NYPD for the purpose of formulating RNC arrest policies, was likely to result in plaintiffs' deprivation of liberty and the violation of their constitutional rights. Moreover, because plaintiffs allege that Deputy Commissioner Cohen's acts and omissions were intentional, knowing and/or deliberately indifferent to plaintiffs' rights, there can be no finding, as a matter of law, that his alleged dishonesty was objectively reasonable. Qualified immunity is therefore not available to Commissioner Cohen.

The remainder of defendants' arguments, including their contention that plaintiffs' amended pleadings fail to provide notice, are hollow and unsupported by the cases on which defendants rely. Plaintiffs therefore request that this Court deny defendants' request for relief and affirm Judge Francis's January 23, 2008 Memorandum and Order.

Dated:    New York, New York
          March 17, 2008

                              _____
                              Jonathan C. Moore (JM 6902)
                              Clare R. Norins (CN 2821)
                              BELDOCK LEVINE & HOFFMAN LLP
                              99 Park Avenue
                              New York, New York 10016
                              (212) 490-0400
                              *Attorneys for Plaintiffs and Putative Class Members in MacNamara*

__/s_Jeffrey Rothman_____          __s/__Alan Levine_____
Jeffrey Rothman (JR 0398)                    Alan Levine (AL 5297)
315 Broadway, Suite 200                      99 Hudson Street, 14th Floor
New York, New York 10007                     New York, New York 10013
(212) 227-2980                               (212) 739-7506
*Attorney for Plaintiffs in Coburn,*         *Attorney for Plaintiffs in Abdell (now Amato)*
*Phillips, Sloan, Galitzer, Bastidas,*
*Xu, Sikelianos and Drescher*