# EXHIBIT QQQ

# In The Matter Of:

*KYLA HANNAH HERSHEY-WILSON v.*
*NEW YORK CITY*

---

*April 20, 2006*

---

*CONFERENCE*
*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK., NY 10007*
*212-805-0300*

Original File 64kPherM.txt, Pages 1-39

**Word Index included with this Min-U-Script®**

Page 1

```
64kPherM
[1]     UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF NEW YORK
[2]     ------------------------------x
[3]     KYLA HANNAH HERSHEY-WILSON,
[4]               Plaintiff,
[5]          v.                  05 Cv. 7026 (KMK)
[6]     NEW YORK CITY, et. al.,,
[7]               Defendants.
[8]     ------------------------------x
                                   New York, N.Y.
[9]                                April 20, 2006
                                   11:30 a.m.
[10]
        Before:
[11]
                  HON. KENNETH M. KARAS,
[12]
                                   District Judge
[13]
```

Page

[1] claims of misconduct and other, arguably, privileged
[2] information. And I ended up agreeing with you that Judge
[3] Francis's rulings were not clearly erroneous or contrary to
[4] law. I was just struck by that.
[5]       The city gets a five-point demerit for citing an
[6] unpublished Second Circuit decision
[7]       MR. MIRRO: The Supreme Court ruled --
[8]       THE COURT: -- the Judicial Conference said that as of
[9] 2007, it is okay to cite unpublished opinions. But just be
[10] careful because there are some people in the building who might
[11] get pretty hot under the collar.
[12]       MR. MIRRO: We will, your Honor.
[13]       THE COURT: Quick question for Mr. Dougherty. I will
[14] definitely hear from you, Mr. Meyerson.
[15]       What is the standard of review where, what Judge
[16] Francis did was said that my ruling in MacNamara precluded him
[17] from, in effect, agreeing with Mr. Meyerson?
[18]       So what we have is a situation, before the case gets
[19] referred to a Magistrate Judge for discovery purposes, I issue
[20] a discovery ruling in another case, albeit, one that's related,
[21] which is why I got a hundred of these things. And Judge
[22] Francis feels bound by that ruling in this case. And then Mr.
[23] Meyerson appeals that ruling.
[24]       Is it Rule 72, abuse of discretion and contrary to
[25] law?

Page 2

```
[1]            (In open court)
[2]       MR. MEYERSON:  Good morning, your Honor, James
[3] Meyerson for Ms. Hershey-Wilson.
[4]       THE COURT:  Good morning, Mr. Meyerson.
[5]       MR. DOUGHERTY:  Good morning, Jeff Dougherty for
[6] defendants.
[7]       THE COURT:  You got the call on this one, Mr.
[8] Dougherty.
[9]       MR. MIRRO:  And James Mirro.
[10]      THE COURT:  Good morning, your Honor.  Again, for the
[11] record.  This is becoming a habit.  There are worse habits in
[12] life.
[13]      I have to say, Mr. Meyerson, I was struck your
[14] reply --
[15]      MR. MEYERSON:  -- I don't know if that's good or bad.
[16]      THE COURT:  It's sort of interesting.  There is this
[17] sort of righteous speech-like tone to you.  You sort of have to
[18] live by the privilege and die by the privilege.
[19]      And you are very critical of the city's invocation of
[20] certain privileges relating to their office -- psych testing
[21] records are sought by the plaintiff.  And misconduct.
[22] Invariably the city's attorneys object to what I was saying
[23] before; that's true.
[24]      You were here six, seven weeks ago when they wanted to
[25] invoke certain privileges having to do with unsubstantiated
```

Page 4

[1]       MR. DOUGHERTY: Your Honor, I would submit that in our
[2] papers to Judge Francis, while I can't determine what it is
[3] that, you know, ultimately determined his rationale, that we
[4] did submit case law as well as transcripts from your ruling in
[5] MacNamara. And I believe this is a Rule 72 motion to be
[6] governed by the earlier clearly erroneous standard or contrary
[7] to law standard, whether or not at this level a discovery
[8] motion can be overturned.
[9]       THE COURT: His memo endorsement says that he felt --
[10] and I had it out a second ago, let me pull it out -- Judge
[11] Kara's prior ruling on this issue precludes the arguments now
[12] raised by plaintiff's counsel.
[13]       So it is sort of a, what he said in another case,
[14] which Judge Francis almost seems to be saying was law of the
[15] case for all of these cases.
[16]       So why is that something that should be deferred to
[17] when, in effect, he is citing my ruling in another case?
[18]       It is like saying I should refer to my own ruling in a
[19] different case.
[20]       MR. DOUGHERTY: I would say it is just as proper for
[21] any Magistrate Judge to reply on a Southern District judge in a
[22] related action or a nonconsolidated.
[23]       THE COURT: But not necessarily to have preclusive
[24] effect, right?
[25]       MR. DOUGHERTY: Yes.

Page 5

[1] THE COURT: Do you think that the MacNamara ruling has
[2] a preclusive effect in this case?
[3] MR. DOUGHERTY: I think that ruling was likely here
[4] considered by Magistrate Francis and was part of what is
[5] probably a conglomerate of facts that, of law, that he used to
[6] make the decision in the MacNamara case.
[7] THE COURT: Thank you.
[8] Mr. Meyerson.
[9] MR. MEYERSON: Your Honor, I do apologize for any
[10] righteousness that --
[11] THE COURT: -- don't apologize for righteousness.
[12] MR. MEYERSON: Actually, I believe it came out, I
[13] think there was a, I am saying righteous indignation on my
[14] part. My client, Ms. Hershey-Wilson is 21 years old, and I
[15] kept thinking of my 21-year-old daughter who happens to be an
[16] activist.
[17] THE COURT: I believe that was worth saying. I was
[18] only tweaking you.
[19] You are right, what goes around comes around.
[20] To the extent that the defendant takes what you think
[21] is a cavalier attitude toward your client's privilege, my only
[22] point is, at least Judge Francis and I agreed with you to their
[23] privilege.
[24] MR. MEYERSON: I understand.
[25] This is a very narrow issue, your Honor. Although I

Page 6

[1] think it has profound practical and profound legal
[2] implications.
[3] The narrow issue is what triggers the waiver of a
[4] client's mental health record privilege that pre -- the records
[5] coming from a prelitigation-incident therapy.
[6] You, in MacNamara, I think that's a question of law.
[7] And I think that Magistrate Judge Francis, on both a legal and
[8] practical and differential basis, said to himself, look,
[9] whatever I think of Meyerson's arguments, and however I might
[10] have ruled, I am not going to write an opinion because whatever
[11] I think, Judge Karas has sent all of these cases to me and I am
[12] not going to buck Judge Karas because he made a ruling in a
[13] previous case which has indicated his position of law on this
[14] matter. And, therefore, I am precluded from overruling Judge
[15] Karas. He can overrule me, I can't overrule him. Fair enough.
[16] I then file this appeal and say to you, your Honor,
[17] that with due respect, I am critical, and I accept this with
[18] whatever admonition you want to give me, I am critical of your
[19] MacNamara decision.
[20] And it is like I recently said to the Second Circuit
[21] about Judge Koeltl, that I realize that the Second Circuit
[22] recognized his wisdom as a jurist, as I do your wisdom as a
[23] jurist. You are just wrong, I think, on what you did in
[24] MacNamara.
[25] THE COURT: No offense to Judge Koeltl.

Page 7

[1] MR. MEYERSON: No. And I got him reversed.
[2] THE COURT: He is a great jurist. Go ahead.
[3] MR. MEYERSON: And that's not due to me. That was
[4] because I was lucky that day in front of the circuit.
[5] But the point I want to make here is, you have taken a
[6] very broad view in MacNamara of what emotional damage claims
[7] mean in reality and in law.
[8] My client, let me give you these facts, and I just,
[9] you have seen them, but my client is 24 years old. At 24 she
[10] is arrested at the RNC.
[11] When she was in high school, she and her family went
[12] to family counseling. She may have gone to independent
[13] counselling. The therapist said, you are depressed, here is
[14] some medication.
[15] She graduates from high school, has no medication or
[16] therapy for four years, gets arrested at the RNC and,
[17] basically, says, I have a natural emotional reaction when I am
[18] in jail for 24 hours. That is my emotional reaction. Has
[19] nothing to do with my mental health condition. I was scared, I
[20] was sad, I was anxious. And I got out 25 hours later. I took
[21] in the fresh air, I sighed. And it largely evaporated, all
[22] though not totally. I went to Dr. Ores before I went back to
[23] Maine. You can have my records from Dr. Orres. I am okay. I
[24] am not seeking to put into this record, in that litigation, my
[25] mental health condition. I am not going to call a

Page 8

[1] psychiatrist, I am not going to say I have a permanent
[2] condition, a clinical or nonclinical condition.
[3] THE COURT: Paragraph 71, quote, the plaintiff
[4] denies -- of the incident herein described --
[5] MR. MEYERSON: -- I accept that as my failure in
[6] developing the case. We say that's not the case. In point of
[7] fact, the facts are the facts. She never has sought treatment.
[8] THE COURT: The fact that she hasn't sought treatment,
[9] that wouldn't be a cause to bounce that claim.
[10] MR. MEYERSON: I am standing up here and saying to you
[11] that my client will get on the witness stand at the trial and
[12] say, when I say, what emotional injury did you suffer -- well,
[13] let me withdraw that.
[14] Assuming my client just got on the witness stand and
[15] said, I was in jail for 25 hours, and I didn't ask her another
[16] question about any emotional reaction injury, and then I said
[17] to a jury, she was in custody 25 hours, you should award her a
[18] sum of money for the loss of her liberty, either for 25 hours
[19] taken, anxiety and sadness she felt, objection, your Honor,
[20] there is no evidence in the record.
[21] Okay, so I want to ask her, what was your emotional
[22] reaction injury?
[23] And she will say, I was sad, I was unhappy, I was
[24] scared.
[25] And when did that end?

Page 9

[1] It ended largely when I got out of jail. But I went
[2] to somebody who said the records will show probably you will be
[3] all right. Just go home.
[4]     **THE COURT:** Let me just stop you right there.
[5] Even if she is claiming residual emotional injuries,
[6] such that she went to, after the fact, see a therapist of some
[7] kind, and even at the end of the day if, as a result of seeing
[8] the therapist things get better in her life, again we are not
[9] here at trial deciding what they get to put in. The question
[10] is whether or not anything about her psychological history, her
[11] mental health history -- she was 65 and had high school visits
[12] to a therapist, is that different?
[13] That's why you have to be careful with my ruling in
[14] MacNamara. Once that door is even cracked open a little bit,
[15] how can it be that the defendants don't get to have access to
[16] her psychological history to rebut either the claim for the
[17] injuries at all or the extent of the damages she should get as
[18] a result of the alleged injury?
[19]     **MR. MEYERSON:** If --
[20]     **THE COURT:** By the way, that's the majority view of
[21] the courts in this district.
[22]     **MR. MEYERSON:** Actually not the majority view of
[23] courts throughout the country, it is the view of courts
[24] throughout this district, which comes out of Judge Buchwald's
[25] decision when she was a magistrate. Rather, it is a more

Page 11

[1] psychiatrist to look at her, the law in this district, if they
[2] would argue that, is, you can't do that because this is really
[3] a garden-variety thing.
[4] And if that's the case, what is the value of the
[5] records except to fish into the most highly sensitive material
[6] that -- my client doesn't even know what's in there, that no
[7] magistrate should look at. That I don't want to look at.
[8] And my position is, therefore, that if she couldn't be
[9] subjected to an examination by a psychiatrist to disprove
[10] something that we are not even attempting to prove, then there
[11] is no basis for the records.
[12] And if you want to make a thing out of, did she have
[13] psychiatric treatment five years ago in high school?
[14] She has admitted that.
[15] She has also admitted that she had medication for
[16] depression and family counseling.
[17] I don't know what the litigation value would be of
[18] bringing that out in front of a jury, because a jury would be
[19] offended by that.
[20] But if the city wanted to do that, and you let --
[21]     **THE COURT:** -- that's a different question. We are at
[22] discovery.
[23]     **MR. MEYERSON:** That's correct. So what is the value
[24] of the records? We must again get to the point, Judge, of
[25] these records are ordinarily privileged.

Page 10

[1] complex claim in which the views of psychiatrists figured
[2] prominently in prelitigation events.
[3] That is that there was a connection obviously made in
[4] Sidor between the prelitigation therapy that that client had,
[5] leading Magistrate Buchwald to conclude that there -- that
[6] access to those records were relevant. There has to be some
[7] degree of time and material relevance.
[8] And your prior ruling simply --
[9]     **THE COURT::** -- forget the prior ruling. Let's talk
[10] about this case.
[11]     **MR. MEYERSON:** But the problem is, Magistrate Judge
[12] Francis seems to have implied that whatever the merits of your
[13] arguments, Meyerson, that I might agree with, I can't touch it
[14] because I am reading Judge Karas's ruling --
[15]     **THE COURT:** -- argue it as if the standard review was
[16] de novo.
[17]     **MR. MEYERSON:** Okay. Here is my response to you.
[18] At the same time the law in this district, as you
[19] interpret it, seems to suggest that access to those records are
[20] permissible because she, by merely saying I had emotional
[21] reaction for the time of the event, triggers the waiver.
[22] The law in this district also seems to suggest, by
[23] Judge Carter and Judge Sotomayor, when she was a District
[24] Judge, is that when the city then says, and I will get to the
[25] logic of it, we want to take her examination, we want a

Page 12

[1] What triggers the waiver of the privilege, that is the
[2] narrowest -- that's the very narrow issue of law. And if you
[3] say that what triggers it is simply the fact that a client that
[4] is put into jail for 25 hours and would testify, forget what I
[5] put in my complaint, if you can, for the moment, would simply
[6] testify, look, when I was in jail I was upset.
[7]     **THE COURT:** And give me money for that, right?
[8]     **MR. MEYERSON:** Well --
[9]     **THE COURT:** -- and give me money.
[10]     **MR. MEYERSON:** That is correct.
[11]     **THE COURT:** And how is it that the defendants are to
[12] prepare their defense, to rebut any claim you might make as to
[13] why she should get any money or why she should get a certain
[14] amount --
[15]     **MR. MEYERSON:** -- Judge, it seems to me that you are
[16] seemingly bootstrapping yourself into almost -- almost into a
[17] nonsensical position.
[18]     **THE COURT:** I am surprised to hear you say that.
[19] Because every case I have read, and I have read a bunch, in
[20] addition to the ones you cited me to, to the extent that courts
[21] have said that the privilege is waived even into the so-called
[22] garden variety claims, not a term of art as far as I can tell,
[23] but that's the one that everyone seems to be using, but the
[24] reason it is relevant, so that the defendants can attack the
[25] causation between the offending event and the so-called mental

Page 13

[1] distress. And also the claim for damages.
[2] I am not making this up.
[3] **MR. MEYERSON:** I understand that. And then I say to
[4] you, what do you expect to find in mental health records of a
[5] high school kid?
[6] Perhaps the high school kid might have said, gee, you
[7] know, I am depressed. And in five years if I get arrested,
[8] what will happen to me, doc? Will I be -- what conceivable
[9] relevance beyond the fact, if it is relevant at all, that she
[10] has had therapy, had medication, and that ceased to exist four
[11] years ago? If that's relevant, fine.
[12] **THE COURT:** Because when somebody claims to have
[13] suffered some sort of emotional damage, distress, anxiety,
[14] depression, their prior history, that might relate to this --
[15] we are going in circles.
[16] **MR. MEYERSON:** Can I give you another example?
[17] **THE COURT:** Let me give you another example.
[18] Let's take it out of mental health, put it in physical
[19] health.
[20] Somebody goes to a hospital and they decide to
[21] involuntarily commit the person. And in the middle of him
[22] struggling he yells out, ouch, my knee. And he doesn't put in
[23] any expert testimony that he actually ripped his meniscus,
[24] medial meniscus, or anything like that. He says, I want money
[25] for pain and suffering because my leg got hurt that day. And

Page 14

[1] it turns out that 20 years prior to that he saw an orthopedic
[2] surgeon.
[3] **MR. MEYERSON:** For a knee injury?
[4] **THE COURT:** Yes.
[5] **MR. MEYERSON:** He is entitled probably -- they are
[6] probably entitled to get those records.
[7] Here is where we are having our debate. And it is a
[8] fascinating debate, I tried to make it in my submission.
[9] You are equating an emotional reaction to being in
[10] jail for 24 hours, which is attended to the loss of the liberty
[11] itself. It's almost intrinsic in it.
[12] I mean, I did have a client, a Quaker, an older man
[13] who, when he was asked at a deposition by the City of New York
[14] what his reaction was to being in jail for 24 hours, as the
[15] good Quaker he was, he said, actually, it was an enlightening
[16] experience. And he actually wrote to the Quaker paper.
[17] Again, it brings up a lot with my daughter, she went
[18] to a Quaker school.
[19] But he wrote to the Quaker paper. And I said to
[20] myself, you just indicated you didn't have any damages for
[21] being in there.
[22] The point being, most people, in being confined for 24
[23] hours involuntarily in a not-pleasant situation, might say, I
[24] was sad, I was upset, I was scared. And then I say --
[25] **THE COURT:** -- that's not how the complaint is worded.

Page 15

[1] It is not limited to that.
[2] **MR. MEYERSON:** But --
[3] **THE COURT:** -- what you are trying to do --
[4] **MR. MEYERSON:** -- I am now limiting it.
[5] **THE COURT:** Mr. Meyerson, there is a complaint that
[6] you filed. You have brought actions against defendants. And
[7] you are seeking damages for emotional distress and anxiety.
[8] And you are trying to, at the same time, asking potentially for
[9] damages on those emotional harms. You are trying to put a wall
[10] on someone's emotional slash mental history and what they
[11] suffered on that day.
[12] **MR. MEYERSON:** I am not --
[13] **THE COURT:** -- Mr. Meyerson, interrupting is not
[14] helpful to anybody. I never put time limits on you. Don't do
[15] that.
[16] **MR. MEYERSON:** I'm sorry.
[17] **THE COURT:** But that strikes me as antithetical to
[18] common sense. And many courts around the country have said,
[19] you cannot pretend that a person's mental past has nothing to
[20] do, is completely irrelevant, and all the standards that we
[21] use -- and there is no conceivable relevance to the emotional
[22] slash mental harm that somebody suffered on that day.
[23] And you cannot ask the defendants to defend themselves
[24] on causation and on the extent of the damages without getting
[25] access to that information.

Page 16

[1] Now, that is not to say that there cannot be limits.
[2] That is not to say that every record gets turned over. That is
[3] not to say that there are temporal decisions here.
[4] You have a 24-year-old client, not a 74-year-old
[5] client. So her high school records -- I wouldn't say, if I was
[6] Judge Pitman, to a five-year limitation. But the reason for
[7] the limitation is that it recognizes that within that time
[8] period it is not -- say there is no reasonable relevance of the
[9] records -- go ahead.
[10] **MR. MEYERSON:** There are two things you mentioned in
[11] there. One is the complaint and one is the moreover arching
[12] philosophical debate we are having --
[13] **THE COURT:** -- I don't do philosophy, Mr. Meyerson. I
[14] am doing law.
[15] **MR. MEYERSON:** Philosophical legal debate that we are
[16] having, which is not inconsequential.
[17] The first thing about the complaint is to the extent
[18] that I drafted a complaint that defined, that says what it
[19] says.
[20] Of course, an attorney and a party can come in and
[21] say, I withdraw the lawsuit, I withdraw this claim. I narrow
[22] this to the extent of a claim.
[23] And to the extent that I have failed my client in the
[24] manner of the drafting of the complaint, in the amended
[25] complaint, to make it an -- that there is this all encompassing

Page 17

[1] emotional trauma that flows from this event, I stand indicted.
[2] But I withdraw that. And my client has narrowed the claim.
[3] And the claim is simply that while I was incarcerated, and for
[4] a day or two thereafter, I had the ordinary natural reaction.
[5] Which I assume --
[6] THE COURT: -- she says is ordinary and natural. But
[7] how is it that a jury is to evaluate what she says is ordinary
[8] unless they know something potentially about her emotional
[9] past?
[10] You know, New York law recognizes the thin skull
[11] doctrine for psychological harms not recognized by the Second
[12] Circuit. But there are plenty of cases within New York State
[13] that recognize it.
[14] It is interesting because that could easily inure to
[15] the plaintiff in these kinds of cases.
[16] I don't want to get into philosophy.
[17] MR. MEYERSON: This is a legal argument, your Honor.
[18] What I import from your comment, that I listened to
[19] very carefully, and I apologize for interrupting, although I
[20] did hear what you are saying, is, how do you know what is, and
[21] I understand what you are saying, inquiring, how do I know that
[22] that's natural?
[23] The natural flow of that inquiry leads to them getting
[24] records, because, you will say, get these records; and them
[25] saying, oh, but irrespective of the records, she shouldn't have

Page 18

[1] had this reaction. Or maybe because of the fact that she
[2] concedes she had depression, that's why she had the reaction.
[3] Your Honor, we need to have her go to our psychiatrist for
[4] several hours.
[5] And Mr. Meyerson now needs to put on a psychiatrist so
[6] that the jury can be -- so it can be explained to a jury that
[7] intrinsic in being restrained of your liberty for 24 hours in a
[8] jail, is a natural reaction of, whatever it might be, might
[9] even be giddiness, but in this case it was sadness.
[10] I just think, your Honor -- by the way, I believe the
[11] law in this district is that they wouldn't be able to get that
[12] mental health --
[13] THE COURT:: -- why are we having a discussion about
[14] something that is not on the table right now? Because the
[15] cases do recognize the distinction between a defendant's
[16] interest in getting past mental health history of a plaintiff,
[17] either an employment discrimination case, a civil rights case,
[18] and a rule --
[19] MR. MEYERSON: -- at least --
[20] THE COURT: -- according to the cases that I read,
[21] let's --
[22] MR. MEYERSON: -- but I think they are inner related,
[23] because if, in fact, you can't get the examination, what does
[24] the value of a record that says she was depressed in high
[25] school have to do with her saying, I was afraid --

Page 1

[1] THE COURT: Because she is only six years removed from
[2] high school. If she were 74 years old and it was high school
[3] records, you might have a point. Which is why many courts have
[4] accepted, in part, your argument.
[5] But they tailor it to the facts before them. And
[6] that's what I am trying to do, and say, that whether or not
[7] MacNamara was the right decision or not, I am focused on this
[8] case.
[9] MR. MEYERSON: Okay. Well, I would ask you, then, to
[10] defer back to Magistrate Judge Francis, and let me make the
[11] arguments to Magistrate Judge Francis on the assumption, as I
[12] read his decision, that he did not even waive the arguments,
[13] simply said, I am precluded.
[14] And it is understandable why he did that.
[15] My last point and I will sit down, and it is, by
[16] comparison, not a knee injury, but more directly in point.
[17] In an antiwar demonstration case that I have with the
[18] city, a client was in custody seven or eight hours. She was an
[19] NYU student. A freshman then.
[20] She'd had counseling when she went to NYU. She said
[21] that during the seven or eight hours she was on and off crying,
[22] the next day she was upset. And that's the extent of her
[23] emotional injury associated with what she believed was a false
[24] arrest and loss of her liberty.
[25] The city didn't ask for the mental health records in

Page 20

[1] that case. That's neither here nor there, that's that
[2] litigation. But the import of your decision is, that if my
[3] client had come in and said, look, I had no emotional damages
[4] other than the fact that when I was in custody I cried on and
[5] off, the next day I related to my family what happened, and I
[6] was upset. And that was it. That they then -- that triggers a
[7] waiver to open everything and anything.
[8] And if you are fortunate to be a young kid, an
[9] 18-year-old freshman at NYU, or a 24-year old -- if you are
[10] unfortunate enough, maybe, to be 24 and had gone to a shrink
[11] when your family sent you to a shrink, when you were in high
[12] school, the unfortunate situation, under Judge Karas's ruling,
[13] is that if you were 74 you wouldn't have to give up those
[14] records, but at 24 you do. It doesn't make any sense. And
[15] maybe the law --
[16] THE COURT: What you are saying is it is never
[17] relevant. What I am saying, it depends on the case.
[18] Do you think the blanket rule is never relevant and
[19] they take the --
[20] MR. MEYERSON: -- there are Courts that have taken
[21] that position. Your Honor, please, with due respect, I respect
[22] your broad ruling, it is a very broad ruling, but --
[23] THE COURT: I haven't ruled yet.
[24] MR. MEYERSON: Well, in MacNamara, there it's a broad
[25] ruling.

Page 21

[1] THE COURT: It is not a broad ruling. It's actually
[2] not a broad ruling. But doesn't matter, we are not here to
[3] reopen MacNamara.
[4] MR. MEYERSON: There are cases that reject your
[5] position, that say --
[6] THE COURT:: -- it wouldn't be the first time. Or the
[7] last.
[8] MR. MEYERSON: That say that the emotional reaction
[9] condition that I am describing here doesn't put in to play her
[10] mental health condition, which is a different thing, as a
[11] matter of law, that is what I am arguing.
[12] THE COURT: Okay. Thank you, Mr. Meyerson.
[13] MR. DOUGHERTY: Well, your Honor, what, at first what
[14] I think we need to do is pull back and realize that we are in a
[15] court of law. And subsequently we are governed by rules of
[16] procedure.
[17] And here the rule that we are governed by is the
[18] standard under Rule 72.
[19] And under that standard, and under the case law
[20] governing that standard, Mr. Meyerson has failed to show that
[21] Judge Francis's ruling was either clearly erroneous or contrary
[22] to law.
[23] And just briefly on the clearly erroneous point.
[24] Under Lindenal versus Citco Refining, the reviewing Court has
[25] to be left with the definite and confirm conviction that a

Page 22

[1] mistake has been committed.
[2] Additionally, Mr. Meyerson has failed to establish
[3] that Judge Francis failed to apply relevant case law or
[4] statutes, that that is the standard of review that this Court
[5] should be governed by making its determination on this motion.
[6] And just to get into the merits, the reason that
[7] Ms. Hershey-Wilson's psychological history is relevant and
[8] discoverable, is because she put it at issue by claiming and
[9] seeking emotional distress damages.
[10] We are governed by the complaint which suggests that
[11] there are residual effects that she suffered as a result of her
[12] arrest, which was a sworn statement as well as interrogatory
[13] responses, indicate that in interrogatory 5 she suffered
[14] emotional distress, mental anguish, fear, psychological trauma.
[15] Because of that, it is clear -- and she is seeking
[16] damages, money damages, which would ultimately come from the
[17] taxpayers of New York for those damages which the city must be
[18] allowed an opportunity to examine intervening causation of her
[19] emotional distress, and obtain a picture of her psychological
[20] history.
[21] And one of the things that is also relevant, I would
[22] like to point out, is that the records we are seeking are
[23] contemporaneously relevant to her arrest. She was 24 at the
[24] time. The records reach back maybe four or five years. And
[25] under Judge Pitman's ruling in McKenna, he allowed in

Page 23

[1] psychological history that reached back five years, which is
[2] the same time frame that we are working with here.
[3] MR. MIRRO: Judge, if I may, just to add one or two
[4] brief points.
[5] THE COURT: Yes.
[6] MR. MIRRO: First, I want to thank you, Judge, for
[7] your patience today.
[8] A couple of points I wanted to mention, Judge. First,
[9] you asked earlier about the standard of review and Judge
[10] Francis's order.
[11] I would like to emphasize, Judge, Judge Francis had
[12] before him all of the factual materials and all of the factual
[13] arguments that we are making today.
[14] In addition, Judge Francis had before him the legal
[15] authorities that we submitted to your Honor. So Judge
[16] Francis's decision and Judge Francis's order, were based on
[17] both the facts and on the law.
[18] And in that situation, I would submit to you, Judge,
[19] that the standard here is, as Mr. Dougherty has said, is the
[20] clearly reasonable standard.
[21] This is not a case where the Judge Francis has made up
[22] purely a determination based on purely legal principles that
[23] might be a de novo, might be subject to de novo review by this
[24] Court. This decision was based on both facts and the law. And
[25] citation.

Page 24

[1] Maybe there is language in that order that suggests,
[2] loose language in the order, that suggests otherwise. But
[3] that's what was in front of him. And we would submit that
[4] Judge Francis couldn't have made a determination that your
[5] Honor's decision in MacNamara was pervasive unless he
[6] considered the factual underpinnings.
[7] The only other point, Judge, that I wanted to make at
[8] this point, the question of relevance has come up.
[9] Your Honor clearly understands what the issue is here.
[10] And the issue is, and as Mr. Dougherty said, the issue is one
[11] of causation.
[12] Mr. Meyerson's client is suing us for money due to
[13] emotional, claimed emotional distress, that results in waiver.
[14] And the reason that the emotional history, the psychological
[15] history are relevant, because we are entitled, as the Court has
[16] alluded to several times today, to examine this plaintiff on
[17] what alternative causes of emotional distress she may have been
[18] suffering at the time of her arrest and after her arrest.
[19] Your Honor, the principle here is that defendants are
[20] not obligated to take plaintiff's word for it, that her
[21] emotional distress was caused solely by the arrest and
[22] confinement.
[23] We understand that counsel -- plaintiff's counsel made
[24] a very fine argument, and we understand that he is advocating
[25] on behalf of his client. But we are not obligated, and it is

Page 25

[1] contrary to the discovery rules to suggest that we are
[2] obligated, to take plaintiff's word for it on the causation
[3] question with respect to her emotional distress. And it goes
[4] to damages as well.
[5]     I think that is the sum and substance of it, Judge.
[6] And, obviously, there is just a wealth of authority supporting
[7] both the MacNamara decision and the ruling that we are seeking
[8] here.
[9]     I mean, and let's look at it, just one other point,
[10] one other point. Mr. Meyerson has not put in, really, any
[11] legal authority of substance. He got a wealth of authority
[12] from outside the district that obviously doesn't bind the
[13] Court. But he hasn't explained why this case is any different
[14] from all the decisions that do bind this Court, including
[15] Second Circuit opinions.
[16]     And I think I will leave it at that.
[17]     **THE COURT:** Sure. Mr. Meyerson, you get the last
[18] word.
[19]     **MR. MEYERSON:** One, Mr. Dougherty talked about
[20] intervening causation. This is a preexisting causation, and I
[21] would agree with him, that if we were dealing with an
[22] intervening causation, that is that there had been the arrest,
[23] she said this, and then afterwards some other incident
[24] occurred, then it becomes -- and she sought treatment for that,
[25] we then have that intervening causation.

Page 2

[1]     **THE COURT::** I don't know that Rule 72 applies here,
[2] but I know, for it doesn't make sense to send it back to Judge
[3] Francis because then the losers are going to come back to me
[4] anyway. So whether or not it is de novo review or discretion,
[5] I would assume it is de novo review. Not that I think Judge
[6] Francis did anything wrong.
[7]     Rule 26 provision for liberal discovery, anything that
[8] is relevant to, conservativebly relevant to the case that can
[9] lead to admissible evidence, the parties are entitled to Rule
[10] 26. And the law recognizes privileges.
[11]     But the law also disfavors privilege because they
[12] destruct the ascertainment of the truth. And, therefore, the
[13] law recognizes that in certain situations, when a plaintiff
[14] makes certain claims related to medical damages or mental
[15] health damages, then the plaintiff can be deemed to have waived
[16] the applicable privileges.
[17]     Now, let me say, just so it is crystal clear for the
[18] record, I don't feel bound by what I ruled in MacNamara,
[19] because these are evidentiary rulings. These are discovery
[20] rulings. These are not matters of first impression where the
[21] principle is unaffected by the facts of the particular case.
[22]     So it is true that the city put forth legal arguments
[23] in addition to my ruling in MacNamara. And whether Judge
[24] Francis felt he was bound by that ruling or he was persuaded by
[25] it, is of no import to this case. MacNamara is MacNamara, this

Page 26

[1]     Number 2, with all due respect to the city, in
[2] substance, they are ruled -- that Judge Francis was ruled by
[3] MacNamara, whether or not you were limiting it to -- he was
[4] precluding it to where he could go or not go on this matter.
[5]     Finally, to the extent that the city wants to put into
[6] play the fact that she had a preexisting condition for which
[7] she sought treatment, they have the facts. I did not direct
[8] her not to answer, or -- she hasn't been deposed yet, but they
[9] know that she has, and she would answer, she had -- I guess it
[10] came out of her 58-H hearing. She did say, I had treatment, it
[11] was for depression, in family counseling.
[12]     To the extent that they want to bring to the jury that
[13] there were other matters that implicated her actions, and the
[14] information in the records isn't going to elucidate anything.
[15]     Thank you, your Honor. I apologize and I appreciate
[16] your indulgence.
[17]     **MR. DOUGHERTY:** On the issue of causation, actually,
[18] one of the cases cited by Mr. Meyerson, Bridge v. Eastman
[19] Kodak, there was language in that case, on page 223, saying
[20] that, moreover, since plaintiff seeks to prove they suffered
[21] emotional distress, defense counsel has the right to inquire
[22] into plaintiff's past for showing, at least in part, that they
[23] were not job related.
[24]     That case dealt with Title VII sexual harassment.
[25] But it should be considered in this case as well.

Page 28

[1] case is this case.
[2]     Now, in terms of this case, we have a 24-year-old
[3] plaintiff who has claimed, both in her complaint and in her
[4] interrogatory responses, which presumably she can't blame Mr.
[5] Meyerson for, that she suffered emotional distress,
[6] psychological trauma, fear, humiliation, embarrassment and
[7] anxiety.
[8]     She went to see a doctor. And in the complaint she
[9] alleges that she continues to suffer residual emotional
[10] damages.
[11]     Now, Mr. Meyerson may want to selectively withdraw
[12] that one sentence from the complaint. But her interrogatory
[13] answers are it. That is it. That is what she is claiming.
[14]     And she would then ask a jury to award her damages,
[15] presumably not an insignificant amount of damages, based on
[16] those injuries.
[17]     Now, some might call those garden variety. Some have
[18] described precisely those kind of damages being more than
[19] garden variety.
[20]     I haven't read a case that gives the precise
[21] definition of what garden variety is.
[22]     It has been my experience that garden variety is part
[23] in the eye of the beholder, but even assuming it is a garden
[24] variety claim, I am persuaded by the cases, not just in this
[25] district, but around the country, that have found that

Page 29

[1] precisely such claims waive the privilege to some extent.
[2] Because I do think, to the extent that somebody is claiming,
[3] for example, psychological trauma, even if she doesn't intend
[4] to substantiate the claim, or to quantify her damages through
[5] the use of an expert, just based on her own testimony of what
[6] she felt, what she felt she was harmed by, what emotional pain
[7] and suffering she claims to have been inflicted upon her, opens
[8] the door to the possibility that the defendant should be
[9] allowed to explore either alternate causes for such
[10] psychological trauma and other mental health damages, and also
[11] to rebut the claim for the amount of damages that the plaintiff
[12] might seek from a jury.
[13]    And the cases that discuss this, discuss it in a wide
[14] variety of contexts, employment discrimination, and civil
[15] rights, and specifically describe them as garden variety cases,
[16] and specifically note that the plaintiff is not claiming to
[17] rely on an expert to substantiate the claim for mental health
[18] damages.
[19]    But the fact that plaintiff isn't saying,
[20] notwithstanding what is in her complaint, that she continues to
[21] suffer from these things, that may just go to the amount of
[22] damages she gets, it doesn't change the fact that she is
[23] alleging that the wrong done to her allegedly by the
[24] defendants, caused her mental health harms.
[25]    And it cannot be redressed as emotional distress, and

Page 30

[1] somehow pretend it is in in another category where there is no
[2] relevance between somebody's mental health history and the
[3] emotional distress that somebody claims to have suffered.
[4]    And that is what the cases talk about. I am not going
[5] to list them all. Some of the ones are the ones listed in the
[6] city's papers. But I have read cases, there is a recent case
[7] from the Eastern District of Michigan that goes through the law
[8] on this.
[9]    For the record, of course, I reviewed the McKenna
[10] case. I reviewed the Sidor case, which Judge Buchwald does
[11] say, even if it is garden variety, that it does open the door.
[12]    There is a case called Williams versus NPC
[13] International from the Northern District of Mississippi. There
[14] is a case called Victoria versus Larkinder from the Eastern
[15] District of Louisiana, Synbios. S-Y-N-B-I-O-S. Another
[16] Colorado case called Fox versus The Gates Corporation.
[17] District of Connecticut case called Gattegno, G-A-T-T-E-G-N-O,
[18] versus Price Waterhouse Coopers LLP.
[19]    And, by the way, so everybody's clear, none of this
[20] means that if the defendant wants to do a Rule 35 examination,
[21] that this ruling is a per se basis for them to get that. We
[22] will have that fight if and when the defendant makes that
[23] application.
[24]    Now, I do think that, as Judge Pitman recognized, and
[25] I think he is right, that this doesn't mean that the privilege

Page 31

[1] is waived in its entirety. It depends on the case. It depends
[2] on the claim, it depends on the extent of the mental health
[3] history that, in part, may depend on, for example, the length
[4] of time between when somebody may have sought psychiatric
[5] health or suffered from some sought of emotional disease. Even
[6] and when the alleged injury took place.
[7]    Here, even a five-year limitation, so the defendant
[8] would not be allowed to go back further than five years into
[9] plaintiff's mental health history, wouldn't change anything
[10] because, as I understand it, a lot of the data is within the
[11] five years. But I am not saying that five-year rule makes
[12] sense here. I am saying that a 24-year old isn't getting any
[13] comfort.
[14]    I think what happened to her in high school and
[15] college is relevant to what she is claiming in this case.
[16]    And, Mr. Meyerson, I don't take lightly at all your
[17] philosophical point. I understand this may put people like
[18] your client in a potential dilemma, but that is what the law
[19] does to your client's position. It is not just your client, it
[20] is people alleging all kinds of mental health allegations. It
[21] involves things in people's medical history that they don't
[22] want revealed. But the law says they have to make a choice.
[23] If they want to recover money for these types of injuries, then
[24] they have to be prepared under these circumstances to
[25] recognize, to properly allow the defendants to rebut the claim,

Page 32

[1] either in terms of causation or in damages, that they are going
[2] to get peeked into that person's mental history, as in this
[3] case.
[4]    So I am affirming Judge Francis's ruling, even on the
[5] de novo standard.
[6]    MR. MEYERSON: Could I have the records before they
[7] are sent to the city reviewed by Magistrate Judge Francis?
[8]    THE COURT: Yes, thank you for reminding me of that.
[9] It is something I did in MacNamara.
[10]    If it is something, even in the context of
[11] psychological records that would appear to be super sensitive,
[12] for example, if there is something that comes up in an
[13] evaluation by a doctor, that came up in a conversation with a
[14] doctor, but really isn't relevant to the damages claimed here,
[15] I don't want to give an example because I wouldn't want to
[16] impugn your client, I wouldn't see a problem if you want to
[17] have Judge Francis review them in camera first.
[18]    I do think you should be judicious in using that tool.
[19]    MR. MEYERSON: Do I understand -- my understanding is
[20] that my client went to high school and lived in Portland. So I
[21] don't even -- I get to her name of her family counselor,
[22] psychiatrist, co-therapist, whoever it was. I will get an
[23] authorization from my client and I will send for the records
[24] and ask them to be delivered to Magistrate Judge Francis, I
[25] guess.

Page 33

[1] THE COURT: But that is precisely what I was
[2] suggesting I don't think you should do. Because what you are
[3] saying is that -- all of these records are so sensitive they
[4] should be reviewed in camera.
[5] MR. MEYERSON: I don't know. I don't even think --
[6] THE COURT: -- I know that you can take an appeal if
[7] you want.
[8] MR. MEYERSON: Well, then, I will get the records
[9] under your order, I will review them understanding your order
[10] is that I shouldn't just be knee jerk about it and make a
[11] judgment as to whether I think there is something in there that
[12] is of super sensitivity. For example, the topic of an
[13] incestuous thing, I am not suggesting that that is in there.
[14] THE COURT: What if, in the course of talking to a
[15] psychiatrist, somebody admits to committing a crime, a
[16] misdemeanor, that may have no relevance to this case
[17] whatsoever, could be highly prejudicial. It is a case that has
[18] been through a deferred prosecution or some sort of alternative
[19] resolution and wiped from the records. That might not go to
[20] her credibility. But I can see an argument being made. And
[21] what my ruling allows for is for you to exercise your judgment
[22] and seek refuse from Judge Francis.
[23] MR. MEYERSON: Secondly, and this is again an inquiry,
[24] assuming that my client decides that she doesn't want to persue
[25] whatsoever emotional damage claims, and that the only claim she

Page 34

[1] will make is for the loss of her liberty and the violation of
[2] her rights, the damage claim, and I withdraw that claim
[3] formally and in every which way. I take it then the records
[4] become irrelevant?
[5] THE COURT: You are asking for an advisory opinion?
[6] MR. MEYERSON: No, I am asking, because there are
[7] three options, and the third option is to withdraw the lawsuit.
[8] I don't know what my client's answer is going to be.
[9] I never asked my client. But I wanted to make the arguments
[10] without me being affected that my client may elect to withdraw
[11] the case, because I think that it is punitive. I understand
[12] your ruling and you are not punitive.
[13] THE COURT: I -- you can do the research. If all she
[14] is going to claim is mere loss of liberty, you know, I haven't
[15] seen any cases that say one thing or another on it. But you
[16] can decide what you want to do. I hope she doesn't withdraw
[17] the whole case.
[18] MR. MEYERSON: I understand that. You are not going
[19] to rule on that. But on the issue --
[20] THE COURT: I couldn't possibly. I haven't thought
[21] about it, it's an advisory opinion, I understand why you asked
[22] for it. But I can't answer the question, Mr. Meyerson.
[23] MR. MEYERSON: Okay.
[24] MR. MIRRO: You raised an issue about in-camera review
[25] by Judge Francis of certain super sensitive records. And that

Page 3(

[1] is an issue that, of course, came up in the MacNamara case.
[2] And we have that transcript. And there you described the type
[3] of records of being extraordinarily sensitive. I think the
[4] parties would benefit, Judge, from some clarification on what
[5] you mean.
[6] Here is my concern, Judge. We have a motion pending
[7] right now before Judge Francis, where one of the plaintiff's
[8] counsel is asking for Judge Francis to do a line-by-line review
[9] of psychological records, and to adopt certain redactions and
[10] so on. So the issue is going to be, the issue is very ripe
[11] before Judge Francis, I think it would be helpful if you could
[12] give some guidelines as to what you think --
[13] THE COURT: I think I just did by way of example. I
[14] can't do any better than what I have done.
[15] Again, you have to, from my standpoint, these have to
[16] be culled down the middle. The ruling that Mr. Meyerson got in
[17] his favor as to your client's work history, and the privileges
[18] and whatnot, if you had wanted to go to Judge Francis with
[19] something super or extremely sensitive, then you can make that
[20] application.
[21] But it is more a, you-will-know-it-when-you-see-it
[22] kind of thing. I can't give more direction. And, frankly, I
[23] would be more reluctant to because my involvement in discovery
[24] in this case is very different than Judge Francis's. He is in
[25] the weeds.

Page 36

[1] So for me to tell him, an excellent jurist, to use Mr.
[2] Meyerson's laudatory phrasing, somebody who is steeped in the
[3] facts of these cases, to tell him how to evaluate these things,
[4] would be folly.
[5] Look, I am going to assume, with good reason, the good
[6] faith of Mr. Meyerson. And, of course, going to assume that
[7] Judge Francis will give this an expedited and serious and
[8] thorough review. And to the extent people have a disagreement
[9] with how he's handled it, I am here six days a week
[10] MR. MIRRO: One other question. We have had
[11] opportunity to review the MacNamara transcript where you talk
[12] about the in-camera procedure. One of the things you said, I
[13] just want to know if you are still on board with this, that the
[14] in-camera procedure should only be employed where something is
[15] super or extraordinarily sensitive, and where, you said,
[16] irrelevant to the case.
[17] THE COURT: But that is the balancing. From Mr.
[18] Meyerson's standpoint, the example I gave about, in the course
[19] of meeting with a therapist, something got said that has
[20] nothing to do with the therapy, just comes up with the
[21] conversation. I am taking an extreme example. It arguably
[22] will not be -- it is not discoverable, or even if it is
[23] remotely relevant, and maybe there is some other reason to
[24] preclude it being turned over, what if, in the context of
[25] talking about her psychological past, she brings up a medical

Page 37

[1] issue that has got nothing to do with this case, deeply
[2] personal medical issue, that has got nothing to do with this
[3] case, then Judge Francis could decide that the records will get
[4] turned over in redacted form. I can't give any more direction
[5] than that.
[6]     **MR. MIRRO:** My only concern is that if a patient is
[7] going to a psychotherapist or counselor or psychologist to deal
[8] with her emotional distress, presumably serious emotional
[9] distress, arising from something, whatever that something is,
[10] then my question becomes, gee, is that still an issue in this
[11] plaintiff's life, was it an issue at the time of her arrest.
[12]     **THE COURT:** When you get something that is redacted
[13] and you want to challenge it, you call me up and I will see
[14] you.
[15]     **MR. MEYERSON:** I take it that any records that are
[16] eventually turned over to the city will be turned over under
[17] protection?
[18]     **THE COURT:** Yes. Thank you, Mr. Meyerson.
[19]     **MR. MEYERSON:** And finally, I am not sure what I am
[20] going to do, and with all due respect to you, because I raised
[21] it in my submission, I am asking you to certify the issue, it
[22] is a very -- I am professionally and personally concerned about
[23] this issue. After 36 years, there are not too many issues that
[24] pound me, because you have seen it all. But this is kind of an
[25] issue that I think is a very, very important issue.

Page 38

[1]     **THE COURT:** You don't even have the records handy
[2] right now, so you are going -- it is going to take you some
[3] time to get the records, go over them with your client, and you
[4] can decide what you want to do. And you can let me know.
[5]     **MR. MEYERSON:** Thank you, your Honor.
[6]     **THE COURT:** I don't think there is any prejudice to
[7] defendants if, since Mr. Meyerson isn't sitting on the records
[8] anyway, I would, even if he were, I would give him some time to
[9] think it over.
[10]     I have been told many times by the city that you are
[11] overworked anyway, so you can work on other motions that are
[12] coming your way.
[13]     **MR. DOUGHERTY:** Your Honor, just one, finally. I just
[14] want to be clear that Mr. Meyerson turns over the records to
[15] Judge Francis, and he is not involved in any self-review or
[16] redaction prior to these being closed to the case. Plaintiff
[17] should not be involved in selective determination of relevance
[18] of their psychological records.
[19]     **THE COURT:** I think what Mr. Meyerson and I talked
[20] about is that he will turn them over, except to the extent
[21] there is something he would like Judge Francis to review and
[22] perhaps redact. So what you are talking about is Mr. Meyerson
[23] shows the documents to nobody, you or Judge Francis, that is
[24] not at all what we talked about.
[25]     **MR. DOUGHERTY:** I guess I just wanted some

Page 39

[1] clarification.
[2]     **THE COURT:** He is going to turn over his client's
[3] mental history records. But he is going to look at them in
[4] their entirety and decide whether or not there are some things,
[5] some documents, some records within that bundle that he would
[6] like Judge Francis to say he doesn't have to turn over. And
[7] the rest of it he will turn over. He will turn it over if
[8] Judge Francis disagrees with him. So everything gets turned
[9] over unless Judge Francis says it doesn't.
[10]     **MR. DOUGHERTY:** Thank you, your Honor.

                            o0o

**1**

**18-year-old** 20:9

**2**

**2** 26:1
**20** 14:1
**2007** 3:9
**21** 5:14
**21-year-old** 5:15
**223** 26:19
**24** 7:9,9,18;14:10,14,22; 18:7;20:10,14,22:23
**24-year** 20:9;31:12
**24-year-old** 16:4;28:2
**25** 7:20;8:15,17,18;12:4
**26** 27:7,10

**3**

**35** 30:20
**36** 37:23

**5**

**5** 22:13
**58-H** 26:10

**6**

**65** 9:11

**7**

**71** 8:3
**72** 3:24;4:5;21:18;27:1
**74** 19:2;20:13
**74-year-old** 16:4

**A**

**able** 18:11
**abuse** 3:24
**accept** 6:17;8:5
**accepted** 19:4
**access** 9:15;10:6,19; 15:25
**according** 18:20
**action** 4:22
**actions** 15:6;26:13
**activist** 5:16
**actually** 13:23;14:15,16; 21:1;26:17
**Actually** 5:12;9:22
**add** 23:3
**addition** 12:20;23:14; 27:23
**Additionally** 22:2
**admissible** 27:9
**admits** 33:15
**admitted** 11:14,15

**admonition** 6:18
**adopt** 35:9
**advisory** 34:5,21
**advocating** 24:24
**affected** 34:10
**affirming** 32:4
**afraid** 18:25
**afterwards** 25:23
**again** 9:8;11:24;33:23
**Again** 14:17;35:15
**against** 15:6
**ago** 4:10;11:13;13:11
**agree** 10:13;25:21
**agreed** 5:22
**agreeing** 3:2,17
**ahead** 7:2;16:9
**air** 7:21
**albeit** 3:20
**allegations** 31:20
**alleged** 9:18;31:6
**allegedly** 29:23
**alleges** 28:9
**alleging** 29:23;31:20
**allow** 31:25
**allowed** 22:18,25;29:9; 31:8
**allows** 33:21
**alluded** 24:16
**almost** 4:14;12:16,16; 14:11
**alternate** 29:9
**alternative** 24:17;33:18
**although** 17:19
**Although** 5:25
**amended** 16:24
**amount** 12:14;28:15; 29:11,21
**anguish** 22:14
**antithetical** 15:17
**antiwar** 19:17
**anxiety** 8:19;13:13;15:7; 28:7
**anxious** 7:20
**apologize** 5:9,11;17:19; 26:15
**appeal** 6:16;33:6
**appeals** 3:23
**appear** 32:11
**applicable** 27:16
**application** 30:23;35:20
**applies** 27:1
**apply** 22:3
**appreciate** 26:15
**arching** 16:11
**arguably** 3:1;36:21
**argue** 10:15;11:2
**arguing** 21:11
**argument** 17:17;19:4; 24:24;33:20
**arguments** 4:11;6:9; 10:13;19:11,12;23:13; 27:22;34:9
**arising** 37:9

**around** 5:19,19;15:18; 28:25
**arrest** 19:24;22:12,23; 24:18,18,21,25;22;37:11
**arrested** 7:10,16;13:7
**art** 12:22
**ascertainment** 27:12
**associated** 19:23
**assume** 17:5;27:5;36:5,6
**assuming** 28:23;33:24
**Assuming** 8:14
**assumption** 19:11
**attack** 12:24
**attempting** 11:10
**attended** 14:10
**attitude** 5:21
**attorney** 16:20
**authorities** 23:15
**authority** 25:6,11,11
**authorization** 32:23
**award** 8:17;28:14

**B**

**back** 7:22;19:10;21:14; 22:24;23:1;27:2,3;31:8
**balancing** 36:17
**based** 23:16,22,24;28:15; 29:5
**basically** 7:17
**basis** 6:8;11:11;30:21
**become** 34:4
**becomes** 25:24;37:10
**behalf** 24:25
**beholder** 28:23
**benefit** 35:4
**better** 9:8;35:14
**beyond** 13:9
**bind** 25:12,14
**bit** 9:14
**blame** 28:4
**blanket** 20:18
**board** 36:13
**bootstrapping** 12:16
**both** 6:7;23:17,24;25:7; 28:3
**bounce** 8:9
**bound** 3:22;27:18,24
**Bridge** 26:18
**brief** 23:4
**briefly** 21:23
**bring** 26:12
**bringing** 11:18
**brings** 14:17;36:25
**broad** 7:6;20:22,22,24; 21:1,2
**brought** 15:6
**Buchwald** 10:5;30:10
**Buchwald's** 9:24
**buck** 6:12
**building** 3:10
**bunch** 12:19
**bundle** 39:5

**C**

**call** 7:25;28:17;37:13
**called** 30:12,14,16,17
**came** 5:12;26:10;32:13; 35:1
**camera** 32:17;33:4
**can** 4:8;6:15;7:23;9:15; 12:5,22,24;16:20;18:6,6; 27:8,15;33:6,20;34:13,16; 35:19;38:4,4,11
**Can** 13:16
**careful** 3:10;9:13
**carefully** 17:19
**Carter** 10:23
**case** 3:18,20,22;4:4,13, 15,17,19;5:2,6;6:13;8:6,6; 10:10;11:4;12:19;18:9,17, 17;19:8,17:20:1,17:21:19; 22:3;23:21;25:13;26:19,24, 25;27:8,21,25;28:1,1,2,20; 30:6,10,10,12,14,16,17; 31:1,15;32:3;33:16,17; 34:11,17;35:1,24;36:16; 37:1,3;38:16
**cases** 4:15;6:11;17:12,15; 18:15,20;21:4;26:18;28:24; 29:13,15;30:4,6;34:15;36:3
**category** 30:1
**causation** 12:25;15:24; 22:18;24:11;25:2,20,20,22, 25;26:17;32:1
**cause** 8:9
**caused** 24:21;29:24
**causes** 24:17;29:9
**cavalier** 5:21
**ceased** 13:10
**certain** 12:13;27:13,14; 34:25;35:9
**certify** 37:21
**challenge** 37:13
**change** 29:22;31:9
**choice** 31:22
**circles** 13:15
**circuit** 7:4
**Circuit** 3:6;6:20,21;17:12; 25:15
**circumstances** 31:24
**citation** 23:25
**Citco** 21:24
**cite** 3:9
**cited** 12:20;26:18
**citing** 3:5;4:17
**city** 3:5;10:24;11:20; 19:18,25;22:17;26:1,5; 27:22;32:7;37:16;38:10
**City** 14:13
**city's** 30:6
**civil** 18:17;29:14
**claim** 8:9;9:16;10:1; 12:12;13:1;16:21,22;17:2, 3;28:24;29:4,11,17;31:2,

25:33:25;34:2,2,14
**claimed** 24:13;28:3;32:14
**claiming** 9:5;22:8;28:13; 29:2,16;31:15
**claims** 3:1;7:6;12:22; 13:12;27:14;29:1,7;30:3; 33:25
**clarification** 35:4;39:1
**clear** 22:15;27:17;30:19; 38:14
**clearly** 3:3;4:6;21:21,23; 23:20;24:9
**client** 5:14;7:8,9;8:11,14; 10:4;11:6;12:3;14:12;16:4, 5,23;17:2;19:18;20:3; 24:12,25;31:18,19;32:16, 20,23;33:24;34:9,10;38:3
**client's** 5:21;6:4;31:19; 34:8;35:17;39:2
**clinical** 8:2
**closed** 38:16
**collar** 3:11
**college** 31:15
**Colorado** 30:16
**comfort** 31:13
**coming** 6:5;38:12
**comment** 17:18
**commit** 13:21
**committed** 22:1
**committing** 33:15
**common** 15:18
**comparison** 19:16
**complaint** 12:5;14:25; 15:5;16:11,17,18,24,25; 22:10;28:3,8,12;29:20
**completely** 15:20
**complex** 10:1
**concedes** 18:2
**conceivable** 13:8;15:21
**concern** 35:6;37:6
**concerned** 37:22
**conclude** 10:5
**condition** 7:19,25;8:2,2; 21:9,10;26:6
**Conference** 3:8
**confined** 14:22
**confinement** 24:22
**confirm** 21:25
**conglomerate** 5:5
**Connecticut** 30:17
**connection** 10:3
**conservativebly** 27:8
**considered** 5:4;24:6; 26:25
**contemporaneously** 22:23
**context** 32:10;36:24
**contexts** 29:14
**continues** 28:9;29:20
**contrary** 3:3,24;4:6; 21:21;25:1
**conversation** 32:13; 36:21

conviction 21:25
Coopers 30:18
Corporation 30:16
co-therapist 32:22
counsel 4:12;24:23,23;
26:21;35:8
counseling 7:12;11:16;
19:20;26:11
counselling 7:13
counselor 32:21;37:7
country 9:23;15:18;28:25
couple 23:8
course 16:20;30:9;33:14;
35:1;36:6,18
court 21:15
Court 3:7;21:24;22:4;
23:24;24:15;25:13,14
COURT 3:8,13;4:9,23;5:1,
7,11,17;6:25;7:2;8:3,8;9:4,
20;10:9,15;11:21;12:7,9,
11,18;13:12,17;14:4,25;
15:3,5,13,17;16:13;17:6;
18:13,20;19:1;20:16,23;
21:1,6,12;23:5;25:17;27:1;
32:8;33:1,6,14;34:5,13,20;
35:13;36:17;37:12,18;38:1,
6,19;39:2
courts 9:21,23,23;12:20;
15:18;19:3
Courts 20:20
cracked 9:14
credibility 33:20
cried 20:4
crime 33:15
critical 6:17,18
crying 19:21
crystal 27:17
culled 35:16
custody 8:17;19:18;20:4

**D**

damage 7:6;13:13;33:25;
34:2
damages 9:17;13:1;
14:20;15:7,9,24;20:3;22:9,
16,16,17;25:4;27:14,15;
28:10,14,15,18;29:4,10,11,
18,22;32:1,14
data 31:10
daughter 5:15;14:17
day 7:4;9:7;13:25;15:11,
22;17:4;19:22;20:5
days 36:9
de 10:16;23:23,23;27:4,5;
32:5
deal 37:7
dealing 25:21
dealt 26:24
debate 14:7,8;16:12,15
decide 13:20;34:16;37:3;
38:4;39:4
decides 33:24

deciding 9:9
decision 3:6;5:6;6:19;
9:25;19:7;12:20;2:23,16,
24;24:5;25:7
decisions 16:3;25:14
deemed 27:15
deeply 37:1
defend 15:23
defendant 5:20;29:8;
30:20,22;31:7
defendants 9:15;12:11,
24;15:6,23;24:19;29:24;
31:25;38:7
defendant's 18:15
defense 12:12;26:21
defer 19:10
deferred 4:16;33:18
defined 16:18
definite 21:25
definitely 3:14
definition 28:21
degree 10:7
delivered 32:24
demerit 3:5
demonstration 19:17
denies 8:4
depend 31:3
depends 20:17;31:1,1,2
deposed 26:8
deposition 14:13
depressed 7:13;13:7;
18:24
depression 11:16;13:14;
18:2;26:11
describe 29:15
described 8:4;28:18;35:2
describing 21:9
destruct 27:12
determination 22:5;
23:22;24:4;38:17
determine 4:2
determined 4:3
developing 8:6
different 4:19;9:12;11:21;
21:10;25:13;35:24
differential 6:8
dilemma 31:18
direct 26:7
direction 35:22;37:4
directly 19:16
disagreement 36:8
disagrees 39:8
discoverable 22:8;36:22
discovery 3:19,20;4:7;
11:22;25:1;27:7,19;35:23
discretion 3:24;27:4
discrimination 18:17;
29:14
discuss 29:13,13
discussion 18:13
disease 31:5
disfavors 27:11
disprove 11:9

distinction 18:15
distress 13:1,13;15:7;
22:9,14,19;24:13,17,21;
25:3;26:21;28:5;29:25;
30:3;37:8,9
district 9:21,24;10:18,22;
11:1;18:11;25:12;28:25
District 4:21;10:23;30:7,
13,15,17
doc 13:8
doctor 28:8;32:13,14
doctrine 17:11
documents 38:23;39:5
done 29:23;35:14
door 9:14;29:8;30:11
Dougherty 3:13;23:19;
24:10;25:19
DOUGHERTY 4:1,20,25;
5:3;21:13;26:17;38:13,25;
39:10
down 19:15;35:16
Dr 7:22,23
drafted 16:18
drafting 16:24
due 6:17;7:3;20:21;24:12;
26:1;37:20
during 19:21

**E**

earlier 4:6;23:9
easily 17:14
Eastern 30:7,14
Eastman 26:18
effect 3:17;4:17,24;5:2
effects 22:11
eight 19:18,21
either 8:18;9:16;18:17;
21:21;29:9;32:1
elect 34:10
elucidate 26:14
embarrassment 28:6
emotional 7:6,17,18;
8:12,16,21;9:5;10:20;
13:13;14:9;15:7,9,10,21;
17:1,8;19:23;20:3;21:8;
22:9,14,19;24:13,13,14,17,
21;25:3;26:21;28:5,9;29:6,
25;30:3;31:5;33:25;37:8,8
emphasize 23:11
employed 36:14
employment 18:17;29:14
encompassing 16:25
end 8:25;9:7
ended 3:2;9:1
endorsement 4:9
enlightening 14:15
enough 6:15;20:10
entirety 31:1;39:4
entitled 14:5,6;24:15;27:9
equating 14:9
erroneous 3:3;4:6;21:21,
23

establish 22:2
evaluate 17:7;36:3
evaluation 32:13
evaporated 7:21
even 9:7,14;11:6,10;
12:21;18:9;19:12;28:23;
29:3;30:11;31:7;32:4,10,
21;33:5;36:22;38:1,8
Even 9:5;31:5
event 10:21;12:25;17:1
events 10:2
eventually 37:16
everybody's 30:19
everyone 12:23
evidence 8:20;27:9
evidentiary 27:19
examination 10:25;11:9;
18:23;30:20
examine 22:18;24:16
example 13:16,17;29:3;
31:3;32:12,15;33:12;35:13;
36:18,21
excellent 36:1
except 11:5;38:20
exercise 33:21
exist 13:10
expect 13:4
expedited 36:7
experience 14:16;28:22
expert 13:23;29:5,17
explained 18:6;25:13
explore 29:9
extent 5:20;9:17;12:20;
15:24;16:17,22,23;19:22;
26:5,12;29:1,2;31:2;36:8;
38:20
extraordinarily 35:3;
36:15
extreme 36:21
extremely 35:19
eye 28:23

**F**

fact 8:7,8;9:6;12:3;13:9;
18:1,23;20:4;26:6;29:19,22
facts 5:5;7:8;8:7,7,19:5;
23:17,24;26:7;27:21;36:3
factual 23:12,12;24:6
failed 16:23;21:20;22:2,3
failure 8:5
Fair 6:15
faith 36:6
false 19:23
family 7:11,12;11:16;
20:5,11;26:11;32:21
far 12:22
fascinating 14:8
favor 35:17
fear 22:14;28:6
feel 27:18
feels 3:22
felt 4:9;8:19;27:24;29:6,6

fight 30:22
figured 10:1
file 6:16
filed 15:6
finally 37:19;38:13
Finally 26:5
find 13:4
fine 13:11;24:24
first 16:17;21:6,13;27:20;
32:17
First 23:6,8
fish 11:5
five 11:13;13:7;22:24;
23:1;31:8,11
five-point 3:5
five-year 16:6;31:7,11
flow 17:23
flows 17:1
focused 19:7
folly 36:4
forget 10:9;12:4
form 37:4
formally 34:3
forth 27:22
fortunate 20:8
found 28:25
four 7:16;13:10;22:24
Fox 30:16
frame 23:2
Francis 3:16,22;4:2,14;
5:4,22;6:7;10:12;19:10,11;
22:3;23:11,14,21;24:4;
26:2;27:3,6,24;32:7,17,24;
33:22;34:25;35:7,8,11,18;
36:7;37:3;38:15,21,23;
39:6,8,9
Francis's 3:3;21:21;
23:10,16,16;32:4;35:24
frankly 35:22
fresh 7:21
freshman 19:19;20:9
front 7:4;11:18;24:3
further 31:8

**G**

garden 12:22;28:17,19,
21,22,23;29:15;30:11
garden-variety 11:3
Gates 30:16
Gattegno 30:17
G-A-T-T-E-G-N-O 30:17
gave 36:18
gee 13:6;37:10
gets 3:5,18;7:16;16:2;
29:22;39:8
giddiness 18:9
gives 28:20
goes 5:19;13:20;25:3;
30:7
good 14:15;36:5,5
governed 4:6;21:15,17;
22:5,10

governing 21:20
graduates 7:15
great 7:2
guess 26:9;32:25;38:25
guidelines 35:12

**H**

handled 36:9
handy 38:1
happen 13:8
happened 20:5;31:14
happens 5:15
harassment 26:24
harm 15:22
harmed 29:6
harms 15:9;17:11;29:24
health 6:4;7:19,25;9:11;
13:4,18,19;18:12,16;19:25;
21:10;27:15;29:10,17,24;
30:2;31:2,5,9,20
hear 3:14;12:18;17:20
hearing 26:10
helpful 15:14;35:11
herein 8:4
Hershey-Wilson 5:14
Hershey-Wilson's 22:7
high 7:11,15;9:11;11:13;
13:5,6;16:5;18:24;19:2,2;
20:11;31:14;32:20
highly 11:5;33:17
himself 6:8
history 9:10,11,16;13:14;
15:10;18:16;22:7,20;23:1;
24:14,15;30:2;31:3,9,21;
32:2;35:17;39:3
home 9:3
Honor 3:12;4:1;5:9,25;
6:16;8:19;17:17;18:3,10;
20:21;21:13;23:15;24:9,19;
26:15;38:5,13;39:10
Honor's 24:5
hope 34:16
hospital 13:20
hot 3:11
hours 7:18,20;8:15,17,18;
12:4;14:10,14;18:4,7;
19:18,21
humiliation 28:6
hundred 3:21
hurt 13:25

**I**

implicated 26:13
implications 6:2
implied 10:12
import 17:18;20:2;27:25
important 37:25
impression 27:20
impugn 32:16
in-camera 34:24;36:12,
14

incarcerated 17:3
incestuous 33:13
incident 8:4;25:23
including 25:14
inconsequential 16:16
independent 7:12
indicate 22:13
indicated 6:13;14:20
indicted 17:1
indignation 5:13
indulgence 26:16
inflicted 29:7
information 3:2;15:25;
26:14
injuries 9:5;17;28:16;
31:23
injury 8:12,16,22;9:18;
14:3;19:16,23;31:6
inner 18:22
inquire 26:21
inquiring 17:21
inquiry 17:23;33:23
insignificant 28:15
intend 29:3
interest 18:16
interesting 17:14
International 30:13
interpret 10:19
interrogatory 22:12,13;
28:4,12
interrupting 15:13;17:19
intervening 22:18;25:20,
22,25
into 7:24;11:5;12:4,16,16,
21;17:16;22:6;26:5,22;
31:8;32:2
intrinsic 14:11;18:7
inure 17:14
involuntarily 13:21;
14:23
involved 38:15,17
involvement 35:23
involves 31:21
irrelevant 15:20;34:4;
36:16
irrespective 17:25
issue 3:19;4:11;5:25;6:3;
12:2;22:8;24:9,10,10;
26:17;34:19,24;35:1,10,10;
37:1,2,10,11,21,23,25,25
issues 37:23

**J**

jail 7:18;8:15;9:1;12:4,6;
14:10,14;18:8
jerk 33:10
job 26:23
judge 4:21
Judge 3:2,15,19,21;4:2,
10,14,21;5:22;6:7,11,12,
14,21,25;9:24;10:11,14,23,
23,24;11:24;12:15;16:6;

19:10,11;20:12;21:21;22:3,
25;23:3,6,8,9,11,11,14,15,
16,18,21;24:4,7;25:5;26:2;
27:2,5,23;30:10,24;32:4,7,
17,24;33:22;34:25;35:4,6,
7,8,11,18,24;36:7;37:3;
38:15,21,23;39:6,8,9
judgment 33:11,21
Judicial 3:8
judicious 32:18
jurist 6:22,23;7:2;36:1
jury 8:17;11:18,18;17:7;
18:6,6;26:12;28:14;29:12

**K**

Karas 6:11,12,15
Kara's 4:11
Karas's 10:14;20:12
kept 5:15
kid 13:5,6;20:8
kind 9:7;28:18;35:22;
37:24
kinds 17:15;31:20
knee 13:22;14:3;19:16;
33:10
Kodak 26:19
Koeltl 6:21,25

**L**

language 24:1,2;26:19
largely 7:21;9:1
Larkinder 30:14
last 19:15;21:7;25:17
later 7:20
laudatory 36:2
law 3:4,25;4:4,7,14;5:5;
6:6,13;7:7;10:18,22;11:1;
12:2;16:14;17:10;18:11;
20:15;21:11,15,19,22;22:3;
23:17,24;27:10,11,13;30:7;
31:18,22
lawsuit 16:21;34:7
lead 27:9
leading 10:5
leads 17:23
least 5:22;18:19;26:22
leave 25:16
left 21:25
leg 13:25
legal 6:1,7;16:15;17:17;
23:14,22;25:11;27:22
length 31:3
level 4:7
liberal 27:7
liberty 8:18;14:10;18:7;
19:24;34:1,14
life 9:8;37:11
lightly 31:16
likely 5:3
limitation 16:6,7;31:7
limited 15:1

limiting 15:4;26:3
limits 15:14;16:1
Lindenal 21:24
line-by-line 35:8
list 30:5
listed 30:5
listened 17:18
litigation 7:24;11:17;20:2
little 9:14
lived 32:20
LLP 30:18
logic 10:25
look 6:8;11:1,7,7;12:6;
20:3;25:9;39:3
Look 36:5
loose 24:2
losers 27:3
loss 8:18;14:10;19:24;
34:1,14
lot 14:17;31:10
Louisiana 30:15
lucky 7:4

**M**

MacNamara 3:16;4:5;
5:1,6;6:6,19,24;7:6;9:14;
19:7;20:24;21:3;24:5;25:7;
26:3;27:18,23,25,25;32:9;
35:1;36:11
magistrate 9:25;11:7
Magistrate 3:19;4:21;5:4;
6:7;10:5,11;19:10,11;32:7,
24
Maine 7:23
majority 9:20,22
makes 27:14;30:22;31:11
making 13:2;22:5;23:13
man 14:12
manner 16:24
many 15:18;19:3;37:23;
38:10
material 10:7;11:5
materials 23:12
matter 6:14;21:2,11;26:4
matters 26:13;27:20
may 7:12;23:3;24:17;
28:11;29:21;31:3,4,17;
33:16;34:10
maybe 18:1;20:10,15;
22:24;36:23
Maybe 24:1
McKenna 22:25;30:9
mean 7:7;14:12;25:9;
30:25;35:5
means 30:20
medial 13:24
medical 27:14;31:21;
36:25;37:2
medication 7:14,15;
11:15;13:10
meeting 36:19
memo 4:9

meniscus 13:23,24
mental 6:4;7:19,25;9:11;
12:25;13:4,18;15:10,19,22;
18:12,16;19:25;21:10;
22:14;27:14;29:10,17,24;
30:2;31:2,9,20;32:2;39:3
mention 23:8
mentioned 16:10
mere 34:14
merely 10:20
merits 10:12;22:6
Meyerson 3:14,17,23;
5:8;10:13;15:5,13;16:13;
18:5;21:12,20;22:2;25:10,
17;26:18;28:5,11;31:16;
34:22;35:16;36:6;37:18;
38:7,14,19,22
MEYERSON 5:9,12,24;
7:1,3;8:5,10;9:19,22;10:11,
17;11:23;12:8,10,15;13:3,
16;14:3,5;15:2,4,12,16;
16:10,15;17:17;18:19,22;
19:9;20:20,24;21:4,8;
25:19;32:6,19;33:5,8,23;
34:6,18,23;37:15,19;38:5
Meyerson's 6:9;24:12;
36:2,18
Michigan 30:7
middle 13:21;35:16
might 3:10;6:9;10:13;
12:12;13:6,14;14:23;18:8,
8;19:3;23:23,23;28:17;
29:12;33:19
MIRRO 3:7,12;23:3,6;
34:24;36:10;37:6
misconduct 3:1
misdemeanor 33:16
Mississippi 30:13
mistake 22:1
moment 12:5
money 8:18;12:7,9,13;
13:24;22:16;24:12;31:23
more 9:25;19:16;28:18;
35:21,22,23;37:4
moreover 16:11;26:20
most 11:5;14:22
motion 4:5,8;22:5;35:6
motions 38:11
must 11:24;22:17
myself 14:20

**N**

name 32:21
narrow 5:25;6:3;12:2;
16:21
narrowed 17:2
narrowest 12:2
natural 7:17;17:4,6,22,23;
18:8
necessarily 4:23
need 18:3;21:14
needs 18:5

| | | | | |
|---|---|---|---|---|
| neither 20:1<br>New 14:13;17:10,12;22:17<br>next 19:22;20:5<br>nobody 38:23<br>nonclinical 8:2<br>nonconsolidated 4:22<br>none 30:19<br>nonsensical 12:17<br>nor 20:1<br>Northern 30:13<br>note 29:16<br>not-pleasant 14:23<br>notwithstanding 29:20<br>novo 10:16;23:23,23;<br>27:4,5;32:5<br>NPC 30:12<br>Number 26:1<br>NYU 19:19,20;20:9<br><br>**O**<br><br>oOo 39:13<br>objection 8:19<br>obligated 24:20,25;25:2<br>obtain 22:19<br>obviously 10:3;25:6,12<br>occurred 25:24<br>off 19:21;20:5<br>offended 11:19<br>offending 12:25<br>offense 6:25<br>old 5:14;7:9;19:2;20:9;<br>31:12<br>older 14:12<br>Once 9:14<br>one 3:20;12:23;16:11;<br>22:21;23:3;24:10;25:9,10;<br>26:18;28:12;34:15;35:7;<br>38:13<br>One 16:11;25:19;36:10,12<br>ones 12:20;30:5,5<br>only 5:18,21;19:1;24:7;<br>33:25;36:14;37:6<br>open 9:14;20:7;30:11<br>opens 29:7<br>opinion 6:10;34:5,21<br>opinions 3:9;25:15<br>opportunity 22:18;36:11<br>option 34:7<br>options 34:7<br>order 23:10,16;24:1,2;<br>33:9,9<br>ordinarily 11:25<br>ordinary 17:4,6,7<br>Ores 7:22<br>Orres 7:23<br>orthopedic 14:1<br>otherwise 24:2<br>ouch 13:22<br>out 4:10,10;5:12;7:20;9:1,<br>24;11:12,18;13:18,22;14:1;<br>22:22;26:10<br>outside 25:12 | over 16:2;36:24;37:4,16,<br>16;38:3,9,14,20;39:2,6,7,7,<br>9<br>overrule 6:15,15<br>overruling 6:14<br>overturned 4:8<br>overworked 38:11<br>own 4:18;29:5<br><br>**P**<br><br>page 26:19<br>pain 13:25;29:6<br>paper 14:16,19<br>papers 4:2;30:6<br>Paragraph 8:3<br>part 5:4,14;19:4;26:22;<br>28:22;31:3<br>particular 27:21<br>parties 27:9;35:4<br>party 16:20<br>past 15:19;17:9;18:16;<br>26:22;36:25<br>patience 23:7<br>patient 37:6<br>peeked 32:2<br>pending 35:6<br>people 3:10;14:22;31:17,<br>20;36:8<br>people's 31:21<br>per 30:21<br>perhaps 38:22<br>Perhaps 13:6<br>period 16:8<br>permanent 8:1<br>permissible 10:20<br>person 13:21<br>personal 37:2<br>personally 37:22<br>person's 15:19;32:2<br>persuaded 27:24;28:24<br>persue 33:24<br>pervasive 24:5<br>philosophical 16:12;<br>31:17<br>Philosophical 16:15<br>philosophy 16:13;17:16<br>phrasing 36:2<br>physical 13:18<br>picture 22:19<br>Pitman 16:6;30:24<br>Pitman's 22:25<br>place 31:6<br>plaintiff 8:3;17:15;18:16;<br>24:16;26:20;27:13,15;28:3;<br>29:11,16,19<br>Plaintiff 38:16<br>plaintiff's 4:12;24:20,23;<br>25:2;26:22;31:9;35:7;<br>37:11<br>play 21:9;26:6<br>please 20:21<br>plenty 17:12 | point 5:22;7:5;8:6;11:24;<br>14:22;19:3,15,16;21:23;<br>22:22;24:7,8;25:9,10;31:17<br>points 23:4,8<br>Portland 32:20<br>position 6:13;11:8;12:17;<br>20:21;21:5;31:19<br>possibility 29:8<br>possibly 34:20<br>potential 31:18<br>potentially 15:8;17:8<br>pound 37:24<br>practical 6:1,8<br>pre 6:4<br>precise 28:20<br>precisely 28:18;29:1;33:1<br>preclude 36:24<br>precluded 3:16;6:14;<br>19:13<br>precludes 4:11<br>precluding 26:4<br>preclusive 4:23;5:2<br>preexisting 25:20;26:6<br>prejudice 38:6<br>prejudicial 33:17<br>prelitigation 10:2,4<br>prelitigation-incident<br>6:5<br>prepare 12:12<br>prepared 31:24<br>presumably 28:4,15;37:8<br>pretend 15:19;30:1<br>pretty 3:11<br>previous 6:13<br>Price 30:18<br>principle 24:19;27:21<br>principles 23:22<br>prior 4:11;10:8,9;13:14;<br>14:1;38:16<br>privilege 5:21,23;6:4;<br>12:1,21;27:11;29:1;30:25<br>privileged 3:1;11:25<br>privileges 27:10,16;<br>35:17<br>probably 5:5;9:2;14:5,6<br>problem 10:11;32:16<br>procedure 21:16;36:12,<br>14<br>professionally 37:22<br>profound 6:1,1<br>prominently 10:2<br>proper 4:20<br>properly 31:25<br>prosecution 33:18<br>protection 37:17<br>prove 11:10;26:20<br>provision 27:7<br>psychiatric 11:13;31:4<br>psychiatrist 8:1;11:1,9;<br>18:3,5;32:22;33:15<br>psychiatrists 10:1<br>psychological 9:10,16;<br>17:11;22:7,14,19;23:1; | 24:14;28:6;29:3,10;32:11;<br>35:9;36:25;38:18<br>psychologist 37:7<br>psychotherapist 37:7<br>pull 4:10;21:14<br>punitive 34:11,12<br>purely 23:22,22<br>purposes 3:19<br>put 7:24;9:9;12:4,5;13:18,<br>22;15:9,14;18:5;21:9;22:8;<br>25:10;26:5;27:22;31:17<br><br>**Q**<br><br>Quaker 14:12,15,16,18,19<br>quantify 29:4<br>Quick 3:13<br>quote 8:3<br><br>**R**<br><br>raised 4:12;34:24;37:20<br>Rather 9:25<br>rationale 4:3<br>reach 22:24<br>reached 23:1<br>reaction 7:17,18;8:16,22;<br>10:21;14:9,14;17:4;18:1,2,<br>8;21:8<br>read 12:19,19;18:20;<br>19:12;28:20;30:6<br>reading 10:14<br>reality 7:7<br>realize 6:21;21:14<br>really 11:2;25:10;32:14<br>reason 12:24;16:6;22:6;<br>24:14;36:5,23<br>reasonable 16:8;23:20<br>rebut 9:16;12:12;29:11;<br>31:25<br>recent 30:6<br>recently 6:20<br>recognize 17:13;18:15;<br>31:25<br>recognized 6:22;17:11;<br>30:24<br>recognizes 16:7;17:10;<br>27:10,13<br>record 6:4;7:24;8:20;<br>16:2;18:24;27:18;30:9<br>records 6:4;7:23;9:2;<br>10:6,19;11:5,11,24,25;<br>13:4;14:6;16:5,9;17:24,24,<br>25;19:3,25;20:14;22:22,24;<br>26:14;32:6,11,23;33:3,8,<br>19;34:3,25;35:3,9;37:3,15;<br>38:1,3,7,14,18;39:3,5<br>recover 31:23<br>redact 38:22<br>redacted 37:4,12<br>redaction 38:16<br>redactions 35:9<br>redressed 29:25 | refer 4:18<br>referred 3:19<br>Refining 21:24<br>refuse 33:22<br>reject 21:4<br>relate 13:14<br>related 3:20;4:22;18:22;<br>20:5;26:23;27:14<br>relevance 10:7;13:9;<br>15:21;16:8;24:8;30:2;<br>33:16;38:17<br>relevant 10:6;12:24;13:9,<br>11;20:17,18;22:3,7,21,23;<br>24:15;27:8,8;31:15;32:14;<br>36:23<br>reluctant 35:23<br>rely 29:17<br>reminding 32:8<br>remotely 36:23<br>removed 19:1<br>reopen 21:3<br>reply 4:21<br>research 34:13<br>residual 9:5;22:11;28:9<br>resolution 33:19<br>respect 6:17;20:21,21;<br>25:3;26:1;37:20<br>response 10:17<br>responses 22:13;28:4<br>rest 39:7<br>restrained 18:7<br>result 9:7,18;22:11<br>results 24:13<br>revealed 31:22<br>reversed 7:1<br>review 3:15;10:15;22:4;<br>23:9,23;27:4,5;32:17;33:9;<br>34:24;35:8;36:8,11;38:21<br>reviewed 30:9,10;32:7;<br>33:4<br>reviewing 21:24<br>right 4:24;5:19;9:3,4;12:7;<br>18:14;19:7;26:21;30:25;<br>35:7;38:2<br>righteous 5:13<br>righteousness 5:10,11<br>rights 18:17;29:15;34:2<br>ripe 35:10<br>ripped 13:23<br>RNC 7:10,16<br>rule 18:18;20:18;21:17;<br>31:11;34:19<br>Rule 3:24;4:5;21:18;27:1,<br>7,9;30:20<br>ruled 3:7;6:10;20:23;26:2,<br>2;27:18<br>rules 21:15;25:1<br>ruling 3:16,20,22,23;4:4,<br>11,17,18;5:1,3,6;12:9;13:<br>10:8,9,14;20:12,22,22,25;<br>21:1,2,21;22:25;25:7;<br>27:23,24;30:21;32:4;33:21;<br>34:12;35:16 |

KYLA HANNAH HERSHEY-WILSON v.
NEW YORK CITY

April 20, 200

rulings 3:3;27:19,20

**S**

sad 7:20;8:23;14:24
sadness 8:19;18:9
same 10:18;15:8;23:2
saw 14:1
saying 4:14,18;5:13,17;
  8:10;10:20;17:20,21,25;
  18:25;20:16,17;26:19;
  29:19;31:11,12;33:3
scared 7:19;8:24;14:24
school 7:11;15:9;11;
  11:13;13:5,6;14:18;16:5;
  18:25;19:2,2;20:12;31:14;
  32:20
se 30:21
second 4:10
Second 3:6;6:20,21;
  17:11;25:15
Secondly 33:23
seeing 9:7
seek 29:12;33:22
seeking 7:24;15:7;22:9,
  15,22;25:7
seeks 26:20
seemingly 12:16
seems 4:14;10:12,19,22;
  12:15,23
selective 38:17
selectively 28:11
self-review 38:15
send 27:2;32:23
sense 15:18;20:14;27:2;
  31:12
sensitive 11:5;32:11;
  33:3;34:25;35:3,19;36:15
sensitivity 33:12
sent 6:11;20:11;32:7
sentence 28:12
serious 36:7;37:8
seven 19:18,21
several 18:4;24:16
sexual 26:24
show 9:2;21:20
showing 26:22
shows 38:23
shrink 20:10,11
Sidor 10:4;30:10
sighed 7:21
simply 10:8;12:3,5;17:3;
  19:13
sit 19:15
sitting 38:7
situation 3:18;14:23;
  20:12;23:18
situations 27:13
six 19:1;36:9
skull 17:10
slash 15:10,22
so-called 12:21,25
solely 24:21

somebody 9:2;13:12;
  15:22;29:2;30:3;31:4;
  33:15;36:2
Somebody 13:20
somebody's 30:2
somehow 30:1
someone's 15:10
sorry 15:16
sort 4:13;13:13;33:18
Sotomayor 10:23
sought 8:7,8;25:24;26:7;
  31:4,5
Southern 4:21
specifically 29:15,16
stand 8:11,14;17:1
standard 3:15;4:6,7;
  10:15;21:18,19,20;22:4;
  23:9,19,20;32:5
standards 15:20
standing 8:10
standpoint 35:15;36:18
State 17:12
statement 22:12
statutes 22:4
steeped 36:2
still 36:13;37:10
stop 9:4
strikes 15:17
struck 3:4
struggling 13:22
student 19:19
subject 23:23
subjected 11:9
submission 14:8;37:21
submit 4:1,4;23:18;24:3
submitted 23:15
subsequently 21:15
substance 25:5,11;26:2
substantiate 29:4,17
suffer 8:12;28:9;29:21
suffered 13:13;15:11,22;
  22:11,13;26:20;28:5;30:3;
  31:5
suffering 13:25;24:18;
  29:7
suggest 10:19,22;25:1
suggesting 33:2,13
suggests 22:10;24:1,2
suing 24:12
sum 8:18;25:5
super 32:11;33:12;34:25;
  35:19;36:15
supporting 25:6
Supreme 3:7
sure 37:19
Sure 25:17
surgeon 14:2
surprised 12:18
sworn 22:12
Synbios 30:15
S-Y-N-B-I-O-S 30:15

**T**

table 18:14
tailor 19:5
talk 10:9;30:4;36:11
talked 25:19;38:19,24
talking 33:14;36:25;38:22
taxpayers 22:17
temporal 16:3
term 12:22
terms 28:2;32:1
testify 12:4,6
testimony 13:23;29:5
therapist 7:13;9:6,8,12;
  36:19
therapy 6:5;7:16;10:4;
  13:10;36:20
thereafter 17:4
therefore 6:14;11:8;27:12
thin 17:10
thinking 5:15
third 34:7
thorough 36:8
though 7:22
thought 34:20
three 34:7
throughout 9:23,24
times 24:16;38:10
Title 26:24
today 23:7,13;24:16
told 38:10
took 7:20;31:6
tool 32:18
topic 33:12
totally 7:22
touch 10:13
toward 5:21
transcript 35:2;36:11
transcripts 4:4
trauma 17:1;22:14;28:6;
  29:3,10
treatment 8:7,8;11:13;
  25:24;26:7,10
trial 8:11;9:9
tried 14:8
triggers 6:3;10:21;12:1,3;
  20:6
true 27:22
truth 27:12
trying 15:3,8,9;19:6
turn 38:20;39:2,6,7,7
turned 16:2;36:24;37:4,
  16,16;39:8
turns 14:1;38:14
tweaking 5:18
two 16:10;17:4;23:3
type 35:2
types 31:23

**U**

ultimately 4:3;22:16

unaffected 27:21
under 3:11;20:12;21:18,
  19,19;22:25;31:24;33:9;
  37:16
Under 21:24
underpinnings 24:6
understandable 19:14
understands 24:9
unfortunate 20:10,12
unhappy 8:23
unless 17:8;24:5;39:9
unpublished 3:6,9
up 3:2;8:10;13:2;14:17;
  20:13,23;21:24;8:32;12,13;
  35:1;36:20,25;37:13
upon 29:7
upset 12:6;14:24;19:22;
  20:6
use 15:21;29:5;36:1
used 5:5
using 12:23;32:18

**V**

value 11:4,17,23;18:24
variety 12:22;28:17,19,
  21,22,24;29:14,15;30:11
versus 21:24;30:12,14,
  16,18
Victoria 30:14
view 7:6;9:20,22,23
views 10:1
VII 26:24
violation 34:1
visits 9:11

**W**

waive 19:12;29:1
waived 12:21;27:15;31:1
waiver 6:3;10:21;12:1;
  20:7;24:13
wall 15:9
wants 26:5;30:20
Waterhouse 30:18
way 9:20;18:10;30:19;
  34:3;35:13;38:12
wealth 25:6,11
weeds 35:25
week 36:9
whatnot 35:18
what's 11:6
whatsoever 33:17,25
whole 34:17
wide 29:13
Williams 30:12
wiped 33:19
wisdom 6:22,22
withdraw 8:13;16:21,21;
  17:2;28:11;34:2,7,10,16
within 16:7;17:12;31:10;
  39:5
without 15:24;34:10

witness 8:11,14
word 24:20;25:2,18
worded 14:25
work 35:17;38:11
working 23:2
worth 5:17
write 6:10
wrong 6:23;27:6;29:23
wrote 14:16,19

**Y**

years 5:14;7:9,16;11:13;
  13:7,11;14:1;19:1,2;22:24;
  23:1;31:8,11;37:23
yells 13:22
York 14:13;17:10,12;
  22:17
young 20:8
you-will-know-it-when-you-
  see-it
  35:21